**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| FALCON V, L.L.C., *et al.*,[1] | CASE NO. 19-10547 |
| DEBTORS. | (JOINT ADMINISTRATION REQUESTED) |

**EMERGENCY MOTION PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a), 361, AND 363, AND BANKRUPTCY RULES 2002, 6004, AND 9006, FOR ENTRY OF AN ORDER APPROVING ORDINARY COURSE OF BUSINESS ACQUISITION BY FALCON V, L.L.C. OF ANADARKO E&P ONSHORE LLC'S INTEREST IN CERTAIN OIL, GAS AND MINERAL INTERESTS**

Falcon V, L.L.C. ("Falcon" or "Debtor"), with the approval of all debtors, moves this Court for entry of an order authorizing and approving Falcon's acquisition in the ordinary course of business of Anadarko E&P Onshore LLC ("Anadarko")'s interest in certain oil, gas and mineral leases. In support, Falcon represents as follows:

### JURISDICTION AND VENUE

1.  This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This is a "core" proceeding pursuant to 28 U.S.C. § 157(b).

2.  The statutory bases for the relief requested herein are sections 105(a), 361 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), and Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 2002, 6004, and 9006.

---

[1] The Debtors are the following three entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): Falcon V, L.L.C. (1725); Falcon V Holdings, L.L.C. (8542); and ORX Resources, L.L.C. (9032). The address of the Debtors is 400 Poydras Street, Suite 1100, New Orleans, Louisiana 70130.

1

**BACKGROUND**

3. The Debtors, affiliates of one another (i) engage in the exploration, development, production and acquisition of oil and natural gas properties located onshore Louisiana and hold legal title to Louisiana onshore oil and gas leases (Falcon V, L.L.C.), (ii) provide operator services for the oil and gas properties and act as the designated operator (ORX Resources, L.L.C.), and (iii) own Falcon V, L.L.C. and ORX Resources, L.L.C. (Falcon V Holdings, L.L.C.).

4. Falcon V, L.L.C. is an independent energy company primarily engaged in all aspects of the upstream oil and gas operations, including exploration, development and production.  Falcon V, L.L.C. is a wholly-owned subsidiary of Falcon V Holdings, L.L.C. Falcon V, L.L.C. holds legal title to the oil and gas properties and is party to a contract operator agreement with ORX Resources, L.L.C.  Under the terms of the agreement, ORX Resources, L.L.C. serves as the operator of record for the leases and performs certain operator services related to the oil and gas leases in exchange for a management fee of $300,000 per month.  ORX Resources, L.L.C. is a wholly-owned subsidiary of ORX Exploration, Inc., a non-debtor related entity.

5. On this date (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of title 11 of the U.S. Code.  The Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6. An official committee of unsecured creditors has yet to be appointed in these Chapter 11 cases.  Further, no trustee or examiner has been requested or appointed in any of these Chapter 11 cases.

7. In support of this motion (the "Motion"), the Debtors rely on the *Declaration of James E. Orth, President & Chief Executive Officer of the Debtors, In Support of the Chapter 11 Petitions and First-Day Motions* (the "Declaration")[2] filed contemporaneously with this Motion.

### THE LETTER AGREEMENT

8. On December 29, 2016, Falcon acquired exclusive rights to the oil, gas and mineral leases of Hilcorp Energy I, LP (the "Tuscaloosa Assets"). The Tuscaloosa Assets are located in central Louisiana west of Baton Rouge. As of the Petition Date, Falcon owned interests in approximately 2,200 onshore oil and gas leases located in the State of Louisiana (the "Leases"). There are currently approximately 89 oil, gas and related wells (18 of which are producing) owned by Falcon that are located on the Leases. Falcon's production is generated entirely from the Tuscaloosa Assets.

9. The Tuscaloosa Assets comprise ten fields that covers 24,000 net acres of which 95% is held by production. In addition to the proved reserves, the Tuscaloosa Assets contain eleven potential exploratory prospects.

10. The Tuscaloosa Assets also sit on the well-recognized Austin Chalk Play, an area of particular interest to the oil and gas majors. The Debtors have identified 112 locations containing 57 MMboe of best estimate contingent resources related to the Austin Chalk Play. The Debtors can, in some instances, drill from its existing Tuscaloosa well-pads and utilize its existing processing facilities. The Austin Chalk Play is a more recent development and has not previously been drilled in the Debtors' acreage although the formation has supported highly successful activities in Texas. This is primarily because the play in Louisiana has only been identified in the last eighteen months by leading U.S. independents and because modern

---

[2] Capitalized terms used herein and not defined have the meaning set forth in the Declaration.

horizontal drilling is required to access it.

11. On April 9, 2019, Falcon and Anadarko executed that certain Partial Assignment of Oil, Gas and Mineral Leases dated March 1, 2019 (the "Assignment") whereby Anadarko agreed to assign its right title and interest in and to certain oil, gas and mineral leases in the Port Hudson Field. These leases include prospects in the Austin Chalk Play ("Chalk Properties").

12. Falcon and Anadarko previously agreed that Falcon was to pay Anadarko the sum of $1,200,000.00 for the Assignment of one hundred percent (100%) of Anadarko's ownership of the Port Hudson Field leases. Falcon advised Anadarko that it required additional time to complete its funding process with its capital providers to fund the Assignment.

13. On April 17, 2019, Falcon and Anadarko executed a letter agreement (the "Letter Agreement") extending the Assignment payment deadline forty-five (45) days or no later than May 17, 2019. A copy of the Letter Agreement and Assignment are attached hereto as **Exhibit B**.

14. In consideration for Anadarko granting Falcon the additional time necessary to complete the funding process, Falcon agreed to remit to Anadarko a $180,000 as a non-refundable deposit to be credited against the acquisition amount of $1,200,000, should closing occur. Failure by Falcon to close by May 17, 2019 results in Anadarko retaining the deposit, and Falcon losing the rights to the Chalk Properties.

15. To complete the Assignment, Falcon must wire the remaining $1,020,000 to Anadarko.

16. Due to the impending deadline and the timing of these bankruptcy cases, Falcon brings this motion, seeking an order approving the payment by Falcon of $1,020,000 to Anadarko to effectuate the Assignment and maintain Falcon's ability to explore future prospects

in the Austin Chalk Play.

17. In fact, Debtors submit that the closing of the Assignment is in the Debtors' ordinary course of business, but Debtors seek approval for the avoidance of doubt.

18. The funds will be provided by the combination of cash collateral and the first tranche of the debtor in possession financing, approval of which is sought by separate motion. The Debtors Prepetition Agent and is post-petition DIP Agent approve the relief requested and the closing of the Assignment.

19. Emergency consideration is requested because of the need to make the payment by the May 17, 2019 deadline as set forth in the Letter Agreement (see discussion of the uncertainty of the Debtors' right to extension under section 108(b)).

## BASIS FOR RELIEF REQUESTED

20. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). The proposed use, sale, or lease of property of the estate may be approved under section 363(b) of the Bankruptcy Code if it is supported by the sound business judgment of the trustee or debtor in possession. *See ASARCO, Inc. v. Elliot Mgmt.* (*In re ASARCO, L.L.C.*), 650 F.3d 593, 601 (5th Cir. 2011) ("Section 363 of the Bankruptcy Code addresses the debtor's use of property of the estate and incorporates a business judgment standard."). This standard is flexible and encourages discretion. *Id*.

21. Here, Falcon has determined in its business judgment that the Assignment and the exploration and development of the Port Hudson Field leases is in the best interests of Falcon and the Debtors and their estates.

22. The terms of the Assignment are reasonable and customary. The Assignment was

negotiated at arm's length with Anadarko and is an ordinary course business transaction of Falcon. Falcon's business involves oil and gas exploration and this transaction is indicative of the types of transactions that are necessary to continue the future operation and profitably of the reorganized entities. Further, Falcon has current facilities in the Port Hudson Field and other Austin Chalk Play leases; the Assignment bolsters Falcon's position in the Port Hudson Fields. If the Assignment and payment to Anadarko are not approved by this Court, Falcon will be unable to meet the deadline under the Letter Agreement and lose the ability to acquire these important assets. Time is of the utmost essence.

23. Falcon has determined that the Assignment is in the best interest of the Falcon estate, and in no way adversely affects the other Debtors' estates (and the other Debtors concur).

24. Here, Falcon proposes to consummate the Assignment in a commercially reasonable manner and expects that the value realized from the development of the Port Hudson Field leases fairly reflects the value of the interests assigned by the Assignment.

25. Debtors are concerned that if Closing cannot occur by May 17, 2019, the rights of the Debtors could expire. In the case *In Re 1075 S Yukon, LLC*, 590 B.R. 527 (Bankr. D. Co 2018), the court concluded that section 108(b)[3] does not provide a grace period within which to exercise an option to purchase real property, despite the debtor having held rights under the option as of the filing of the bankruptcy petition. The court refused to read expansively the "or

---

[3] Section 108(b) reads: (b) Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1201 or 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) 60 days after the order for relief.

6

perform any other similar act," provision, limiting it to filings within court or administrative proceedings or to cure a default. Because, according to the court, a counterparty to an option does not "default" in failing to exercise the option, section 108(b) does not grant a 60 day grace period within which to exercise rights under a purchase option. While the Debtors do not concede that there could not be a default, or the inapplicability of section 108(b), the Debtors seek to avoid the possibility of doubt as to whether its rights survive the passage of time past the May 17, 2019 deadline.

26. The Debtors will provide notice to the parties on its limited matrix, and all notice parties under the Court's CM/ECF system. Included will be all members of the Prepetition Agent and DIP Agent, along with the administrative agent and counsel therefor. Falcon submits that there will be no objection to the Assignment or this Motion from these groups or their members. In fact, the Assignment and payment to Anadarko have been approved by the DIP Agent and the payment amount is included in the DIP Budget to be funded by the DIP Agent.

### EMERGENCY CONSIDERATION

27. The notice and hearing requirements contained in section 363(b)(1) of the Bankruptcy Code are satisfied if appropriate notice and an opportunity for hearing are given in light of the particular circumstances *See* 11 U.S.C. § 102(1)(A) (defining "after notice and a hearing" to mean such notice and an opportunity for hearing "as [are] appropriate in the particular circumstances").

28. While Bankruptcy Rules 2002(a)(2) and 2002(i) generally require a twenty one-day notice of proposed sales of property outside the ordinary course of business be provided by mail to "the debtor, the trustee, all creditors and indenture trustee," courts are authorized to shorten the twenty one-day notice period generally applicable to asset sales, or direct another

method of giving notice, upon a showing of "cause." *See* Fed. R. Bankr. P. 2002(a)(1)(2).

29. Here, noticing the Assignment on twenty one-days' notice is not possible, given the requirement that the Letter Agreement requires Falcon to make the payment to Anadarko no later than May 17, 2019.

30. For these reasons, Falcon submits that consideration and approval of this Motion on an emergency basis is necessary and proper.

### **WAIVER OF BANKRUPTCY RULE 6004(A) AND 6004(H)**

31. To implement the foregoing successfully, the Debtors request that the interim order to be entered by the Court provide that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h), with respect to the interim order submitted herewith so that there will be no interruption of the Debtors' ability to conduct business.

### **NOTICE**

32. The Debtors will provide notice of this Motion to: (a) the Office of the United States Trustee for the Middle District of Louisiana; (b) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis, as identified in their chapter 11 petitions; (c) both Hunton Andrews Kurth LLP, counsel to 405 Baxterville LLC, the Debtors' Prepetition Agent and DIP Agent, and to 405 Baxterville LLC; (d) the Internal Revenue Service; (e) parties that have filed a lien on the Debtors' assets and (f) any party that has requested notice pursuant to Bankruptcy Rule 2002 as of the time of service. Debtors submit that no other or further notice need be provided.

## **NO PRIOR REQUEST**

33. No prior request for relief sought in this Motion has been made to this or any other court.

**WHEREFORE**, the Debtors respectfully request entry of an Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other relief as is just and proper.

Dated: May 10, 2019.

                                      Respectfully submitted,

                                      **KELLY HART PITRE**

                                      */s/ Louis M. Phillips*
                                      **Louis M. Phillips (#10505)**
                                      **Patrick (Rick) M. Shelby (#31963)**
                                      **Amelia L. Bueche (#36817)**
                                      One American Place
                                      301 Main Street, Suite 1600
                                      Baton Rouge, LA 70801-1916
                                      Telephone: (225) 381-9643
                                      Facsimile: (225) 336-9763
                                      Email: louis.phillips@kellyhart.com
                                      Email: rick.shelby@kellyhart.com
                                      Email: amelia.bueche@kellyhart.com

                                      *Proposed Counsel for the Debtors*