IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:<br><br>FALCON V, L.L.C., *et al.*,[1]<br><br>DEBTORS. | CHAPTER 11<br><br>CASE NO. 19-10547<br><br>(JOINT ADMINISTRATION REQUESTED) |

**EMERGENCY APPLICATION FOR ENTRY OF INTERIM AND FINAL ORDER AUTHORIZING RETENTION AND EMPLOYMENT OF KELLY HART & PITRE AS COUNSEL FOR THE DEBTORS, NUNC PRO TUNC TO THE PETITION DATE**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") move this Court for the entry of interim, substantially in the form attached hereto as **Exhibit A** and **Exhibit B**, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Middle District of Louisiana (the "Local Rules"), and the Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under United States Code by Attorneys in Larger Chapter 11 Cases, effective as of November 1, 2013, issued by the Executive Office of the United States Trustee (the "U.S. Trustee Guidelines"): (i) authorizing the Debtors to retain and employ Kelly Hart & Hallman, LLP (which utilizes in Louisiana the trade name Kelly Hart Pitre) ("Kelly Hart" or "Applicant") as counsel in these chapter 11 cases, *nunc pro tunc* as of the commencement of these cases; and (ii) granting certain related relief.

In support of this Application, the Debtors: the Declaration of Louis M. Phillips, a partner in Kelly Hart (the "Phillips Declaration"), a copy of which is attached hereto as **Exhibit D**; and

---

[1] The Debtors are the following three entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): Falcon V, L.L.C. (1725); Falcon V Holdings, L.L.C. (8542); and ORX Resources, L.L.C. (9032). The address of the Debtors is 400 Poydras Street, Suite 1100, New Orleans, Louisiana 70130.

1

Kelly Hart's Disclosure of Compensation (the "Disclosure of Compensation"), a copy of which is attached hereto as **Exhibit C;** and (ii) further respectfully represents as follows:

### Jurisdiction and Venue

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. The basis for the relief sought herein arises from Sections 327, 328, 1107 and 1108 of the Bankruptcy Code, Bankruptcy Rule 2014 and 2016, and Local Rules 2014-1 and 2016-1.

### Background

3. On this date (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of title 11 of the U.S. Code (the "Bankruptcy Code"). The Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed, and no official committee of creditors or equity interest holders has been established in these chapter 11 cases.

4. This Court is referred to the *Declaration of James E. Orth, President & Chief Executive Officer of the Debtors, In Support of the Chapter 11 Petitions and First-Day Motions* for a detailed discussion of the factual background and circumstances surrounding the Debtors' commencement of these chapter 11 cases. Capitalized terms not defined herein are as defined in the Falcon Declaration.

### Relief Requested

5. The Debtors wish to employ the firm Kelly Hart as their bankruptcy counsel in

connection with the commencement and prosecution of these chapter 11 cases. The Debtors retained Kelly Hart as its counsel on or about February 20, 2019, and Kelly Hart has been representing the Debtors since that date with respect to restructuring alternatives. The representation has entailed, without limitation (i) analysis of the company's financial condition, security interests and debt structure, (ii) representation of the Debtors in seeking alternative (including out of court) restructuring alternatives, (iii) negotiation with creditors and possible DIP financing parties, (iv) analysis of employee and employee contract issues, (v) review and discussion with client regarding budgeting issues, (vi) assisting the board of directors and management in exercising their duties and in performing responsibilities efficiently; (vii) analysis of financial projections and valuation models, (viii) assistance in negotiation of a proposed plan of reorganization, (ix) negotiation of agreements regarding use of cash collateral and DIP financing, (x) assistance in preparing for the filing of these reorganization cases, and (xi) drafting petitions, motions, pleadings, and proposed orders for filing in the bankruptcy cases. The hiring of Kelly Hart and the filing of these bankruptcy cases was expressly approved by the Debtors. Through its work, Kelly Hart has become familiar with the Debtors' operations and affairs.

**Scope of Services**

6.      The Debtors have selected Louis M. Phillips, Patrick "Rick" M. Shelby, Amelia L. Bueche (the "<u>Lawyers</u>") and the firm of Kelly Hart for various reasons, including the fact that Kelly Hart has specialized experience in bankruptcy law, and can provide the Debtors' estates with representation on all aspects of the matter for which the estates may require legal representation and advice. Further, Kelly Hart will give the Debtors' legal advice with respect to their powers and duties as debtors-in-possession in the continued operation of the businesses and

management of the Debtors' property and to perform all legal services for the debtors-in-possession which may be necessary herein. Kelly Hart will as well utilize the services of other partners and associates of the firm as necessary. In the event other attorneys are utilized their rates will be charged at customary levels (which will be lower than the rate for Louis M. Phillips).

7. The Lawyers and Kelly Hart have acquired a familiarity with the Debtors' capital structure, possible restructuring options, corporate structure and personnel. The Debtors believe the Lawyers and Kelly Hart are well qualified to represent the Debtors, as the debtors-in-possession, in this case and in the proceedings that should be handled by counsel for the debtors-in-possession. Furthermore, it is necessary for the Debtors, as the debtors-in-possession, to employ attorneys for such professional services. Subject to this Court's approval of the Application, Kelly Hart is willing to serve as the Debtors' general bankruptcy counsel and as litigation counsel (as necessary) to perform the services described herein.

8. The Debtors have determined that it is necessary to obtain counsel, for several reasons. The services of Kelly Hart are appropriate and necessary to enable the Debtors to execute its duties as debtors and debtors-in-possession faithfully and to implement the restructuring and reorganization of the Debtors. Subject to further order of this Court, it is proposed that Kelly Hart be employed as bankruptcy counsel to render the following professional services on and after commencement of these cases:

    a. Working with the Clients to obtain a waiver of default and forbearance agreement for purposes of allowing the Clients time within which to obtain refinancing;

    b. Working with the Clients to analyze possible restructuring alternatives;

    c. Working with the Clients as counsel with respect to negotiations with the Senior Secured Lender;

    d. Working with the Clients to develop budgeting and proposals regarding personnel and management moving forward within the restructuring process;

e. Working on behalf of the Clients regarding all necessary applications, motions, answers, proposed orders, other pleadings, notices, and other documents, and reviewing all financial and other reports to be filed in the United States Bankruptcy Court, Middle District of Louisiana (the "Bankruptcy Court");

f. Advising the Clients concerning and preparing responses to applications, motions, pleadings, notices, and other documents which may be filed by other parties in the Bankruptcy Court;

g. Appearing in the Bankruptcy Court on behalf of and to protect the rights and interests of the Clients;

h. Commencing, continuing and conducting litigation (except where the Clients have retained and will maintain other counsel (with such counsel to be employed by the Clients through Bankruptcy Court approvals)) necessary and appropriate to assert rights held by the Clients, protect assets of the bankruptcy estates of the Clients or otherwise further the goal of completing the successful reorganization of the Clients, including litigation existing pre-petition and as may be consolidated with Kelly Hart for efficiency of representation;

i. Providing the Clients representation regarding oil and gas law and regulatory law issues concerning leases, working interests, operating agreements, bonding requirements, royalty obligations, and regulatory compliance (both state and federal);

j. Providing representation on general corporate and governance matters related to the Clients' restructuring;

k. Providing documentation, as appropriate or necessary, of corporate matters, of corporate analyses, opinions, recommendations, conclusions and correspondence arising from or related to the Clients' restructuring; and

l. Performing other legal services for the Clients which may be necessary and proper arising from or related to the Clients' restructuring.

## **Compensation**

9. Kelly Hart's fees are determined on the basis of time billed at hourly rates. The Kelly Hart hourly rates vary with the experience and seniority of its attorneys and paralegals, and are adjusted annually. Work is assigned among the attorneys and other professionals so as to meet the Debtors' needs, including timing requirements, in an economically efficient manner, typically resulting in blended rates of approximately $455.00 an hour, or less. Kelly Hart did not vary from, or agree to any alternatives to, its standard or customary billing arrangements for this engagement.

10. Kelly Hart's current hourly rates for matters related to these chapter 11 cases range as follows:

| Billing Category | Hourly Rates |
|---|---|
| Partners | $400-$600 |
| Of Counsel | $325-$450 |
| Associates | $200-$400 |
| Paraprofessionals | $100-$200 |

11. The rate structure provided by Kelly Hart is appropriate and not significantly different from the rates that Kelly Hart charges for other similar types of representations.

12. Kelly Hart's policy is to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client. Kelly Hart's policy also is to charge its clients only the amount actually incurred for such items. Examples of such expenses include postage, overnight mail, courier delivery, transportation, overtime expenses, computer-assisted legal research, photocopying, airfare, meals, and lodging.

## Compensation Received by Kelly Hart

13. Upon being retained, Kelly Hart performed services leading up to the filing of these cases. Kelly Hart's invoices for these services have been paid in the ordinary course. Such payments in the ordinary course have included payments for bankruptcy and restructuring related advice and services provided to the Debtors. Prior to the Petition Date, Kelly Hart received payments from the Debtors totaling $149,929.99 in actual fees and estimated fees and $70.01 in expenses. *See* **Exhibit B**. These amounts were paid out of a retainer furnished with client approval by direct and earmarked funds constituting cash collateral wired from the Debtors senior secured lenders/lenders' agent. The payment was for services rendered and expenses incurred through May 9, 2019. There is no retainer remaining.

14.     Kelly Hart has expended and will expend additional time and incurred expenses in the prepetition work directly related to the filing of theses bankruptcy cases, during the day on May 10, 2019. Kelly Hart estimates that amounts that will accrued between the date through which the fees and expenses were paid, and the accruals of amounts directly related to the final preparation of the bankruptcy cases and related pleadings for filing (on May 10, 2019) should prove to be less than $20,000.  This days' worth of fees and expenses will be included in Kelly Hart's initial fee application filed with this Court and will be separately delineated as prepetition fees and expenses.

15.     Pursuant to Bankruptcy Rule 2016(b), Kelly Hart has neither shared nor agreed to share (a) any compensation it has received or may receive with another party or person, other than with the partners and associates associated with Kelly Hart or (b) any compensation another person or party has received or may receive.

### Kelly Hart's Disinterestedness

16.     To the best of Mr. Phillips' knowledge, neither Kelly Hart, nor any of its partners or associates, have any connection with the Debtors, the creditors or any other party-in-interest, their respective attorneys and accountants, the U.S. Trustee, or any person employed in the Office of the U.S. Trustee other than representing the Debtors as described herein and except as specifically stated within this Application and in **Schedule 3** to the Declaration of Louis M. Phillips, which is attached hereto as **Exhibit D**.  Kelly Hart submits that it is disinterested and holds no claim or interest adverse to the estate within the meaning of Sections 101(14) and 327 of the Bankruptcy Code, as modified by Section 1107(b).

17.     Kelly Hart will continue to conduct an ongoing review of its files to ensure that no disqualifying circumstances arise, and if any new relevant facts or relationships are

7

discovered, Kelly Hart will supplement its disclosure to the Court, as required by Bankruptcy Rule 2014(a).

18. As to individual matters which any one or more of the Debtors' interests are inconsistent, Kelly Hart submits that it will not represent any Debtor whose interest conflicts with the bulk of the other Debtors, and that the Debtors will seek to employ conflicts counsel if such conflict may arise. Kelly Hart knows of no such conflicts, potential or actual, as the interests of the Debtors are predominately identical. Kelly Hart believes that with some possible exceptions not known to Kelly Hart, its joint representation of the multiple Debtors in connection with their respective bankruptcies would not have any adverse effect on Kelly Hart's ability to adequately represent all of the Debtors.

19. Notwithstanding, there is a remote possibility that an interest of one or more of the Debtors are or could become adverse in connection with the bankruptcies. For example, there could be some level of inter-company borrowing as a result of a centralized cash management system. However, "the presence of an intercompany debt does not create per se an actual conflict of interest." *In re Global Marine, Inc.,* 108 B.R. 998, 1001 (Bankr. S.D. Tex. 1989); *In re Marino*, No. 09-33545-H3-11, 2009 WL 3246762, at *2 (Bankr. S.D. Tex. Oct. 5, 2009) (noting that "[t]here is a fundamental distinction between the potentially conflicting interests that may arise in every instance of joint representation and an actual conflict of interest as contemplated by section 327). In the event that the interests of one or more of the Debtors become adverse to others of the Debtors, separate counsel will be utilized by any Debtor(s) whose interests are different than the remaining Debtors. *See Global Marine, Inc.* at 1004.

20. In seeking to represent all of the Debtors, Kelly Hart is not asking this Court to issue an extraordinary order. "In large multi-debtor reorganization cases, it is fairly

commonplace for one law firm, or a group of law firms to represent all of the debtor entities." *Collier's* ¶327.04[5] (16th ed.). Bankruptcy courts throughout this circuit have authorized similar representation of multiple debtors. *See In re A&B Valve & Piping Systems, L.L.C.*, Case No. 15-51336 (ECF Doc. No. 157) (Bankr. W.D. La. Nov. 16, 2015) (authorizing the employment of one firm as attorneys for multiple related debtors); *In re Harvest Oil & Gas, LLC*, Case No. 15-50748 (ECF Doc. No. 317) (Bankr. W.D. La. Aug. 19, 20125) (same); *In re Shoreline Energy, LLC*, Case No. 16-35571 (ECF Doc. No. 126) (Bankr. S.D. Tex. Dec. 01, 2016) (same); *In re Energy XXI Ltd.*, et al., Case No. 16-31928 (ECF Doc. No. 343) (Bankr. S.D. Tex. May 24, 2016) (same); *In re Genon Energy, Inc.*, et al., Case No. 17-33695 (ECF Doc. No. 197) (Bankr. S.D. Tex. July 13, 2017) (same). Such multiple representation is also not explicitly prohibited by the Bankruptcy Code. *See Global Marine*, 108 B.R. at 1001 (concluding, based upon a view of relevant case authority, "that there is no prohibition against representation when both clients are debtors").

21. Concurrently with the filing of this Application, the Debtors have filed their chapter 11 petitions and requested that these chapter 11 cases be jointly administered. Kelly Hart, as counsel for the Debtors, will serve as counsel for the jointly administered estates. Kelly Hart requests that this Court evaluate the significant benefits of joint representation to the Debtors and their respective estates before exercising its discretion on this employment application. Kelly Hart submits that the benefits of common representation are numerous, including the benefits of time and cost that single representation provides the Debtors. "The requirement of separate law firms . . . for each debtor's estate would generally be unduly time consuming and impose excessive cost burdens not warranted by the purported benefit to be attained by these requirements." *Collier's* ¶327.04[5][a][i] (16th ed.).

9

22. Kelly Hart's goal is to create efficient, streamlined, cost efficient representation of the Debtors related to the restructuring efforts and bankruptcy filing. Joint representation has been approved by the Debtors.

## Supporting Authority

23. The Debtors seek retention of Kelly Hart as their bankruptcy counsel pursuant to section 327(a) of the Bankruptcy Code, which provides that a debtor subject to Court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a).

24. Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

FED. R. BANKR. P. 2014.

25. The Debtors submit that for all the reasons stated above and in the Phillips Declaration, the retention and employment of Kelly Hart as counsel to the Debtors is warranted. Further, as stated in the Phillips Declaration, Kelly Hart is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates and has no connection to the Debtors, their creditors, or other parties in interest, except as may be disclosed in the Phillips Declaration.

**Interim Relief and Request for Final Hearing**

26. No party-in-interest has requested the appointment of a trustee, and thus no notice of this Application need be given and no hearing thereon need be held prior to entry of an interim order, substantially in the form of **Exhibit A**, approving the employment of Kelly Hart pending final hearing because of the presumption accorded the debtor-in-possession pursuant to Bankruptcy Code § 1107(b).

27. Under Bankruptcy Rule 6003(a), "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding… an application under [Bankruptcy] Rule 2014." Debtors respectfully requests that this Court approve this Application on an interim basis to avoid immediate and irreparable harm because a debtor-in-possession cannot operate (*e.g.*, submit the necessary filings) in chapter 11 without the assistance of legal counsel.

28. Debtors and Kelly Hart request that a final hearing on this Application be set on a date at least 21 days after the Petition Date.

**Statement Regarding U.S. Trustee Guidelines**

29. Kelly Hart shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtors' chapter 11 cases in compliance with sections 330 and 331 of the Bankruptcy Code and applicable provisions of the Bankruptcy Rules, Local Rules, and any other applicable procedures and orders of the Court. Kelly Hart also will make a reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures as set forth in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective As of November 1, 2013* (the "Revised UST Guidelines"),

both in connection with this application and the interim and final fee applications to be filed by Kelly Hart in these chapter 11 cases

30. **Kelly Hart makes the following submissions to comply with the Revised UST Guidelines**, with respect to this Application (and will use its best efforts to comply within these cases going forward):

(i) Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement?  **Answer**: No, Kelly Hart has approached this engagement as it would any engagement and has agreed to no such variation from or alternative to its standard or customary billing arrangements.  The rate structure provided by Kelly Hart is appropriate and is not significantly different from (a) the rates that Kelly Hart charges in other non-bankruptcy representations or (b) the rates of other comparably skilled professionals for similar engagements.

(ii) Do any of the professionals included in the engagement vary their rate based the geographic location of the bankruptcy case?  **Answer**:  No.

(iii) If you represented the client in the 12 months pre-petition, disclose your billing rates and material financial terms for the pre-petition engagement, including any adjustments during the 12 months prepetition.  If your billing rates and material financial terms have changed postpetition, explain the difference and reasons for the difference. **Answer**: Kelly Hart represented the Debtors since February 20, 2019 in connection with restructuring advice, pursuit or restructuring alternatives and preparation of the filing of these bankruptcy cases.  During that time, Kelly Hart charged the Debtors its standard rates, and Kelly Hart continues to charge the Debtors its standard rates post-petition.  Kelly Hart performs an annual analysis of its preferred billing rates and adjusts them for the following year within the last quarter of each year.  Within the firm's standard terms of engagement each client is advised that rates can change and that the rate changes set by the firm for each lawyer will be reflected in the billings once the rate changes are effective.  The same process will apply to this engagement.  With respect to costs and expenses, actual costs and expenses will be passed on to the Debtors, with a couple of exceptions in the Debtors' favor.

(iv) Has your client approved your prospective budget and staffing plan, and if so, for what budget period?  **Answer**:  Yes.  Much attention was given to projected legal fees and expenses in preparing the cash collateral budget filed with the Court.  The cash collateral budget is a 13-week budget, and is aspirational in that it reflects the intention of the Debtors to explore every alternative to arrive at a consensual restructuring with their secured lenders as the alternative to a contested confirmation process.  These Debtors are very cost conscious and as far as Applicant can tell, have given rigorous review to the pre-petition billings of applicant.  As of the filing of this Application Kelly Hart has not proposed a budget and staffing plan other than as found in the cash collateral budget, but

recognizes the U.S. Trustee Guidelines requirements as regards submission of fee applications and will shortly have before the Debtors a monthly proposed budget and staffing plan to be dealt with in fee submissions before this Court and in accordance with fee and expense procedure orders.  The Debtors' declaration as required by the U.S. Trustee Guidelines is attached hereto as **Exhibit D**.

### Notice

31. The Debtors will provide notice of this Motion to: (a) the Office of the United States Trustee for the Middle District of Louisiana; (b) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis, as identified in their chapter 11 petitions; (c) both Hunton Andrews Kurth LLP, counsel to 405 Baxterville LLC, the Debtors' Prepetition Agent and DIP Agent, and to 405 Baxterville LLC; (d) the Internal Revenue Service; (e) parties that have filed a lien on the Debtors' assets and (f) any party that has requested notice pursuant to Bankruptcy Rule 2002 as of the time of service.  Debtors submit that no other or further notice need be provided.

### No Prior Request

32. No prior request for the relief sought herein has been made to this Court or any other court.

**WHEREFORE**, the Debtors and Kelly Hart pray that the Debtors immediately be authorized to employ the firm of Kelly Hart, and any of its attorneys or staff, as the Debtors' bankruptcy counsel, to represent the Debtors as debtor-in-possession under chapter 11 of the Bankruptcy Code on an interim basis, under the terms requested herein, and to fix a final hearing on this Application, and for such other relief as this Court may deem appropriate.

    Respectfully submitted,

    */s/ James E. Orth*
    JAMES E. ORTH
    DEBTORS' PRESIDENT & CEO

AND

**KELLY HART PITRE**

*/s/ Louis M. Phillips*
**Louis M. Phillips (#10505)**
**Patrick (Rick) M. Shelby (#31963)**
**Amelia L. Bueche (#36817)**
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Telephone: (225) 381-9643
Facsimile: (225) 336-9763
Email: louis.phillips@kellyhart.com
Email: rick.shelby@kellyhart.com
Email: amelia.bueche@kellyhart.com

*Proposed Counsel for the Debtors*