# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| FALCON V, L.L.C., *et al.,*[1] | CASE NO. 19- |
| DEBTORS. | (JOINTLY ADMINISTERED) |

### PLAN OF REORGANIZATION OF FALCON V, LLC
### AND ITS AFFILIATED DEBTORS

**KELLY HART PITRE**

Louis M. Phillips
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Telephone: (225) 381-9643

**PROPOSED ATTORNEYS FOR THE
DEBTORS AND DEBTORS IN
POSSESSION**

Dated: _____
May __, 2019.

---

**THIS IS NOT A SOLICITATION OF ACCEPTANCES OF THE CHAPTER 11 PLAN OF FALCON V, LLC AND ITS AFFILIATED DEBTORS IN THESE CHAPTER 11 CASES. ACCEPTANCES MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT AS CONTAINING "ADEQUATE INFORMATION" WITHIN THE MEANING OF SECTION 1125(A) OF THE BANKRUPTCY CODE. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT AND IS SUBJECT TO AMENDMENT PRIOR TO SUCH APPROVAL BEING GRANTED.**

---

[1] The Debtors are the following three entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): Falcon V, L.L.C. (1725); Falcon V Holdings, L.L.C. (8542); and ORX Resources, L.L.C. (9032). The address of the Debtors is 400 Poydras Street, Suite 1100, New Orleans, Louisiana 70130.

# TABLE OF CONTENTS

IN THE UNITED STATES BANKRUPTCY COURT .....................................................1

FOR THE MIDDLE DISTRICT OF LOUISIANA...........................................................1

ARTICLE I DEFINITIONS, RULES OF INTERPRETATION, AND COMPUTATION
        OF TIME.................................................................................................................1
        1.01    Definitions.................................................................................................1

ARTICLE II TREATMENT OF UNCLASSIFIED CLAIMS .......................................14
        2.01    Administrative Expenses ........................................................................14
        2.02    U.S. Trustee Fees....................................................................................15
        2.03    Priority Tax Claims.................................................................................15
        2.04    Professional Fee Claims..........................................................................15
        2.05    Obligations Under the DIP Credit Agreement........................................16
        2.06    Prepetition Lender Adequate Protection Claims.....................................16
        2.07    Other Secured Claims .............................................................................16
        2.08    Other Priority Claims .............................................................................16

ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY
        INTERESTS ..........................................................................................................17
        3.01    Introduction.............................................................................................17
        3.02    Summary of Classes................................................................................17
        3.03    Treatment of Classified Claims and Equity Interests. ...........................17
        3.04    Allowed Claims ......................................................................................19
        3.05    Allocation................................................................................................19
        3.06    Controversy Concerning Impairment......................................................19
        3.07    Elimination of Vacant Classes................................................................19
        3.08    Subordinated Claims...............................................................................19

ARTICLE IV MEANS FOR IMPLEMENTATION OF THIS PLAN AND EFFECTS OF
        CONFIRMATION..................................................................................................19
        4.01    General Settlement of Claims and Interests............................................19
        4.02    Reorganized Debtors...............................................................................20
        4.03    Sources of Cash Consideration for Plan Distributions ..........................20
        4.04    Continued Corporate Existence ..............................................................20
        4.05    Consolidation for Voting and Distribution Purposes..............................20
        4.06    Restructuring Transactions .....................................................................21
        4.07    Cancellation of Securities and Agreements ...........................................21
        4.08    Corporate Action.....................................................................................22
        4.09    Directors and Executive Officers............................................................22
        4.10    Management Incentive Plan.....................................................................23
        4.11    Indemnification Agreements and Arrangements. ...................................23
        4.12    Retirement Plans. ....................................................................................23
        4.13    Revesting of Assets.................................................................................23
        4.14    Preservation of Rights of Action; Settlement of Litigation Claims.......24
        4.15    Waiver of Avoidance Actions.  ..............................................................24
        4.16    Holders of Alleged Secured Claims are Treated as Unsecured Claims.................25

4.17    Effectuating Documents; Further Transactions. ....................................................25
4.18    Exemption from Certain Transfer Taxes ............................................................25

ARTICLE V PROVISIONS GOVERNING DISTRIBUTIONS ...........................................26
5.01    Distributions for Claims and Equity Interests Allowed as of the Effective
        Date ..................................................................................................................26
5.02    Disbursing Agent ...............................................................................................26
5.03    Record Date for Plan Distributions.....................................................................26
5.04    Means of Cash Payment......................................................................................26
5.05    Delivery of Distributions; Undeliverable or Unclaimed Distributions...................26
5.06    Withholding and Reporting Requirements ...........................................................27
5.07    Setoffs ...............................................................................................................27
5.08    Section 1145 Exemption.....................................................................................27
5.09    De Minimis Distributions ...................................................................................27

ARTICLE VI PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND
UNLIQUIDATED CLAIMS ...........................................................................................28
6.01    Procedures Regarding Claims .............................................................................28

ARTICLE VII TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES.........................................................................................................................28
7.01    Assumed Contracts and Leases...........................................................................28
7.02    Payments Related to Assumption of Contracts and Leases ...................................29
7.03    Rejected Contracts and Leases............................................................................29
7.04    Claims Based upon Rejection of Executory Contracts or Unexpired Leases........29
7.05    Oil and Gas Leases.............................................................................................29
7.06    Assumption of D&O Insurance ...........................................................................30

ARTICLE VIII ACCEPTANCE OR REJECTION OF THIS PLAN .........................................30
8.01    Classes Entitled to Vote.....................................................................................30
8.02    Acceptance by Impaired Classes .........................................................................30
8.03    30
8.04    Nonconsensual Confirmation..............................................................................30

ARTICLE IX CONDITIONS PRECEDENT TO EFFECTIVENESS........................................31
9.01    Conditions to Effective Date...............................................................................31
9.02    Absence of Final Order ......................................................................................31
9.03    Waiver of Conditions .........................................................................................31

ARTICLE X MODIFICATIONS AND AMENDMENTS; WITHDRAWAL ............................32

ARTICLE XI RETENTION OF JURISDICTION.................................................................32

ARTICLE XII COMPROMISES AND SETTLEMENTS.......................................................33

ARTICLE XIII MISCELLANEOUS PROVISIONS .............................................................34
13.01    Bar Date for Certain Claims .............................................................................34
13.02    Professional Fee Claims....................................................................................34
13.03    Late Filed Claims.............................................................................................34
13.04    Nonseverability of Plan Provisions....................................................................34
13.05    Successors and Assigns.....................................................................................35
13.06    Discharge of Claims and Termination of Interests ..............................................35

13.07    Injunction ..................................................................................................35
13.08    Debtors' Releases........................................................................................36
13.09    Releases by Holders of Claims and Equity Interests ...........................37
13.10    Exculpation and Limitation of Liability ................................................38
13.11    Binding Effect.............................................................................................39
13.12    Revocation, Withdrawal, or Non-Consummation ................................39
13.13    Committee....................................................................................................39
13.14    Plan Supplement ........................................................................................39
13.15    Notices ........................................................................................................40
13.16    Governing Law ...........................................................................................41
13.17    Prepayment .................................................................................................41
13.18    Section 1125(e) of the Bankruptcy Code.................................................41
13.19    Entire Agreement .......................................................................................41

Falcon V, LLC ("Falcon V"), Falcon V Holdings, LLC ("Falcon Holdings") and ORX Resources, LLC ("ORX"), as debtors and debtors in possession, jointly propose the following plan of reorganization under chapter 11 of the Bankruptcy Code.  Capitalized terms used in this Plan and the accompanying Disclosure Statement not otherwise defined have the meaning set forth in Article I hereof.

## ARTICLE I
## DEFINITIONS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME

1.01    Definitions.    The following terms used in the Plan shall have the respective meanings defined below:

"Administrative Expense" means a Claim for payment incurred between the Petition Date and the Effective Date, inclusive of an administrative expense of a kind specified in Section 503(b)(4) of the Bankruptcy Code and entitled to priority under Section 507(a)(2), including Cure Costs, the and the DIP Lenders Fees and Expenses; provided that Professional Fee Claims shall not constitute "Administrative Expenses" for purposes of the Plan.

"Administrative Expense Bar Date" means the date that is thirty (30) days after the Effective Date, as such date may be extended from time to time by the Debtors prior to the Effective Date with the consent of the Prepetition Agent and DIP Agent and after the Effective Date by the Reorganized Debtors in their sole discretion; provided that the Debtors or the Reorganized Debtors, as applicable, shall promptly file a notice on the docket of the Bankruptcy Court to the extent that the Debtors extend the Administrative Expense Bar Date.

"Advisors" means, as to any Entity, each of such Entity's financial advisors, investment bankers, Professionals, accountants, consultants, representatives, attorneys and other professionals, and each of their respective employees, members, parent corporations, subsidiaries, Affiliates and partners, in each case, in their respective capacities as such.

"Affiliate" shall have the meaning set forth in Section 101(2).

"Allowed" means with respect to Claims: (a) any Claim, proof of which is timely filed by the applicable Bar Date (or for which Claim under the Plan, the Bankruptcy Code, or a Final Order of the Bankruptcy Court, a proof of Claim is not or shall not be required to be filed); (b) any Claim that is listed in the schedules of assets and liabilities as not contingent, not unliquidated, and not disputed, and for which no proof of Claim has been timely filed; or (c) any Claim allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; provided that, with respect to any Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that with respect to such Claim no objection to the allowance thereof has been interposed at any time prior to or after the Effective Date within the applicable period of time, if any, fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim shall have been Allowed by a Final Order.  In no event shall the Allowed amount of any Claim exceed 100 percent of the principal amount of such Claim or, except as expressly provided herein, include any amount for interest accruing after the Petition Date.  Any Claim that (x) has been or is hereafter listed in the

schedules of assets and liabilities as contingent, unliquidated, or disputed, and for which no proof of Claim is or has been timely filed, or (y) is enjoined or released pursuant to the Plan, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to Section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes such Debtor. For the avoidance of doubt, a proof of Claim filed after the applicable Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-filed Claim. "Allow" and "Allowing" shall have correlative meanings.

"Avoidance Actions" means any actions commenced, or that may be commenced, before or after the Effective Date pursuant to Sections 544, 545, 547, 548, 549, 550, 551 or 553.

"Ballot" means any ballot for voting to accept or reject the Plan.

"Bankruptcy Code" means title 11 of the United States Code, as now in effect or hereafter amended.

"Bankruptcy Court" means the United States Bankruptcy Court for the Middle District of Louisiana, including the United States District Court for the Middle District of Louisiana at any time the reference of the Chapter 11 Cases to the United States Bankruptcy Court for the Middle District of Louisiana or any matter or proceeding in the Chapter 11 Cases, was or shall be withdrawn.

"Bankruptcy Rules" means collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, the Federal Rules of Civil Procedure, as applicable to the Chapter 11 Cases or proceedings therein, the local rules of the Bankruptcy Court, and the general, local, and chambers rules of the Bankruptcy Court, in each case, as now in effect or hereafter amended.

"Bar Date" means, (i) with respect to Administrative Expense Claims, the Administrative Expense Bar Date; (ii) with respect to Professional Fee Claims, thirty (30) days after the Effective Date; and (iii) with respect to all other Claims, the deadline to file such Claim established by the [*Order (A) Fixing Claims Bar Date for the Filing of Proofs of Claim; (B) Fixing the Governmental Unit Bar Date for the Filing of Proofs of Claim by Governmental Units; (C) Approving the Form and Content of the Bar Date Notices; (D) Approving the Method and Manner of Disseminating the Bar Date Notices and the Publication Notices; and (E) Granting Related Relief* [Docket No. ___]]. The Bar Date for Holders of Claims that are not Governmental Units or are not Administrative Expense Claims is _____. The Bar Date for Holders of Claims that are Governmental Units that are not Administrative Expense Claims is _____.

"Business Day" means any day, excluding Saturdays, Sundays or "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in Houston, Texas.

"Cash" means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

"Causes of Action" means all actions, causes of action, liabilities, obligations, rights, suits, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims or any other claims or causes of action whatsoever, whether known or unknown, matured or unmatured, fixed or contingent, liquidated or unliquidated, disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date.  Causes of Action includes Avoidance Actions.

"CEO" means the chief executive officer of the Debtors or Reorganized Debtors as applicable.

"Certificate" means any certificate, instrument, or other document evidencing an Equity Interest.

"Chapter 11 Cases" means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court, and (b) when used with reference to all Debtors, the jointly administered chapter 11 cases pending for the Debtors in the Bankruptcy Court.

"Claim" means a claim, as defined in Section 101(5), against a Debtor.

"Claim Objection Deadline" means the first Business Day that is the latest of (i) 180 days after the Effective Date; (ii) such other date as may be established by the Bankruptcy Court; provided that the Debtors or the Reorganized Debtors, as applicable, shall promptly file a notice on the docket of the Bankruptcy Court to the extent that the Reorganized Debtors, extend the Claims Objection Deadline.

"Class" means one of the classes of Claims or Equity Interests described in Article III of the Plan pursuant to Section 1122(a).

"Class 2 Cash Distribution" means $200,000 in Cash that shall be distributed pro rata to the Holders of Allowed Unsecured Claims.  To the extent the total amount of Allowed Unsecured Claims is less than $200,000, the Unsecured Claims Cash Distribution shall be reduced to the total amount of Allowed Unsecured Claims.

"Committee" means any official committee, including an official committee of unsecured creditors (if any), appointed in the Chapter 11 Cases, as any such committee may be reconstituted from time to time by the United Street Trustee.

"Confirmation" means the Bankruptcy Court's entry of the Confirmation Order on the docket in the Chapter 11 Cases, in accordance with Section 1129.

"Confirmation Date" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases.

"Confirmation Hearing" means the Bankruptcy Court's hearing on Confirmation of the Plan pursuant to Section 1129 , as it may be adjourned or continued from time to time.

"Confirmation Order" means the Bankruptcy Court's order confirming the Plan pursuant to Section 1129.  The Confirmation Order shall be in form and substance acceptable to the Debtors, the Plan Sponsor, the DIP Agent and Prepetition Agent.

"Consummation" means the occurrence of the Effective Date.

"Continuing" has the meaning set forth in Section 4.12 of this Plan.

"Cure Cost" means the payment of Cash by a Debtor, to the extent necessary pursuant to Sections 365(a) and 1123, as applicable, to cure a default by a Debtor under an executory contract or unexpired lease of a Debtor and to permit a Debtor to assume such contract or lease under Sections 365(a) or 1123, as applicable.

"Debtor" means each of Falcon V, Falcon Holdings, and ORX on and after the Petition Date, and "Debtors" means all of them collectively, and when the context so requires.

"DIP Agent" means 405 Baxterville LLC, in its capacity as administrative agent under the DIP Credit Agreement and any successor administrative agent thereunder.

"DIP Claims" means any Claim of the DIP Lenders arising under the DIP Credit Agreement, in each case, in their respective capacities as such.

"DIP Collateral" means all property of the Estate that is collateral under the Liens securing the DIP Claims under and in accordance with the DIP Credit Agreement and the DIP Financing and Cash Collateral Order.

"DIP Credit Agreement" means that certain Debtor-in-Possession Credit Agreement, by and among Falcon V, LLC, Falcon V Holdings, LLC and ORX Resources, as borrowers., 405 Baxterville LLC, as Administrative Agent, and the lenders from time to time party thereto, which agreement was approved by the DIP Financing and Cash Collateral Order, together with all and such other agreements, documents, certificates and instruments delivered or executed from time to time in connection therewith.

"DIP Financing and Cash Collateral Order" means, as applicable, (i) the interim order entered by the Bankruptcy Court [Docket No. ___] authorizing the use of cash collateral and approving the DIP Credit Agreement on an interim basis, and (ii) the order of the Bankruptcy Court authorizing the use of cash collateral and approving the DIP Credit Agreement on a final basis [Docket No. ___] (which order shall be in form and substance satisfactory to the DIP Agent and Prepetition Agent).

"DIP Lenders" means the lenders party to the DIP Credit Agreement from time to time, in each case, in their respective capacities as such.

"DIP Lenders Fees and Expenses" means all reasonable and documented fees and expenses of the DIP Agent and DIP Lenders, including, but not limited to, the fees and expenses of Hunton Andrews Kurth LLP and Baker Donelson, Bearman, Caldwell & Berkowitz, PC.

"Disallowed Claim" means any Claim against any Debtor that has not been Allowed, in whole or in part, by Final Order of the Bankruptcy Court, or that has been withdrawn, in whole or in part, by the Holder thereof.

"Disbursing Agent" means, as applicable, the Reorganized Debtors or any party designated by the Reorganized Debtors, in their sole discretion, to serve as a disbursing agent under the Plan to make or facilitate distributions pursuant to the Plan.

"Disclosure Statement" means the Disclosure Statement to Accompany Plan of Reorganized of Falcon V, L.L.C. and its Affiliated Debtors, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law as the same may be amended, supplemented or modified from time to time with the consent of the Debtors, the DIP Lenders and the Prepetition Lenders (which consent shall not be unreasonably withheld).

"Disputed" means, with respect to any Claim or Equity Interest, any Claim or Equity Interest to which the Debtors or any other party in interest has filed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules or that is otherwise disputed by the Debtors in accordance with applicable law.

"Distribution" means any distribution made under the Plan to the Holders of Allowed Claims.

"Distribution Date" means the Effective Date (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter) or, if not the Effective Date, such date occurring as soon as reasonably practicable after the Effective Date, on which the Disbursing Agent first makes Distributions to Holders of Allowed Claims, if any, as provided in the Plan.

"Effective Date" means the date that is the first Business Day after the Confirmation Date on which the (a) conditions to the Plan's consummation set forth in Section 9.02 hereof have been satisfied or waived in accordance with the terms hereof and (b) no stay of the Confirmation Order is in effect.

"Entity" shall have the meaning set forth in Section 101(15), including all Persons.

"Equity Interests" means any membership interest or other ownership interest in any of the Debtors and includes any Claims arising from or related to any of the foregoing, which claims shall be deemed subordinated pursuant to Section 510(b) in all respects.

"Estate" means the estate of any of the Debtors in the Chapter 11 Cases, and "Estates" means, collectively, the estates of all of the Debtors in the Chapter 11 Cases, as created under Section 541.

"Exculpated Party" means, collectively, and in each case in its respective capacity as such:  (a) the Debtors; (b) the Plan Sponsor; (c) the Prepetition Agent, (d) the Prepetition Lenders; (e) the DIP Agent, (f) the DIP Lenders and (g) with respect to each of the foregoing, such entity and its current and former affiliates, and such entity's and its current and former affiliates' current and former equity Holders (regardless of whether such interests are held directly or indirectly),and current and former members, subsidiaries, officers, directors, managers, principals, employees, agents, advisory board members, financial advisors, partners, advisers, sub-advisers, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, in each case, solely in their respective capacities as such and regardless of whether currently having such capacity.

"Exit Facility" means the Exit Facility Credit Agreement and all related guaranty, security, and other documents in form and substance reasonably acceptable to the Debtors, the DIP Lenders and the Exit Facility Lenders, to be entered into by the Reorganized Debtors on the Effective Date, for a credit facility in the aggregate principal amount of up to $11 million or in some other amount as may be agreed by the Debtors, DIP Lenders and the Exit Facility Lenders in their sole discretion and disclosed in the Plan Supplement.  The Exit Facility shall be secured by first priority senior liens on substantially all of the Debtors assets upon the Effective Date.

"Exit Facility Agent" means the administrative agent for the Exit Facility Lenders.

"Exit Facility Collateral" means the aggregate of all of the DIP Collateral and the Prepetition Lenders Secured Claim Collateral.

"Exit Facility Credit Agreement" means the credit agreement with respect to the Exit Facility.  If the Exit Facility is agreed, the Exit Facility Credit Agreement shall be in form and substance reasonably acceptable to the Debtors, the Exit Facility Agent, the Exit Facility Lenders and the DIP Lenders and in substantially the form to be contained in the Plan Supplement.

"Exit Facility Lenders" means, collectively, the Exit Facility Agent and the lenders under the Exit Facility Credit Agreement together with successors and assigns.

"Face Amount" means when used in reference to (a) a Disputed Claim, the full stated amount claimed by the Holder thereof in any proof of Claim timely filed with the Bankruptcy Court, (b) an Allowed Claim, the Allowed amount thereof, and (c) an Equity Interest, the number of units, interests or shares, as applicable, evidencing such Equity Interests or the liquidation preference amount, as applicable.

"Falcon V" means Falcon V, L.L.C., a Louisiana limited liability company and Debtor in the Chapter 11 Cases.

"Falcon V Interests" means, without duplication, all membership interests of Falcon V issued and outstanding immediately prior to the Effective Date, including, but not limited to, (a) all unexercised incentive stock or membership interest options, non-qualified stock or membership interest options, and stock or membership interest appreciation rights granted under any Falcon V sponsored stock or membership interest option plans, (b) any other unexercised options, warrants, or rights, contractual or otherwise, if any, to acquire or receive an Equity Interest existing immediately before the Effective Date, (c) all interests in Falcon V issued and held in treasury as of immediately before the Effective Date, and (d) any other Equity Interests in Falcon V.

"Falcon Holdings" means Falcon V Holdings, L.L.C. a Louisiana limited liability company and a Debtor in the Chapter 11 Cases.

"Falcon Holdings Interests" means, without duplication, all membership interests of Falcon Holdings issued and outstanding immediately prior to the Effective Date, including, but not limited to, (a) all unexercised incentive stock or membership interest options, non-qualified stock or membership interest options, and stock or membership interest appreciation rights granted under any Falcon Holdings sponsored stock or membership interest option plans, (b) any other unexercised options, warrants, or rights, contractual or otherwise, if any, to acquire or receive an Equity Interest existing immediately before the Effective Date, (c) all interests in Falcon V Holdings issued and held in treasury as of immediately before the Effective Date, and (d) any other equity interests in Falcon Holdings.

"Final Order"[2] means, as applicable, an order or judgment, entered by the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, that has not been amended, modified or reversed, and as to which (i) no stay is in effect, (ii) the time to seek rehearing, file a notice of appeal or petition for certiorari has expired, (iii) no appeal, request for stay, petition seeking certiorari, or other review has been timely filed and is pending and (iv) any appeal that has been taken, any petition for certiorari, or motion for a new trial, reargument or rehearing that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; provided that the possibility that a motion under Section 502(j), Rule 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule (whether federal or state) may be but has not then been filed with respect to such order shall not cause such order not to be a Final Order.

"Holder" and, collectively, "Holders," means a Person or Entity legally or beneficially, as applicable, holding a Claim or Equity Interest.

"Impaired" means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of Section 1124.

---

[2] NTD: Debtors to provide revised language.

"Impaired Claim" means a Claim classified in an Impaired Class.

"Impaired Class" means each of Classes 1 through 4, as set forth in Article III of the Plan.

"Intercompany Claims" means any Claim against any Debtor by or among any other Debtor(s), other than Administrative Expenses.

"Lien" means any lien, lease, right of first refusal, servitude, Claim, pledge, option, charge, hypothecation, easement, security interest, right-of-way, encroachment, mortgage, deed of trust, and/or any other encumbrance, restriction or limitation whatsoever.

"Management Incentive Plan" means the management incentive plan to be adopted by the New Board pursuant to which Management Stock may be issued and/or cash bonuses may be awarded.

"Management Stock" means the restricted shares of New Falcon Interests authorized by the New Board to be issued by Reorganized Debtors under the Management Incentive Plan.

"New Board" means the initial Board of Directors or Board of Managers, as the case may be, for the Reorganized Debtors on the Effective Date, as the same may be constituted from time to time (subject to the New Organizational Documents).

"New Falcon Interests" means all of the new common equity authorized by the Plan to be issued by any of the Reorganized Debtors on the Effective Date, the terms of which shall be disclosed in the Plan Supplement and shall otherwise be in form and substance reasonably acceptable to the Debtors, the Plan Sponsor, the Prepetition Agent and DIP Agent.

"New Organizational Documents" means such certificates or articles of incorporation, formation, or conversion, limited liability company agreements, by-laws, or such other applicable formation and governance documents of each of the Reorganized Debtors, in substantially the form contained in the Plan Supplement.  The New Organizational Documents shall be in form and substance reasonably acceptable to the Debtors, the Plan Sponsor, DIP Lenders and Prepetition Lenders.

"New Second Lien Facility" means the New Second Lien Facility Credit Agreement and all related guaranty, security, and other documents in form and substance reasonably acceptable to the Debtors, the Prepetition Lenders and the New Second Lien Lenders, to be entered into by the Reorganized Debtors on the Effective Date, for a credit facility in the aggregate principal amount of up to $0 million or in some other amount as may be agreed by the Debtors, and the New Second Lien Lenders in their sole discretion and disclosed in the Plan Supplement.  The New Second Lien Facility shall be secured by second priority liens on substantially all of the Debtors assets upon the Effective Date, junior and subordinate to the liens under the Exit Facility in all respects.

"New Second Lien Credit Agreement " means the credit agreement with respect to the New Second Lien Facility.  If the New Second Lien Facility is agreed, the New Second Lien Credit Agreement shall be in form and substance reasonably acceptable to the Debtors, the New Second Lien Lenders and the New Second Lien Agent in substantially the form to be contained in the Plan Supplement.  Such credit facility shall be secured by a second-priority lien, junior and subordinate to the Exit Facility in all respects, on substantially all of the Debtors' assets.

"New Second Lien Agent" means the Entity selected by the New Second Lien Lenders to act as the administrative agent and collateral agent under the New Second Lien Credit Agreement.

"New Second Lien Lenders" means the lender or lenders under the Prepetition Loan Agreement and their successors and permitted assigns, in each case, in their respective capacities as such.

"Oil and Gas Lease" means as any instrument, conveyance, or other document in favor of any Debtor by which a leasehold, working interest, easement, right-of-way or other right to extract, transport or inject oil, gas or other liquid or gaseous hydrocarbons or liquids or gases produced or used in connection with such Debtor's oil and gas exploration, development and production operations is created.

"ORX" means ORX Resources, LLC, a Delaware limited liability company and a Debtor in the Chapter 11 Cases.

"ORX Interests" means, without duplication, all membership interests of ORX issued and outstanding immediately prior to the Effective Date, including, but not limited to, (a) all unexercised incentive stock or membership interest options, non-qualified stock or membership interest options, and stock or membership interest appreciation rights granted under any ORX sponsored stock or membership interest option plans, (b) any other unexercised options, warrants, or rights, contractual or otherwise, if any, to acquire or receive an Equity Interest existing immediately before the Effective Date, (c) all interests in ORX issued and held in treasury as of immediately before the Effective Date, and (d) any other Equity Interests in ORX.

"Other Priority Claim" means a Claim entitled to priority under Section 507(a), other than a Priority Tax Claim, an Administrative Expense, a Professional Fee Claim and a Prepetition Lender Adequate Protection Claim.

"Other Secured Claim" means a Secured Claim (other than a Prepetition Loan Agreement Claim or a Secured Tax Claim) that is secured by a Lien on assets of the Debtors and such Lien is senior in priority to the Liens securing the Prepetition Loan Agreement Claims on such assets.

"Person" shall have the meaning set forth in Section 101(41).

"Petition Date" means May __, 2019, the date on which the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

"Plan" means this chapter 11 plan of reorganization, including the exhibits and schedules hereto, as the same may be amended, modified or supplemented from time to time in accordance with the provisions of the Bankruptcy Code, with the consent of the Debtors, the Plan Sponsor, DIP Lenders.

"Plan Sponsor" means Arena Investors, LP.[3]

"Plan Supplement" means:  (a) Exit Facility Credit Agreement; (b) the New Second Lien Credit Agreement (c) the Management Incentive Plan; (d) the identities of the initial members of the New Board and the Reorganized Debtors' CEO; (e) the schedule of executory contracts and unexpired leases to be assumed by the Debtors and schedule of executory contracts and unexpired leases to be rejected; (f) the list of retained Causes of Action; and (g) the description of the New Falcon Interests.  The Plan Supplement shall be filed with the Bankruptcy Court on or before the date that is seven (7) days prior to the Plan voting deadline.  Any reference to the Plan Supplement in this Plan shall include each of the documents identified above.  The Plan Supplement shall be in form and substance acceptable to the Debtors and the Plan, Prepetition Lenders and DIP Lenders.

"Prepetition Lenders Fees and Expenses" means all reasonable and documented fees and expenses of the Prepetition Agent and Prepetition Lenders, including, but not limited to, the fees and expenses of Hunton Andrews Kurth LLP and Baker Donelson, Bearman, Caldwell & Berkowitz, PC.

Prepetition Loan Agreement" means the Loan Agreement, dated as of May 24, 2018, by and among the Debtors as borrowers, the Prepetition Agent, and the lenders parties thereto, as amended, restated, supplemented, or otherwise modified from time to time, together with all and such other agreements, documents, certificates and instruments delivered or executed from time to time in connection therewith.

"Prepetition Agent" means 405 Baxterville LLC, in its capacity as administrative agent under the Prepetition Loan Agreement, and any successor administrative agent thereunder.

"Prepetition Loan Agreement Claims" means all Claims of lenders or the Prepetition Agent, under the Prepetition Loan Agreement, which shall be Allowed in the aggregate amount of $42,583,523.65 (inclusive of principal, accrued but unpaid interest, and make-whole or similar Claim amounts, in each case, as of the Petition Date).

"Prepetition Lenders Secured Claim Collateral" means all property of the Estate that is collateral under the Liens securing the Prepetition Lenders Secured Claims and the Prepetition Lender Adequate Protection Claims under and in accordance with the Prepetition Loan Agreement and the DIP Financing and Cash Collateral Order.

"Prepetition Lenders" means the lenders party to the Prepetition Loan Agreement  from time to time, in each case, solely in their respective capacities as such.

"Prepetition Lender Adequate Protection Claims" means any Claims for adequate protection of the Prepetition Lenders or the Prepetition Agent as set forth in the DIP Financing and Cash Collateral Order, including adequate protection liens and claims granted thereunder under Sections 361, 363, 503 and/or 507(b).

"Prepetition Lender Deficiency Claims" means, collectively, the unsecured portion of the Prepetition Loan Agreement Claims representing the difference between the total amount of the Prepetition Loan Agreement Claims and the Prepetition Lender Secured Claims.

"Prepetition Lender Secured Claims" means the secured portion of the Prepetition Loan Agreement Claims, which shall be Allowed in the amount of $42,583,523.65 against the Debtors.

"Priority Tax Claim" means any Claim that is entitled to priority under Section 507(a)(8).

"Professional" means an Entity: (a) employed pursuant to a Bankruptcy Court order in accordance with Sections 327, 363, or 1103 and to be compensated for services rendered prior to or on the Effective Date, pursuant to Sections 327, 328, 329, 330, and 331; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to Section 503(b)(4).

"Professional Fee Claim" means a Professional's Claim for compensation or reimbursement of costs and expenses under Sections 327, 328, 330, 331, 503(b) (other than 503(b)(4)) or 1103 for services rendered to the Debtors or the Committee on and after the Petition Date but before and including the Effective Date. For the avoidance of doubt, Professional Fee Claim does not include Plan Sponsor Fees and Expenses, DIP Lender Fees and Expenses, or Prepetition Lender Fees and Expenses.

"Properties" means the property of the Estates comprising the Oil and Gas Leases, including wells, facilities, pipelines, real property upon which facilities are located, and all property involved in the exploration for, production and handling of oil, gas and minerals and the production of such.

"Pro Rata" means, at any time, with respect to any Class, the proportion that the Face Amount of a Holder's Allowed Claim in such Class bears to the aggregate Face Amount of all Allowed Claims (including Disputed Claims, but excluding Disallowed Claims) in such Class.

"Record Date for Plan Distribution" means, for purposes of receiving a Distribution under the Plan, the date that is the second Business Day after the Confirmation Date.

"Reinstated" or "Reinstatement" means (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim or Equity Interest entitles the Holder of such Claim or Equity Interest so as to leave such Claim or Equity Interest Unimpaired; or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of a Claim or Equity Interest to demand or receive accelerated payment of such Claim or Equity Interest after the occurrence of a default: (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in Section 365(b)(2) or of a kind that Section 365(b)(2) expressly does

not require to be cured; (ii) reinstating the maturity (to the extent such maturity has not otherwise accrued by the passage of time) of such Claim or Equity Interest as such maturity existed before such default; (iii) compensating the Holder of such Claim or Equity Interest for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; (iv) if such Claim or Equity Interest arises from a failure to perform a nonmonetary obligation other than a default arising from failure to operate a nonresidential real property lease subject to Section 365(b)(1)(A), compensating the Holder of such Claim or Equity Interest (other than a Debtor or an insider) for any actual pecuniary loss incurred by such Holder as a result of such failure; and (v) not otherwise altering the legal, equitable, or contractual rights to which such Claim or Equity Interest entitles the Holder.

"Released Parties" means each of the following in their respective capacity as such: (a) the Prepetition Lenders; (b) the Prepetition Agent; (c) the DIP Lenders; (d) the DIP Agent; (e) the Plan Sponsor; (f) with respect to each of the Debtors, the Reorganized Debtors, and each of the foregoing Entities in clauses (a) through (e), each such Entity's current and former predecessors, successors, Affiliates (regardless of whether such interests are held directly or indirectly), subsidiaries, funds, portfolio companies, management companies; (g) with respect to the Debtors and the Reorganized Debtors and each of the foregoing Entities in clauses (a) through (e), each of their respective current and former directors, officers, members, employees, partners, advisers, sub-advisers, managers, independent contractors, agents, representatives, principals, professionals, consultants, financial advisors, attorneys, accountants, investment bankers, and other current and former professional advisors (with respect to clause (g), each solely in their respective capacity as such); provided that any Holder of a Claim or Equity Interest that opts out of the releases contained in the Plan shall not be a "Released Party."

"Releasing Party" means each of the following in their respective capacity as such: (a) the Prepetition Lenders; (b) the Prepetition Agent; (c) the DIP Lenders; (d) the DIP Agent; (e) the Plan Sponsor; (f) with respect to each of the Debtors, the Reorganized Debtors, and each of the foregoing Entities in clauses (a) through (e), each such entity's current and former predecessors, successors, Affiliates (regardless of whether such interests are held directly or indirectly), subsidiaries, funds, portfolio companies, management companies; (g) with respect to each of the foregoing Entities in clauses (a) through (e), each of their respective current and former directors, officers, members, employees, partners, advisers, sub-advisers, managers, independent contractors, agents, representatives, principals, professionals, consultants, financial advisors, attorneys, accountants, investment bankers, and other professional advisors (with respect to clause (g), each solely in their respective capacity as such); (g) all Holders of Claims and Interests that are deemed to accept the Plan; (h) all Holders of Claims and Interests who vote to accept the Plan; and (i) all Holders in voting Classes who abstain from voting on the Plan and who do not opt out of the releases provided by the Plan.

"Reorganized Debtors" means each of Reorganized Holdings and the Other Reorganized Debtors.

"Reorganized Falcon" means Falcon V, as reorganized as a corporation or limited liability company incorporated or formed, as applicable, pursuant to applicable state law and the Plan, on and after Consummation.

"Reorganized Holdings" means Falcon Holdings, as reorganized as a corporation or limited liability company incorporated or formed, as applicable, pursuant to applicable state law and the Plan, on and after Consummation.

"Reorganized ORX" means ORX, as reorganized as a corporation or limited liability company incorporated or formed, as applicable, pursuant to applicable state law and the Plan, on and after Consummation.

"Restructuring Transactions" means collectively, the transactions and transfers described in Article IV of the Plan.

"SEC" means the United States Securities and Exchange Commission.

"Section" means a Section of the Bankruptcy Code.

"Secured Tax Claim" means a property tax Claim under Section 507(a)(8)(B) and subject to Section 1129(a)(9)(C).

"Securities Act" means the Securities Act of 1933, as now in effect or hereafter amended.

"Secured Claim" means a Claim that is a "secured claim" within the meaning of Section 506(a)(1) of the Bankruptcy Code.

"Solicitation" means the solicitation by the Debtors from Holders of Claims and Equity Interests entitled to vote on the Plan pursuant to Section 1126(b).

"Unimpaired" means, with respect to a Claim (or Class of Claims) or Equity Interest (or Class of Equity Interests), a Claim (or Class of Claims) or Equity Interest (or Class of Equity Interests) that is not impaired within the meaning of Section 1124 of the Bankruptcy Code.

"Unimpaired Class" means, solely with respect to a Class of Claims or a Class of Interests, a Class of Claims or Interests, as applicable, that is not impaired pursuant to Section 1124.

"Unsecured Claim" means any Claim that is neither a Secured Claim nor entitled to priority under the Bankruptcy Code or any order of the Bankruptcy Court. The term "Unsecured Claims" includes, but is not limited to, the Prepetition Loan Agreement Deficiency Claims and any Claim arising from the rejection of an Executory Contract or Unexpired Lease under Section 365.

a)      Scope of Definitions; Rules of Construction; Rules of Interpretation; Computation of Time. Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter. Unless otherwise specified, all section, article, schedule, or exhibit references in this Plan are to the respective section in, article of, or schedule or exhibit to this Plan, as the same may be amended, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this

Plan as a whole and not to any particular section, subsection, or clause contained therein. A term used in this Plan that is not defined in this Plan shall have the meaning assigned to that term in the Bankruptcy Code. The rules of construction contained in Section 102 shall apply to this Plan. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

b)   Unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions.

c)   In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) will apply. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day. Any reference in this Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified or supplemented pursuant to this Plan. Any reference to an Entity as a Holder of a Claim or Equity Interest includes that Entity's legal successors and assigns.

d)   This Plan is the product of extensive discussions and arm's-length negotiations between and among the Debtors, Prepetition Agent, Prepetition Lenders, DIP Agent, DIP Lenders and the Plan Sponsor, subject to required disclosure and solicitation of votes under Section 1125. Each of the foregoing was represented by counsel who participated in the formulation and documentation of the Plan, the Disclosure Statement, the Plan Supplement and the other relevant and necessary documents ancillary thereto, as applicable. The documentation related to the Restructuring Transactions, the Plan and Disclosure Statement shall not be construed against the drafter. Although the Plan Sponsor had the opportunity to comment on this Plan and Disclosure Statement, (i) the Debtors are the sole proponents of this Plan and (ii) all disclosures set forth therein is solely the responsibility of the Debtors. To the extent that the provisions of this Plan conflict or are inconsistent with the provisions set forth in any document in the Plan Supplement, the document in the Plan Supplement, as applicable, shall govern.

e)   All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

## ARTICLE II
## TREATMENT OF UNCLASSIFIED CLAIMS

In accordance with Section 1123(a)(1), Administrative Expenses, Priority Tax Claims, Professional Fee Claims, the DIP Claims, Prepetition Lender Adequate Protection Claims and Other Priority Claims are not classified and are not entitled to vote on this Plan.

2.01   <u>Administrative Expenses</u>. Except to the extent that any Entity entitled to payment of any Allowed Administrative Expense agrees to a less favorable treatment, each Holder of an Allowed Administrative Expense shall receive Cash equal to the unpaid portion of its Allowed

Administrative Expense, on the latest of (a) the Distribution Date, (b) the date on which its Administrative Expense becomes an Allowed Administrative Expense, and (c) the date on which its Administrative Expense becomes payable under any agreement relating thereto, or as soon thereafter as is reasonably practicable.   Notwithstanding the foregoing, any Allowed Administrative Expense based on a liability incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases shall be paid by the Debtors or the Reorganized Debtors as Administrative Expenses in the ordinary course of the Debtors' businesses, in accordance with the terms and conditions applied to the United States Trustee fees or of any agreement relating to such other Administrative Expenses or upon such other terms as may be agreed upon between the Holder of such Administrative Expense and the Debtors, without application by or on behalf of any such parties to the Bankruptcy Court, and without notice and a hearing.

Applications for payment of Administrative Expense Claims (including requests for compensation under Section 503(b)(3), (4), and (9)) must be filed with the Bankruptcy Court and served on the Reorganized Debtors and Plan Sponsor no later than the Administrative Expenses Bar Date.  Applications for payment of Administrative Expense Claims filed after this date shall be discharged, forever bared and shall receive no payment under this Plan.  Notwithstanding the foregoing, the following parties shall not be required to file applications for payment: (i) Holders of the DIP Lenders Fees and Expenses; (ii) Holders of the Plan Sponsor Fees and Expenses (iv) Administrative Expenses paid in the ordinary course of business pursuant to Article 2.01 hereof; and (v) Claims for United States Trustee fees.

2.02   U.S. Trustee Fees.   All fees payable under section 1930 of title 28 of the United States Code shall be paid on or before the Effective Date.   All such fees that arise after the Effective Date but before the closing of the Chapter 11 Cases shall be paid by the Reorganized Debtors.

2.03   Priority Tax Claims.   Except to the extent that a Holder of a Priority Tax Claim agrees to less favorable treatment, pursuant to Section 1129(a)(9)(A) or (B), on the later of (a) the Distribution Date and (b) the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Tax Claim, (x) Cash equal to the unpaid portion of such Allowed Priority Tax Claim or (y) such other treatment as to which the Reorganized Debtors and such Holder shall have agreed upon in writing.   The Holder of an Allowed Priority Tax Claim will not be entitled to receive any payment on account of any penalty arising with respect to or in connection with the Allowed Priority Tax Claim. Any such Claim or demand for any such penalty will be subject to treatment in Class 4.

2.04   Professional Fee Claims.   Unless otherwise ordered by the Bankruptcy Court, the Holders of Professional Fee Claims shall file their respective final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in connection with such services through the Effective Date by no later than the Administrative Expense Bar Date.  Applications for payment of Professional Fee Claims filed after this date shall be discharged, forever bared and shall receive no payment under this Plan.  If granted by the Bankruptcy Court, such Claim shall be paid in full in such amount as is Allowed by the Bankruptcy Court on the date such Professional Fee Claim becomes an Allowed Professional

Fee Claim, or as soon as reasonably practicable thereafter. Upon the Effective Date, any requirement that Professionals comply with Sections 327 through 331, 363, and 1103 in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court. Notwithstanding the foregoing, the following parties shall not be required to file fee applications: (i) Holders of the Prepetition Lenders Fees and Expenses; (ii) Holders of the DIP Lenders Fees and Expenses; (iii) Holders of the Plan Sponsor Fees and Expenses (iv) Administrative Expenses paid in the ordinary course of business pursuant to Article 2.01 hereof; and (v) Claims for United States Trustee fees.

2.05    Obligations Under the DIP Credit Agreement.  On the Effective Date, the Debtors shall, at the option of the DIP Agent on behalf of the DIP Lenders: (a) repay or refinance all DIP Claims; (b) roll the DIP Claims into the Exit Facility; or (c) convert the DIP Claims into New Falcon Interests.

2.06    Prepetition Lender Adequate Protection Claims.  If Class 2 votes to Accept the Plan,  any Allowed Prepetition Lender Adequate Protection Claim that has not been paid in full in cash during the Chapter 11 Cases shall be waived on the Effective Date.  If Class 2 does not vote to accept the Plan, any Allowed Prepetition Lender Adequate Protection Claim will be paid prior to any recovery to Class 2 and Class 2 shall receive no Cash Distribution.

2.07    Other Secured Claims.  Except to the extent a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, on the latest of (x) the Effective Date, (y) the date on which an Other Secured Claim becomes an Allowed Other Secured Claim, and (z) such other date as may be ordered by the Bankruptcy Court, or, in each case, as soon as reasonably practicable thereafter, each Allowed Other Secured Claim shall be, at the election of the Debtors: (i) Reinstated, (ii) paid in Cash, in full satisfaction, settlement, release and discharge of such Allowed Other Secured Claim, (iii) satisfied by the Debtors' surrender of the collateral securing such Allowed Other Secured Claim, or (iv) offset against, and to the extent of, the Debtors' claims against the Holder of such Allowed Other Secured Claim.  Each Holder of an Other Secured Claim is Unimpaired, not entitled to vote, and conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

2.08    Other Priority Claims.  Except to the extent that a Holder of an Other Priority Claim agrees to less favorable treatment, each Holder of an unpaid Allowed Other Priority Claim against the Debtors shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Other Priority Claim, Cash equal to the full amount of its Allowed Other Priority Claim by the Debtors or the Reorganized Debtors, as applicable in the ordinary course of business. Each Holder of an Allowed Other Priority Claim is Unimpaired, not entitled to vote, and conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

**ARTICLE III**
**CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**

3.01    <u>Introduction</u>.  This Plan places all Claims and Equity Interests, except unclassified Claims provided for in Article II, in the Classes listed below.  Unless otherwise stated, a Claim or Equity Interest is placed in a particular Class only to the extent that it falls within the description of that Class, and is classified in any other Class to the extent that any portion thereof falls within the description of such other Class.

3.02    <u>Summary of Classes</u>

| <u>CLASS</u> | <u>DESIGNATION</u> | <u>IMPAIRMENT</u> | <u>ENTITLED TO VOTE</u> |
|---|---|---|---|
| Class 1 | Prepetition Lender Secured Claim | Impaired | Yes |
| Class 2 | Unsecured Claims | Impaired | Yes |
| Class 3 | Intercompany Claims | Impaired | No (deemed to reject) |
| Class 4 | Equity Interests | Impaired | No (deemed to reject) |

3.03    Treatment of Classified Claims and Equity Interests.

a)    CLASS 1 - PREPETITION LENDER SECURED CLAIM

i)    <u>Claims in Class</u>: Class 1 consists of Allowed Prepetition Lender Secured Claims.

ii)    <u>Allowance</u>:  The Allowed Prepetition Lender Secured Claims shall be Allowed as Secured Claims in the amount no less than [$_____] against each of the Debtors.

iii)    <u>Treatment</u>:  On the Effective Date, except to the extent that a Holder of a Class 1 Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for the Prepetition Lender Secured Claim against the Debtors, each such Holder shall receive its respective Pro Rata share of: (A) the New Second Lien Facility; and (B) 100% of the New Falcon Interests (subject to dilution by the Management Incentive Plan and the DIP Claims to the extent the Plan Sponsor elects to convert the DIP Claims into New Falcon Interests).

iv)    <u>Voting</u>: Class 1 is Impaired by the Plan.  Each Holder of an Allowed Class 1 Claim is entitled to vote to accept or reject the Plan.

b)    CLASS 2 - UNSECURED CLAIMS

i)    <u>Claims in Class</u>: Class 2 consists of all Allowed Unsecured Claims against each Debtor, including the Prepetition Lender Deficiency Claims.

ii)    <u>Treatment in General</u>:   For the purposes of this Plan only, all Allowed Unsecured Claims shall be treated as and shall vote as a single Class, with all distributions thereon to be Pro Rata regardless of which Debtor is obligated on such Claim

iii)    <u>Treatment if Class Accepts Plan</u>:   If and only if Class 2 votes to accept the Plan, except to the extent that a Holder of an Allowed Class 2 Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each such Class 2 Claim, each such Holder shall receive its Pro Rata share (in each case without interest) of the Class 2 Cash Distribution, on the Effective Date or, if such Claim is not allowed as of the Effective Date, as soon as practicable after such Claim becomes Allowed.  If this section 3.03(b)(iii) applies, the Prepetition Agent and the Prepetition Lenders shall waive any right to recovery on account of the Prepetition Lender Deficiency Claims and the Prepetition Lender Adequate Protection Claim.

iv)    <u>Treatment if Class Rejects Plan:</u>  If Class 2 votes to reject the Plan, except to the extent that a Holder of an Allowed Class 2 Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each such Class 2 Claim, each such Holder shall have its claim discharged and receive nothing.

v)    <u>Voting</u>: Class 2 is Impaired by the Plan.  Each Holder of an Allowed Class 2 Claim is entitled to vote to accept or reject the Plan.

c)    CLASS 3 - INTERCOMPANY CLAIMS

i)    <u>Claims in Class</u>: Class 3 consists of Allowed Intercompany Claims.

ii)    <u>Treatment</u>: Each Allowed Intercompany Claim shall be, at the option of the Plan Sponsor, either Reinstated or cancelled and released without any distribution on account of such Claim.

iii)    <u>Voting</u>:  Pursuant to Section 1126(g), each Holder of a Class 3 Claim is conclusively presumed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

d)    CLASS 4 - EQUITY INTERESTS

i)    <u>Interests in Class</u>:

ii)    <u>Treatment</u>:   On the Effective Date, all Equity Interests shall automatically be deemed cancelled, and the Holders of Equity Interests shall not receive any Distribution or retain any property or interest in property on account of their respective Equity Interests in any of the Debtors.

iii)     Voting: Pursuant to Section 1126(g), each Holder of an Equity Interest in Class 4 is conclusively presumed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

3.04     Allowed Claims.   Notwithstanding any provision herein to the contrary, the Debtors or Reorganized Debtors shall only make Distributions on account of Allowed Claims.  A Claim that is Disputed by the Debtors as to its amount only shall be deemed Allowed in the amount the Debtors admit owing and Disputed as to the remainder.

3.05     Allocation.  The value of any Cash Distribution received by Holders of Claims in satisfaction of interest-bearing obligations shall be allocated first to the full satisfaction of principal of such interest-bearing obligations and second in satisfaction of any accrued and unpaid interest as of the Petition Date.

3.06     Controversy Concerning Impairment.  If a controversy arises as to whether any Claims or Equity Interests, or any Class of Claims or Equity Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

3.07     Elimination of Vacant Classes.  Any Class of Claims or Equity Interests that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim or Equity Interest that is Allowed in an amount greater than zero for voting purposes pursuant to the Confirmation Order shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies Section 1129(a)(8) with respect to that Class.

3.08     Subordinated Claims.  The allowance, classification and treatment of all Allowed Claims and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Equity Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, Section 510(b), or otherwise. Pursuant to Section 510, the Debtors and Reorganized Debtors, as applicable, reserve the right to reclassify any Allowed Claim, in accordance with any contractual, legal or equitable subordination relating thereto; *provided* that any such reclassification must be approved by the Plan Sponsor.

## ARTICLE IV
## MEANS FOR IMPLEMENTATION OF THIS PLAN AND EFFECTS OF CONFIRMATION

4.01     General Settlement of Claims and Interests.   Pursuant to Section 1123 and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Equity Interests and controversies resolved pursuant to the Plan.

4.02    <u>Reorganized Debtors</u>.  On the Effective Date, the New Board shall be established and the Reorganized Debtors shall adopt its New Organizational Documents.  The Reorganized Debtors shall be authorized to adopt any other agreements, documents, and instruments and to take any other actions contemplated under the Plan as necessary or desirable for Consummation of the Plan.

4.03    <u>Sources of Cash Consideration for Plan Distributions</u>.  The Reorganized Debtors shall fund distributions under the Plan with Cash on hand, including Cash from operations and borrowing under the DIP Credit Agreement.

a)    <u>Exit Facility</u>

On the Effective Date, the Reorganized Debtors will enter into the Exit Facility.

b)    <u>Issuance of New Falcon Interests</u>

The issuance of the New Falcon Interests, including Management Stock reserved for the Management Incentive Plan, by the Reorganized Debtors is authorized without the need for any further corporate action or without any further action by the Holders of Claims or Equity Interests.  All of the shares of New Falcon Interests issued pursuant to the Plan shall be uncertificated and shall be duly authorized, validly issued, fully paid, and non-assessable.

On or before the Distribution Date, the Reorganized Debtors shall issue the New Falcon Interests for Distribution pursuant to the provisions hereof.  All securities to be issued shall be deemed issued as of the Effective Date regardless of the date on which they are actually distributed.

4.04    <u>Continued Corporate Existence</u>.  Except as otherwise provided in the Plan, the Reorganized Debtors shall continue to exist after the Effective Date as separate Entities in accordance with the applicable law in the applicable jurisdiction in which they were formed under their respective certificates of incorporation or formation, as applicable, and bylaws or similar organizational documents, as applicable, in effect before the Effective Date except as their certificates of incorporation or formation and bylaws or similar organizational documents may be amended pursuant to this Plan.  On the Effective Date, without any further corporate or similar action, the certificate of incorporation and bylaws of the Reorganized Debtors shall be amended as necessary to satisfy the provisions of this Plan and the Bankruptcy Code and shall include, pursuant to Section 1123(a)(6), a provision prohibiting the issuance of non-voting equity securities.

4.05    <u>Consolidation for Voting and Distribution Purposes</u>.  Entry of the Confirmation Order shall constitute approval of a motion requesting the consolidation of the Debtors into a single entity for Distribution and voting purposes only.  On and after the Effective Date,  (i) no Distributions shall be made under the Plan on account of Intercompany Claims, and (ii) all guarantees by the Debtors of the obligations of any other Debtor shall be consolidated so that any claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint or several liability of the Debtors shall be one obligation.

For the purposes of voting and Distributions only, the Plan treats all Unsecured Claims against any of the Debtors as a single Class.  As discussed in section [___] of the Disclosure Statement, the Debtors' mid-point estimated Enterprise Value is $[___] million.  Because the Prepetition Lenders have a lien on substantially all assets of each of the Debtors, this requires the bifurcation of the Prepetition Loan Agreement Claims of [$___] million into the Prepetition Lender Secured Claim aggregating [$___] million and the Prepetition Lender Deficiency Claim aggregating [___] million.  The Prepetition Lender Secured Claims would thus be entitled to the full value of the Debtors and there would be no value left for distribution to Unsecured Creditors.  The Prepetition Lenders have nevertheless consented to the Distributions to Unsecured Creditors as provided in this Plan.

4.06    Restructuring Transactions.  On the Effective Date, and pursuant to the Plan or the applicable Plan Supplement documents, the Debtors or Reorganized Debtors, as applicable, shall enter into the Restructuring Transactions contemplated in the Plan, and shall take any actions as may be reasonably necessary or appropriate to implement this Plan, including one or more mergers, consolidations, conversions, dissolutions, transfers or liquidations as may be determined by the Debtors or the Reorganized Debtors to be necessary or appropriate that are consistent with the terms of the Plan.  The actions to effect the Restructuring Transactions may include: (a) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable state law and any other terms to which the applicable Entities may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan; (c) the filing of appropriate certificates or articles of incorporation or reincorporation, limited partnership, or formation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; and (d) all other actions that the applicable Entities determine to be reasonably necessary or appropriate, including making filings or recordings that may be required by applicable state law in connection with the Restructuring Transactions.  The chair of the New Board, president, chief executive officer, chief financial officer, any executive vice president or senior vice president, or any other appropriate officer, manager or managing partner of each Debtor or Reorganized Debtor, as appropriate, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such other actions, as may be reasonably necessary or appropriate, to effectuate and further evidence the terms and conditions of this Plan.  The secretary or assistant secretary of the appropriate Debtor or Reorganized Debtor, as appropriate, shall be authorized to certify or attest to any of the foregoing actions.

4.07    Cancellation of Securities and Agreements.  On the Effective Date (a) the Equity Interests, the Prepetition Loan Agreement, and any other Certificate, Security, unit, share, note, bond, indenture, purchase right, option, warrant, certificates of designations or other instrument or documents directly or indirectly evidencing or creating and indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Equity Interest (except such Certificates, notes or other instruments or documents evidencing indebtedness or obligation of or ownership interest in the Debtors that are Reinstated pursuant to the Plan), to the extent not

already cancelled, shall be deemed cancelled and of no further force or effect, solely as to the Debtors and their Affiliates, without any further action on the part of the Bankruptcy Court or any other Entity and (b) the obligations of the Debtors pursuant to the Equity Interests and under the Prepetition Loan Agreement, the Debtors' certificates of incorporation or formation, any agreements, indentures, or certificates of designations governing the Equity Interests or any agreements, indentures, certificates of designation, by-laws, or certificate or articles of incorporation or similar documents governing the units, shares, Certificates, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors (except such Certificates, notes or other instruments or documents evidencing indebtedness or obligation of or ownership interest in the Debtors that are Reinstated pursuant to the Plan) shall be terminated, released and discharged.

4.08   <u>Corporate Action</u>.  Upon the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects, including: (1) the temporary continuation of the officers and employees for the Reorganized Debtors pending the final determination by the New Board with respect to same; (2) the issuance, distribution and delivery of the New Falcon Interests; (3) implementation of the Restructuring Transactions as set forth herein; (4) execution of the Exit Facility and Exit Facility Credit Agreement; (5) execution of the New Second Lien Facility and New Second Lien Credit Agreement; and (6) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date).  All matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate action required by the Debtors, or the Reorganized Debtors in connection with the Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Holders of Equity Interests, directors or officers of the Debtors, or the Reorganized Debtors. The authorizations and approvals contemplated by this Article IV shall be effective notwithstanding any requirements under non-bankruptcy law.

Once the New Board has made its determination as each of the following matters, such determinations shall be deemed authorized and approved in all respects: (1) adoption or assumption, as applicable, of the agreements with Continuing management, amended by agreement between the beneficiaries of such agreements, plans, or arrangements, on the one hand, and the Reorganized Debtors, on the other hand, and (2) adoption and implementation of the Management Incentive Plan.

4.09   <u>Directors and Executive Officers</u>.  On the Effective Date, the term of each member of the Debtors current board of directors or managers, as the case may be will automatically expire.  The New Board will consist of three (3) directors, initially comprised of (x) the CEO of the Reorganized Debtors, and (y) two (2) members who are either selected by, or acceptable to, the Plan Sponsor.  The New Board shall determine the size of and elect directors and managers, as applicable, for each board of directors or managers, as applicable, of the Reorganized Debtors.  The CEO shall serve as the Chairman of the New Board.

The New Board shall have the responsibility for the oversight of the Reorganized Debtors on and after the Effective Date.  The members of existing management for each of the Debtors shall maintain their current positions as executive officers of the Reorganized Debtors on and

after the Effective Date pending consideration by the New Board as to whether each such member of existing management shall be Continuing.

Pursuant to Section 1129(a)(5), the Debtors will disclose in the Plan Supplement the identity and affiliations of each Person selected to serve on the New Board and each Person selected to serve as an officer as of the Effective Date. To the extent any such Person is an "insider" under Section 101(31), the Debtors also will disclose the nature of any compensation to be paid to such Person. Each such Person shall serve from and after the Effective Date (or, if later, the date of appointment) pursuant to the terms of the New Organizational Documents and other constituent documents of the Reorganized Debtors, subject to the determination by the New Board as to which of such officers shall be Continuing.

4.10   <u>Management Incentive Plan</u>. The New Board shall determine and implement a Management Incentive Plan as promptly as practicable after the Effective Date.

4.11   <u>Indemnification Agreements and Arrangements</u>. All indemnification Claims by any officers or directors shall be discharged and to the extent applicable rejected pursuant to Section 365 of the Bankruptcy Code. All Claims of the Debtors' current and former officers and directors for indemnity arising prior to the Petition Date shall be deemed to be Class 2 Unsecured Claims hereunder (subject to the filing of an appropriate proof of Claim with respect thereto and Allowance thereof) and any recovery on account of such claim shall be limited to the recovery provided to Holders of Allowed Claims in Class 2.

4.12   <u>Retirement Plans</u>. All retirement income plans and welfare benefit plans for the benefit of the Debtors' officers, directors or employees that the New Board decides to continue in such capacities or similar capacities after the Effective Date (in each case, "<u>Continuing</u>") (not including any such officers, directors and employees for the period they are temporarily continued pending the New Board's determination as to whether they shall be Continuing), or retirement income plans and welfare benefit plans for such Continuing Persons, shall remain in place after the Effective Date, as may be amended by agreement between the beneficiaries of such agreements, plans, or arrangements, on the one hand, and the Reorganized Debtors, on the other hand, including to modify the "change of control" definition in such agreements to reflect the Restructuring Transactions and this Plan, and the Reorganized Debtors will continue to honor such agreements, arrangements, programs, and plans with all such Continuing Persons; *provided* that the foregoing shall not apply to any equity-based compensation or incentive-based plan, agreement, or arrangement existing as of the Petition Date. Nothing in the Plan shall limit, diminish, or otherwise alter the Reorganized Debtors' defenses, claims, Causes of Action, or other rights with respect to any such contracts, agreements, policies, programs, and plans, or the New Board's ability not to designate any existing officers, directors or employees as Continuing.

4.13   <u>Revesting of Assets</u>. The property of each Debtor's Estate shall revest in the applicable Reorganized Debtor on the Effective Date. Thereafter, the Reorganized Debtors may operate their businesses and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Court. As of the Effective Date, all property of the Reorganized Debtors shall be free and clear of all Claims,

encumbrances, Equity Interests, charges and Liens except as provided or contemplated herein, in connection with the Exit Facility and New Second Lien Facility, or in the Confirmation Order.

4.14    <u>Preservation of Rights of Action; Settlement of Litigation Claims</u>.    Except as otherwise provided herein or in the Confirmation Order, or in any contract, instrument, release, indenture, or other agreement entered into, or deemed to be entered into, in connection with this Plan, in accordance with Section 1123(b), and except as to any Cause of Action released under the Plan, following the Confirmation Date, the Reorganized Debtors shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Causes of Action that any of the Debtors or their Estates may hold against any Entity without further approval of the Bankruptcy Court whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.    The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors.    The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.  **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or the Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against it.  The Debtors or the Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity other than the Released Persons, except as otherwise expressly provided in the Plan.**    Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Reorganized Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. The proceeds of all litigation claims shall, in the discretion of the New Board, either be applied to the Exit Facility or retained for working capital purposes.

4.15    <u>Waiver of Avoidance Actions</u>.    Without limiting any other applicable provisions of, or releases contained in, the Plan, but subject to the proviso of this sentence, each of the Debtors, the Reorganized Debtors, their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any claim or Cause of Action, directly or derivatively, by, through, for, or because of the Debtors, hereby irrevocably and unconditionally release, waive, and discharge any and all Avoidance Actions for all purposes; provided, however, that no such Avoidance Action shall be waived pursuant to this Article 4.15 or otherwise to the extent (a) such Avoidance Action, if successful, would result in the disallowance of any Claim against the Debtors, in whole or in part, pursuant to Section 502(d), (b) such Avoidance Action could be maintained against a Holder of a Claim in Class 2, or 3, and such Holder objects to Confirmation of the Plan or votes to reject the Plan, or (c) such Avoidance Action is against a

Holder that is not a Releasing Party. For the avoidance of doubt, none of the Avoidance Actions waived pursuant to this Article 4.15 shall constitute retained Causes of Action.

4.16    <u>Holders of Alleged Secured Claims are Treated as Unsecured Claims</u>. In addition to the findings set forth in section 1129(a) of the Bankruptcy Code, such findings and the effects of the Confirmation Order shall include, in addition to the effects otherwise described in this Plan, that the aggregate value of the DIP Collateral together with the Prepetition Lenders Secured Claim Collateral, is no greater than the aggregate amount of the Prepetition Lender Secured Claims, plus the Prepetition Lender Adequate Protection Claims, plus the DIP Claims, such that under section 506(a) of the Bankruptcy Code and Rule 3012 of the Bankruptcy Rules, (a) any Claims submitted or filed as Secured Claims with the collateral for such claims alleged to be DIP Collateral and/or Prepetition Lenders Secured Claim Collateral, and/or the Exit Facility Collateral, shall, if such Claims are Allowed Claims, be Allowed Unsecured Claims, as applicable, unless any the Holder(s) of such Claim(s) obtains a Final Order establishing that such Claim(s) is/are an Other Secured Claim, and (b) no Holder of such Claim shall be entitled to make an election under section 1111(b) of the Bankruptcy Code to have such Claim treated as a Secured in rem Claim.

4.17    <u>Effectuating Documents; Further Transactions</u>. On and after the Effective Date, the Reorganized Debtors, and the officers, managers and members of the boards of directors or board of managers thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the Securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

4.18    <u>Exemption from Certain Transfer Taxes</u>. Pursuant to Section 1146(a), the following will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, sales or use tax, mortgage tax, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment: (a) the issuance, transfer, exchange or conversion of the New Falcon Interests, and/or Management Stock; (b) the creation of any mortgage, deed of trust, lien or other security interest under or pursuant to this Plan, the Exit Facility or the New Second Lien Facility; (c) the making or assignment of any lease or sublease under or pursuant to this Plan; (d) the execution and delivery of the Exit Facility or New Second Lien Facility; (e) any Restructuring Transaction; (f) the release of liens under the Prepetition Loan Agreement and DIP Credit Agreement; or (g) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with this Plan, including any merger agreements, agreements of consolidation, restructuring, disposition, liquidation or dissolution, deeds, bills of sale or assignments executed in connection with any of the foregoing or pursuant to this Plan.

## ARTICLE V
## PROVISIONS GOVERNING DISTRIBUTIONS

5.01    <u>Distributions for Claims and Equity Interests Allowed as of the Effective Date</u>. Except as otherwise provided herein or as ordered by the Bankruptcy Court, each Holder of an Allowed Claim shall receive on the Distribution Date the full amount of the Distributions that the Plan provides for Allowed Claims in the applicable Class.  All Cash Distributions shall be made by the Disbursing Agent from available Cash of the Reorganized Debtors or borrowings under the DIP Credit Agreement.  Any Distribution hereunder of property other than Cash (including any issuance of the New Falcon Interests or Management Stock, and the Distribution of such New Falcon Interests or Management Stock, in exchange for Allowed Claims as of the Effective Date) shall be made by the Disbursing Agent or the transfer agent in accordance with the terms of this Plan.

5.02    <u>Disbursing Agent</u>.  The Disbursing Agent shall make all Distributions required under the Plan.  If the Disbursing Agent is an independent third party designated by the Reorganized Debtors (with the consent of the Plan Sponsor) to serve in such capacity, such Disbursing Agent shall receive, without further Bankruptcy Court approval, indemnification and reasonable compensation for Distribution services rendered pursuant to this Plan and reimbursement of reasonable out-of-pocket expenses incurred in connection with such services from the Reorganized Debtors on terms acceptable to the Reorganized Debtors and the Plan Sponsor.  No Disbursing Agent shall be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  If otherwise so ordered, all costs and expenses of procuring any such bond shall be paid by the Reorganized Debtors.

5.03    <u>Record Date for Plan Distributions</u>.  Except with respect to publicly traded securities, as of the close of business on the Record Date for Plan Distributions, the various transfer registers for each of the Classes of Claims or Equity Interests maintained by the Debtors or their respective agents, will be deemed closed and there shall be no further changes in the record Holders of any of the Claims or Equity Interests.  The Reorganized Debtors and the Disbursing Agent shall have no obligation to recognize any transfer of any such Claims occurring after the Record Date for Plan Distributions and shall be entitled instead to recognize and deal for all purposes hereunder with only those record Holders as of the close of business on the Record Date for Plan Distributions.

5.04    <u>Means of Cash Payment</u>.  Cash payments hereunder shall be in Cash.

5.05    <u>Delivery of Distributions; Undeliverable or Unclaimed Distributions</u>. Distributions to Holders of Allowed Claims shall be made by the Disbursing Agent, (a) at the Holder's last known address, or (b) at the address in any written notice of address change delivered to the Disbursing Agent.  If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made, unless and until the Disbursing Agent is notified of such Holder's then current address, at which time all missed Distributions shall be made to such Holder without interest.  Amounts in respect of undeliverable Distributions made through the Disbursing Agent shall be returned to the Reorganized Debtors until such

Distributions are claimed. All claims for undeliverable Distributions must be made on or before the first anniversary of the Effective Date, after which date, without need for a further order by the Bankruptcy Court all Cash in respect of such forfeited Distribution including interest accrued thereon shall revert to the Reorganized notwithstanding any federal or state escheat laws to the contrary.

5.06    <u>Withholding and Reporting Requirements</u>.  In connection with this Plan and all Distributions hereunder, the Reorganized Debtors or Disbursing Agent shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions hereunder shall be subject to any such withholding and reporting requirements.  To the extent the Disbursing Agent is an independent third party rather than the Reorganized Debtors, the Reorganized Debtors shall provide instructions to the Disbursing Agent consistent with the foregoing and the Disbursing Agent shall be entitled to rely on such instructions in effective same.  The Reorganized Debtors reserve the right to allocate all Distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances, and in such event shall so instruct the Disbursing Agent if it is an independent third party.

5.07    <u>Setoffs</u>.  A Reorganized Debtor may, but shall not be required to, set off against any Claim, and the payments or other Distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that the Debtors or Reorganized Debtors may have against the Holder of such Claim; provided that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtors of any claim that the Debtors or Reorganized Debtors may have against such Holder.  Nothing in this Plan shall be deemed to expand rights to setoff under applicable non-bankruptcy law.

5.08    <u>Section 1145 Exemption</u>.  Pursuant to Section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of the New Interests as contemplated by Article V hereof to Classes 1, shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable law.  In addition, pursuant to Section 1145, the New Falcon Interests will be freely tradable in the U.S. by the recipients thereof, subject to (i) the provisions of Section 1145(b)(1) relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, (ii) compliance with applicable securities laws and any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments, and (iii) the laws and any rules and regulations of any State or federal agency or commission that may restrict or condition the trading of securities of a non-public company.

5.09    <u>De Minimis Distributions</u>.  Notwithstanding anything herein to the contrary, the disbursing Agent shall not be required to, but shall not be precluded from making any Cash payment of less than $25.00 to the Holder of any Claim on account of its Allowed Claim; any such Holder who would otherwise be entitled to a lesser Distribution shall not receive any Distribution, unless otherwise determined by the disbursing agent.

## ARTICLE VI
## PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS

6.01    <u>Procedures Regarding Claims</u>.  Prior to the Effective Date, the Debtors, and, after the Effective Date, the Reorganized Debtors, shall have the exclusive authority to file, settle, compromise, withdraw or litigate to judgment any objections to Claims.  From and after the Effective Date and prior to the Claim Objection Deadline, the Reorganized Debtors may settle or compromise any Disputed Claim without notice to or action, order or approval of the Bankruptcy Court.

Any Debtor or Reorganized Debtor, as applicable, may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to Section 502(c), regardless of whether such Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal related to any such objection.  In the event the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtors or the Reorganized Debtors, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.  Each of the aforementioned objection, estimation and resolution procedures are cumulative and are not exclusive of one another.

Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no payment or Distribution provided under the Plan shall be made on account of such Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim.

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan.  The Disbursing Agent shall provide to the Holder of such Claim the Distribution (if any) to which such Holder is entitled under the Plan on a date determined by the Reorganized Debtors, in their sole discretion, after such a Claim becomes an Allowed Claim and shall be deemed to have been made on the Effective Date, without any interest to be paid on account of such Claim.

## ARTICLE VII
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.01    <u>Assumed Contracts and Leases</u>.  Except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into, or deemed to be entered into, in connection with this Plan, as of the Effective Date each Reorganized Debtor shall be deemed to have assumed each executory contract and unexpired lease to which it is a party, unless such contract or lease (a) was previously assumed or rejected by the Debtors, (b) is the subject of a motion to reject filed on or before the Confirmation Date or (c) is set forth in a

schedule, as an executory contract or unexpired lease to be rejected, filed as part of the Plan Supplement. The Confirmation Order shall constitute an order of the Bankruptcy Court under Section 365 approving the contract and lease assumptions or rejections described above, as of the Effective Date. Each Executory Contract and Unexpired Lease assumed pursuant to this Article VII or by any order of the Bankruptcy Court shall revest in and be fully enforceable by the Reorganized Debtors in accordance with its terms, except as such terms are modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law.

Unless otherwise provided in the Plan, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases, related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

7.02    Payments Related to Assumption of Contracts and Leases. Any monetary amounts by which any executory contract and unexpired lease to be assumed under the Plan is in default shall be satisfied, under Section 365(b)(1), by the applicable Debtor on or before the Effective Date; *provided* that if there is a dispute regarding (i) the nature or amount of any Cure Cost, (ii) the ability of a Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of Section 365) under the contract or lease to be assumed, or (iii) any other matter pertaining to assumption, Cure Cost shall occur following the entry of a Final Order of the Bankruptcy Court resolving the dispute and approving the assumption or assumption and assignment, as the case may be; provided that the Debtors or the Reorganized Debtors may settle any dispute regarding the amount of any dispute without any further notice to or action, order or approval of the Bankruptcy Court. A schedule of proposed Cure Costs shall be filed with the Plan Supplement.

7.03    Rejected Contracts and Leases. Except for those executory contracts and unexpired leases set forth on a schedule to the Plan Supplement, none of the executory contracts and unexpired leases to which the Debtors are a party shall be rejected under the Plan; provided that the Debtors reserve the right, at any time prior to the Confirmation Date, to seek to reject any executory contract or unexpired lease to which any Debtor is a party.

7.04    Claims Based upon Rejection of Executory Contracts or Unexpired Leases. All Claims arising out of the rejection of executory contracts and unexpired leases must be filed with the Bankruptcy Court and served upon the Debtors and its counsel within thirty (30) days after the earlier of (a) the date of entry of an order of the Bankruptcy Court approving such rejection or (b) the Confirmation Date. Any such Claims not filed within such times shall be forever barred from assertion against the Debtors, their Estates, and property.

7.05    Oil and Gas Leases. The Debtors' Oil and Gas Leases are hereby assumed by the Debtors to the extent such leases are "unexpired leases of non-residential real property" for the purposes of Section 365(d)(4) or "executory contracts" under Section 365 . Nothing in the Plan

shall be deemed a finding or determination that any Oil and Gas Lease constitute an "unexpired lease" for purposes of Section 365 of the Bankruptcy Code, and the Debtors' rights to contest any such claim or allegation are expressly reserved. Nothing in the Plan alter or changes the underlying property rights associated with the Debtors' Oil and Gas Leases, including the underlying property rights of working interest and royalty interest Holders. The Debtors' rights to dispute the amount of any payment associated with the Oil and Gas Leases, including any payments on account of royalty interest or working interests, and to assert that claims for such amounts have been discharged by the Plan are expressly reserved.

7.06    Assumption of D&O Insurance. All directors' and officers' liability insurance policies maintained by the Debtors, to the extent they are deemed executory contracts, are hereby assumed, subject to any additions and modifications thereto as may be required by the New Board, except to the extent any such additions and modifications impact coverage under said policies. Entry of the Confirmation Order by the clerk of the Bankruptcy Court shall constitute approval of such assumptions pursuant to Section 365(a). No provision of this Plan shall limit any Released Party's rights or the rights of any Person Holding an indemnification Claim who is not a Released Party to seek recovery or reimbursement under any directors' and officers' liability insurance policy.

## ARTICLE VIII
## ACCEPTANCE OR REJECTION OF THIS PLAN

8.01    Classes Entitled to Vote. Each Holder of an Allowed Claim in Class 1 and 2 are entitled to vote to accept or reject this Plan. Holders of Claims or Equity Interests in Unimpaired Classes shall not be entitled to vote because they are conclusively deemed, by operation of Section 1126(f), to have accepted this Plan.

8.02    Acceptance by Impaired Classes. An Impaired Class of Claims shall have accepted this Plan if the Holders of at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in the Class actually voting have voted to accept this Plan, not counting the vote of any Holder designated under Section 1126(e).

8.04    Nonconsensual Confirmation. In the event that any Class other than Class 1 votes to reject the Plan, the Debtors reserve the right to pursue Confirmation of an alternative plan of reorganization pursuant to Section 1129(b).

If any Class does not accept the Plan, the Debtors shall request that the Bankruptcy Court confirm or "cram down" the Plan on a non-consensual basis with respect to each non-accepting Class pursuant to Section 1129(b). With respect to Classes that are deemed to reject this Plan, the Debtors shall request that the Bankruptcy Court confirm or "cram down" the Plan on a non-consensual basis pursuant to Section 1129(b).

## ARTICLE IX
## CONDITIONS PRECEDENT TO EFFECTIVENESS

9.01    <u>Conditions to Effective Date</u>.  The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with Article 9.04 below:

       a)    the Bankruptcy Court shall have entered the Confirmation Order;

       b)    all actions, documents, certificates, and agreements necessary or appropriate to implement the Plan, including the Plan Supplement (including the documents governing the Exit Facility and New Second Lien Facility), shall have been effected or executed and delivered, as the case may be, to and/or by the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable laws, and all such documents, certificates and agreements shall be acceptable to the Debtors, the DIP Agent, the Prepetition Agent and the Plan Sponsor;

       c)    all authorizations, consents, regulatory approvals, rulings, or documents that are necessary or appropriate to implement and effectuate the Plan shall have been received;

       d)    the Debtors shall have paid in full in cash all of the Prepetition Lender Fees and Expenses and DIP Lender Fees and Expenses;

       e)    the Reorganized Debtors, the Exit Facility Agent, and the Exit Facility Lenders shall have entered into and closed the Exit Facility, in form and substance acceptable to the Debtors, the DIP Agent, the Prepetition Agent and the Plan Sponsor.

       f)    the Reorganized Debtors, the New Second Lien Lenders, and New Second Lien Agent shall have entered into and closed the New Second Lien Facility, in form and substance acceptable to the Debtors, the DIP Agent, the Prepetition Agent and the Plan Sponsor; and

       g)    No Stay of the Confirmation Order shall be in effect.

9.02    <u>Absence of Final Order</u>.  For the avoidance of doubt, the Debtors and the Plan Sponsor intend for Consummation of the Plan to occur as promptly as practicable after the Effective Date and it shall not be a condition to the Effective Date that the Confirmation Order has become a Final Order.

9.03    <u>Waiver of Conditions</u>.  Each of the conditions set forth in Article 9.02 above, other than as set forth in section 9.02(a), may be waived in whole or in part by the Debtors with the consent of the Plan Sponsor without notice, leave or other order of the Bankruptcy Court or any formal action other than proceedings to consummate the Plan.

## ARTICLE X
## MODIFICATIONS AND AMENDMENTS; WITHDRAWAL

The Debtors may amend or modify this Plan at any time prior to the Confirmation Date, with the consent of the DIP Agent and Plan Sponsor. The Debtors reserve the right to include any amended exhibits in the Plan Supplement, whereupon each such amended exhibit shall be deemed substituted for the original of such exhibit. Prior to the Effective Date, the Debtors or Reorganized Debtors may, under Section 1127(b), institute proceedings in the Bankruptcy Court with the consent of the DIP Agent and Plan Sponsor to remedy any defect or omission or reconcile any inconsistencies within or among this Plan, the Disclosure Statement, and the Confirmation Order, and to accomplish such matters as may be reasonably necessary to carry out the purposes and intent hereof so long as such remedies do not materially and adversely affect the treatment of Holders of Claims hereunder.

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to Section 1127(a) and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

## ARTICLE XI
## RETENTION OF JURISDICTION

Under Sections 105(a) and 1142, and notwithstanding this Plan's Confirmation and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of or related to the Chapter 11 Cases and this Plan, to the fullest extent permitted by law, including jurisdiction to:

a)      hear and determine any and all objections to the allowance of Claims or Equity Interests;

b)      hear and determine any and all motions to estimate Claims at any time, regardless of whether the Claim to be estimated is the subject of a pending objection, a pending appeal, or otherwise;

c)      hear and determine any and all motions to subordinate Claims or Equity Interests at any time and on any basis permitted by applicable law;

d)      hear and determine all Administrative Expenses and Professional Fee Claims;

e)      hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which a Debtor is a party or with respect to which a Debtor may be liable, including, if necessary, the nature or amount of any Claim or required Cure Cost or the liquidation of any Claims arising therefrom;

f)      hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Cases;

g)      enter such orders as may be necessary or appropriate in aid of the Consummation hereof and to execute, implement, or consummate the provisions hereof and all contracts, instruments, releases, and other agreements or documents created in connection with this Plan, the Disclosure Statement or the Confirmation Order;

h)      hear and determine disputes arising in connection with the interpretation, implementation, Consummation, or enforcement of this Plan and all contracts, instruments, and other agreements executed in connection with this Plan;

i)      hear and determine any request to modify this Plan or to cure any defect or omission or reconcile any inconsistency herein or any order of the Bankruptcy Court;

j)      issue and enforce injunctions or other orders, or take any other action that may be necessary or appropriate to restrain any interference with or compel action for the implementation, Consummation, or enforcement hereof or the Confirmation Order;

k)      enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

l)      hear and determine any matters arising in connection with or relating hereto, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with this Plan, the Disclosure Statement or the Confirmation Order;

m)      enforce all orders, judgments, injunctions, releases, exculpation, indemnification and rulings entered in connection with the Chapter 11 Cases;

n)      recover all assets of the Debtors and property of the Debtors' Estates, wherever located;

o)      hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146;

p)      hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge;

q)      hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code; and

r)      enter a final decree closing the Chapter 11 Cases.

## ARTICLE XII
## COMPROMISES AND SETTLEMENTS

Pursuant to Federal Rule of Bankruptcy Procedure 9019(a), each of the Debtors may compromise and settle various Claims against it and/or claims it may have against other Entities. Each of the Debtors expressly reserves the right (and except as otherwise provided herein, with Bankruptcy Court approval, following appropriate notice and opportunity for a hearing) to

compromise and settle Claims against it and claims that it may have against other Entities up to and including the Effective Date.  After the Effective Date, such right shall transfer to the Reorganized Debtors and no Bankruptcy Court approval of any such action, compromise or settlement shall be required.

**ARTICLE XIII**
**MISCELLANEOUS PROVISIONS**

13.01  <u>Bar Date for Certain Claims</u>

a)  <u>Administrative Expenses</u>.  The Confirmation Order shall establish the Administrative Expenses Bar Date as the deadline for the filing of all Administrative Expenses (other than the Prepetition Lender Fees and Expenses, the DIP Lender Fees and Expenses, Administrative Expenses paid in the ordinary course of business pursuant to Article 2.01 hereof, and Claims for United States Trustee fees), which date shall be thirty (30) days after the Effective Date.  Holders of such asserted Administrative Expenses must file an application for payment of Administrative Expense with the Bankruptcy Court on or before such Administrative Expenses Bar Date or forever be barred from doing so.  The notice of Confirmation shall set forth the Administrative Expenses Bar Date, and the Debtors or the Reorganized Debtors, as the case may be, and any other party in interest, shall have twenty-eight (28) days following the Administrative Expenses Bar Date to review and object to such Administrative Expenses.  All such objections shall be litigated to Final Order; *provided* that, prior to the Effective Date, the Debtors (with the DIP Agent's and Plan Sponsor's prior written consent) or, following the Effective Date, the Reorganized Debtors, may compromise and settle, withdraw or resolve by any other method, without requirement of Bankruptcy Court approval, any objections to Administrative Expenses.

13.02  <u>Professional Fee Claims</u>.  All final applications for Professional Fee Claims must be filed and served on the Reorganized Debtors, the DIP Agent and the Plan Sponsor as well as their respective counsel no later than thirty (30) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court.  Objections to any such applications must be filed and served on the Reorganized Debtors and its respective counsel and the requesting Professional or other Entity, no later than twenty-one (21) days (or such other period as may be allowed by order of the Bankruptcy Court or as otherwise agreed to between the parties) after the date on which the applicable application for compensation or reimbursement was served.

13.03  <u>Late Filed Claims</u>.  Any Claim filed after the Bar Date established with respect to such Claim shall be automatically disallowed and discharged without any requirement of further action by the Debtors or the Reorganized Debtors unless and until such Holder of the Claim obtains a Final Order from the Bankruptcy Court allowing the filing of a late Claim.

13.04  <u>Nonseverability of Plan Provisions</u>.  If, prior to Confirmation, any term or provision hereof is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors with the consent of the DIP Agent and Plan Sponsor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be

Page 34

applicable as altered or interpreted.   Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions hereof shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.   The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision hereof, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

13.05   <u>Successors and Assigns</u>.   The rights, benefits and obligations of all Entities named or referred to herein shall be binding on, and shall inure to the benefit of, their respective heirs, executors, administrators, personal representatives, successors or assigns.

13.06   <u>Discharge of Claims and Termination of Interests</u>.   Pursuant to Section 1141(d), and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of claims (including any intercompany claims resolved or compromised after the Effective Date by the Reorganized Debtors), interests, and causes of action of any nature whatsoever, including any interest accrued on Claims or Equity Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such claims and interests, including demands, liabilities, and causes of action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Equity Interests relate to services performed by employees of the Debtors before the Effective Date and that arise from a termination of employment, any contingent or noncontingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in Sections 502(g), 502(h), or 502(i), in each case whether or not: (a) a proof of Claim based upon such debt or right is filed or deemed filed pursuant to Section 501; (b) a Claim or Equity Interest based upon such debt, right, or interest is allowed pursuant to Section 502; or (c) the Holder of such a Claim or Equity Interest has accepted the Plan.   Any default or "event of default" by the Debtors or Affiliates with respect to any claim or interest that existed immediately before or on account of the filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date.   The Confirmation Order shall be a judicial determination of the discharge of all claims and interests subject to the Effective Date occurring.

13.07   <u>Injunction</u>.   ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASES PURSUANT TO SECTIONS 105 AND 362 OF THE BANKRUPTCY CODE OR OTHERWISE AND IN EFFECT ON THE CONFIRMATION DATE, SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE.   Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or Confirmation Order, all entities who have held, hold, or may hold Claims or interests that have been released pursuant to the Plan, discharged pursuant to the Plan, or are subject to exculpation pursuant to the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, any non-Debtor subsidiary, the Reorganized Debtors, the Released Parties, or the Exculpated Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on

account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

13.08 <u>Debtors' Releases</u>.    PURSUANT TO SECTION 1123(B) OF THE BANKRUPTCY CODE, AND EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN, ON AND AFTER THE EFFECTIVE DATE, EACH RELEASED PARTY  IS DEEMED EXPRESSLY, UNCONDITIONALLY, GENERALLY, AND INDIVIDUALLY AND COLLECTIVELY, ACQUITTED, RELEASED, AND DISCHARGED BY THE DEBTORS, THE REORGANIZED DEBTORS, AND THE ESTATES, EACH ON BEHALF OF ITSELF AND ITS PREDECESSORS, SUCCESSORS AND ASSIGNS, SUBSIDIARIES, AFFILIATES, CURRENT AND FORMER OFFICERS, DIRECTORS, PRINCIPALS, SHAREHOLDERS, MEMBERS, PARTNERS, ADVISERS, SUB-ADVISERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, MANAGEMENT COMPANIES, FUND ADVISORS AND OTHER PROFESSIONALS, FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION, ANY CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF ANY HOLDER OF ANY CLAIM AGAINST OR INTEREST IN THE DEBTORS AND ANY CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF ANY OTHER ENTITY, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, MATURED OR UNMATURED, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT OR OTHERWISE, BY STATUTE OR OTHERWISE, THAT SUCH RELEASING PARTY (WHETHER INDIVIDUALLY OR COLLECTIVELY), EVER HAD, NOW HAS OR HEREAFTER CAN, SHALL OR MAY HAVE, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE DEBTORS' RESTRUCTURING EFFORTS, THE DEBTORS' INTERCOMPANY TRANSACTIONS (INCLUDING DIVIDENDS PAID), ANY PREFERENCE OR AVOIDANCE CLAIM PURSUANT TO SECTIONS 544, 547, 548, AND 549 OF THE BANKRUPTCY CODE, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF, OR ANY OTHER TRANSACTION RELATING TO ANY SECURITY OF THE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS AFFECTED BY OR CLASSIFIED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTORS, ON THE ONE HAND, AND THE CONSENTING CREDITORS, ON THE OTHER HAND, THE RESTRUCTURING OF CLAIMS AND INTERESTS BEFORE OR DURING THE RESTRUCTURING TRANSACTIONS IMPLEMENTED BY THE PLAN OR ANY OTHER TRANSACTION OR OTHER ARRANGEMENT WITH THE DEBTORS

WHETHER BEFORE OR DURING SUCH RESTRUCTURING TRANSACTIONS, THE NEGOTIATION, FORMULATION OR PREPARATION OF SUCH RESTRUCTURING TRANSACTIONS, THE PLAN, THE PLAN SUPPLEMENT, THE DISCLOSURE STATEMENT, OR ANY RELATED AGREEMENTS, ANY ASSET PURCHASE AGREEMENT, INSTRUMENTS OR OTHER DOCUMENTS (INCLUDING, FOR THE AVOIDANCE OF DOUBT, PROVIDING ANY LEGAL OPINION REQUESTED BY ANY ENTITY REGARDING ANY TRANSACTION, CONTRACT, INSTRUMENT, DOCUMENT, OR OTHER AGREEMENT CONTEMPLATED BY THE PLAN OR THE RELIANCE BY ANY RELEASED PARTY ON THE PLAN OR THE CONFIRMATION ORDER IN LIEU OF SUCH LEGAL OPINION) CREATED OR ENTERED INTO IN CONNECTION WITH THE THE DISCLOSURE STATEMENT, THE PLAN, THE CHAPTER 11 CASES, THE FILING OF THE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION, THE PURSUIT OF CONSUMMATION, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN, OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, OR UPON ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE OR ARISING ON OR BEFORE THE EFFECTIVE DATE RELATED OR RELATING TO ANY OF THE FOREGOING.

13.09   <u>Releases by Holders of Claims and Equity Interests</u>.  EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, AS OF THE EFFECTIVE DATE AND TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW, EACH RELEASING PARTY EXPRESSLY, UNCONDITIONALLY, GENERALLY, AND INDIVIDUALLY AND COLLECTIVELY RELEASES, ACQUITS, AND DISCHARGES THE DEBTORS, REORGANIZED DEBTORS, AND RELEASED PARTIES FROM ANY AND ALL CLAIMS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, ANY CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF ANY HOLDER OF ANY CLAIM AGAINST OR INTEREST IN THE DEBTORS AND ANY CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF ANY OTHER ENTITY, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, MATURED OR UNMATURED, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT OR OTHERWISE, BY STATUTE OR OTHERWISE, THAT SUCH RELEASING PARTY (WHETHER INDIVIDUALLY OR COLLECTIVELY), EVER HAD, NOW HAS OR HEREAFTER CAN, SHALL OR MAY HAVE, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE DEBTORS' RESTRUCTURING EFFORTS, THE DEBTORS' INTERCOMPANY TRANSACTIONS (INCLUDING DIVIDENDS PAID), ANY PREFERENCE OR AVOIDANCE CLAIM PURSUANT TO SECTIONS 544, 547, 548, AND 549 OF THE BANKRUPTCY CODE, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS, OR ANY OTHER TRANSACTION RELATING TO ANY SECURITY OF THE DEBTORS, OR ANY OTHER TRANSACTION OR OTHER ARRANGEMENT WITH THE DEBTORS WHETHER BEFORE OR DURING THE RESTRUCTURING TRANSACTIONS IMPLEMENTED BY

THE PLAN, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS AFFECTED BY OR CLASSIFIED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTORS, ON THE ONE HAND, AND THE CONSENTING CREDITORS ON THE OTHER HAND, THE RESTRUCTURING OF CLAIMS AND INTERESTS BEFORE OR DURING THE RESTRUCTURING TRANSACTIONS IMPLEMENTED BY THE PLAN, THE NEGOTIATION, FORMULATION, OR PREPARATION OF SUCH RESTRUCTURING TRANSACTIONS, THE PLAN, THE PLAN SUPPLEMENT, THE DISCLOSURE STATEMENT, OR ANY RELATED AGREEMENTS, ANY ASSET PURCHASE AGREEMENT, INSTRUMENTS, OR OTHER DOCUMENTS (INCLUDING, FOR THE AVOIDANCE OF DOUBT, PROVIDING ANY LEGAL OPINION REQUESTED BY ANY ENTITY REGARDING ANY TRANSACTION, CONTRACT, INSTRUMENT, DOCUMENT, OR OTHER AGREEMENT CONTEMPLATED BY THE PLAN OR THE RELIANCE BY ANY RELEASED PARTY ON THE PLAN OR THE CONFIRMATION ORDER IN LIEU OF SUCH LEGAL OPINION) CREATED OR ENTERED INTO IN CONNECTION THE DISCLOSURE STATEMENT, THE PLAN, THE CHAPTER 11 CASES, THE FILING OF THE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION, THE PURSUIT OF CONSUMMATION, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN, OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN, OR ANY OTHER RELATED AGREEMENT, OR UPON ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE OR ARISING ON OR BEFORE THE EFFECTIVE DATE RELATED OR RELATING TO ANY OF THE FOREGOING; PROVIDED THAT NOTHING IN THE FOREGOING SHALL RESULT IN ANY OF THE DEBTORS' OFFICERS AND DIRECTORS WAIVING ANY INDEMNIFICATION CLAIMS AGAINST ANY OF THEIR INSURANCE CARRIERS OR ANY RIGHTS AS BENEFICIARIES OF ANY INSURANCE POLICIES, WHICH INSURANCE POLICIES SHALL BE ASSUMED BY THE REORGANIZED DEBTORS, EXCEPT TO THE EXTENT PROVIDED FOR IN THE PLAN.

13.10  <u>Exculpation and Limitation of Liability</u>.   Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any cause of action for any Claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or termination of the Disclosure Statement, the Plan, or any restructuring transaction implemented by the Plan, contract, instrument, release or other agreement or document (including providing any legal opinion requested by any entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such

entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

13.11   <u>Binding Effect</u>.  Upon the occurrence of the Effective Date, this Plan shall be binding upon and inure to the benefit of the Debtors, the Plan Sponsor, all present and former Holders of Claims against and Equity Interests in the Debtors, their respective successors and assigns, including the Reorganized Debtors, all other parties-in-interest in the Chapter 11 Cases (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

13.12   <u>Revocation, Withdrawal, or Non-Consummation</u>.  The Debtors reserve the right, subject to the consent of the Plan Sponsor and DIP Agent, to revoke or withdraw this Plan at any time prior to the Confirmation Date and to file other plans of reorganization.  If the Debtors revoke or withdraw this Plan, or if Confirmation or Consummation hereof does not occur, then (a) this Plan shall be null and void in all respects, (b) any settlement or compromise embodied herein (including the fixing or limiting to an amount any Claim or Class of Claims), assumption or rejection of executory contracts or leases effected by this Plan, and any document or agreement executed pursuant to this Plan shall be deemed null and void, and (c) nothing contained herein, and no acts taken in preparation for Consummation hereof, shall (x) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors or any other Entity, (y) prejudice in any manner the rights of the Debtors, the Plan Sponsor, the DIP Agent or any Entity in any further proceedings involving the Debtors, or (z) constitute an admission of any sort by the Debtors or any other Entity.

13.13   <u>Committee</u>.  The Committee shall dissolve as of the Effective Date and the members of the Committee shall be released and discharged from all authority, duties, responsibilities and obligations related to and arising from and in connection with the Chapter 11 Cases. For the avoidance of doubt, nothing in this section 13.13 or anywhere else in this Plan is intended to affect in any manner the Committee's Professionals from applying to the Bankruptcy Court for the Allowance of Professional Fee Claims incurred through the Effective Date (but not thereafter).

13.14   <u>Plan Supplement</u>.  All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  All documents required to be filed with the Plan Supplement shall be filed with the Bankruptcy Court at least seven (7) days prior to the Plan voting deadline.  Thereafter, any Person may examine the Plan Supplement in the office of the Clerk of the Bankruptcy Court during normal court hours. Copies of the Plan Supplement may also be obtained without charge (a) at the website

maintained by the Debtors' claims, noticing and balloting agent, Epiq Bankruptcy Solutions, LLC, or (b) by contacting Louis Phillips at the Kelly Hart Pitre at the address listed below.

     13.15   <u>Notices</u>.   Any notice, request, or demand required or permitted to be made or provided hereunder shall be in writing, and deemed to have been duly given or made when actually delivered by portable document format (pdf), by electronic mail, or by courier, or by registered or certified mail (return receipt requested), when received follows:

a)    if to the Debtors, to:

        Falcon V, L.L.C.
        400 Poydras Street, Suite 1100
        New Orleans, Louisiana
        Attn:    James E. Orth
        E-mail:  jeo@orx.com

        with copies to:

        Louis M. Phillips
        One American Place
        301 Main Street, Suite 1600
        Baton Rouge, LA 70801-1916
        Houston, Texas 77002
        Telephone: (225) 381-9643
        E-mail: [louis.phillips@kellyhart.com](mailto:louis.phillips@kellyhart.com)

b)    if to the Plan Sponsor, to:

        Arena Investors, LP
        The Chrysler Building
        405 Lexington Avenue, 59th Floor
        New York, NY 10174
        Telephone: (212) 257-4187
        Attn: Greg White
        E-mail: gwhite@arenaco.com

        With a copy to:

        Hunton Andrews Kurth LLP
        600 Travis, Suite 4200
        Houston, Texas 77002
        Attention: Timothy A. ("Tad") Davidson II
                Joseph P. Rovira
        Telephone: (713) 220-4200
        Facsimile: (713) 220-4285
        Email:  taddavidson@huntonak.com

josephrovira@huntonak.com

13.16    <u>Governing Law</u>.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of (a) the State of New York shall govern the construction and implementation hereof and any agreements, documents, and instruments executed in connection with this Plan and (b) the laws of the state of incorporation or organization of each Debtor shall govern corporate or other governance matters with respect to such Debtor, in either case without giving effect to the principles of conflicts of law thereof.

13.17    <u>Prepayment</u>.  Except as otherwise provided herein or the Confirmation Order, the Debtors shall have the right to prepay, without penalty or premium, all or any portion of an Allowed Claim at any time; <u>provided</u> that any such prepayment shall not violate, or otherwise prejudice, the relative priorities and parities among the Classes of Claims.

13.18    <u>Section 1125(e) of the Bankruptcy Code</u>.  As of the Confirmation Date, the Debtors shall be deemed to have solicited acceptances hereof in good faith and in compliance with the Bankruptcy Code.  As of the Confirmation Date, the Debtors, the Plan Sponsor, the DIP Agent, the Prepetition Agent and each of their respective Affiliates, agents, directors, managing partners, managers, officers, employees, investment bankers, financial advisors, attorneys, and other professionals shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of the Securities, and therefore are not, and on account of such offer, issuance and solicitation shall not be, liable at any time for the violation of any law, rule or regulation governing the solicitation of acceptances or rejections hereof, the offer and issuance of the New Interests hereunder, or the distribution or dissemination of any information contained in the Plan, the Disclosure Statement, the Plan Supplement, and any and all related documents.

13.19    <u>Entire Agreement</u>.  Except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

[*Remainder of Page Left Blank Intentionally*]

Dated: _____, Louisiana
May __, 2019

[Insert Debtor Signatures]