**UNITED STATES BANKRUPTCY COURT**
**THE MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| In re: | Chapter 11 |
| FALCON V, L.L.C., *et al.*[1] | Case No. 19-10547 |
| Reorganized Debtors. | Jointly Administered |

**ARGONAUT INSURANCE COMPANY'S REPLY TO REORGANIZED DEBTORS' RESPONSE TO MOTION OF ARGONAUT INSURANCE COMPANY TO INTERPRET AND AFFIRM THE TERMS OF THE CONFIRMED CHAPTER 11 PLAN BY WHICH ARGONAUT'S SURETY BOND PROGRAM WAS DEEMED ASSUMED**

Argonaut Insurance Company ("Argonaut"), a creditor and surety of the Debtors/Reorganized Debtors, submits this reply (the "Reply") to the Reorganized Debtors' response [Docket No. 583] (the "Response") to the *Motion of Argonaut Insurance Company to Interpret and Affirm the Terms of the Confirmed Chapter 11 Plan by Which Argonaut's Surety Bond Program was Deemed Assumed* [Docket No. 570] (the "Motion").[2] In support of the Reply, Argonaut respectfully states as follows:

**REPLY**

1. For the reasons set forth in the Motion and demonstrated below, the Surety Bond Program is fully enforceable by and against the Reorganized Debtors in accordance with its terms. This position is fully supported by the undisputed facts of this case and applicable law.

---

[1] The "Reorganized Debtors" or "Debtors" (as the context requires) are the following entities (the corresponding bankruptcy case numbers follow in parentheses): Falcon V, L.L.C. (Case No. 19-10547), ORX Resources, L.L.C. (Case No. 19-10548), and Falcon V Holdings, L.L.C. (Case No. 19-10561). The address of the Debtors is 400 Poydras Street, Suite 1100, New Orleans, Louisiana 70130.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion or the Response, as applicable.

2. From the commencement of their bankruptcy cases, the Debtors described their Surety Bond Program with Argonaut to the Court as an ongoing contractual relationship whose maintenance and continuation was essential to the Debtors' business operations and third party relationships. The Debtors never wavered from that position; rather, the Debtors confirmed the necessity of this ongoing contractual relationship in their Disclosure Statement. During the bankruptcy cases, the Debtors (and Reorganized Debtors) paid premium obligations owed under the Surety Bond Program (including post-Effective Date) and never objected to Argonaut's Claim. The Debtors sought the benefits of their executory contracts, which included the Surety Bond Program, by affirmatively assuming them under the Plan. Argonaut never objected to that assumption, and the Debtors never rejected the Surety Bond Program.

3. The Motion seeks this Court's affirmation of the plain terms of the Plan and the well-established effects of contract assumption. In opposing the Motion, the Reorganized Debtors make four principal arguments: (1) any claims of Argonaut related to the Surety Bond Program were disallowed or discharged; (2) the Surety Bond Program is not executory; (3) even if the Surety Bond Program were executory, it is not assumable under section 365(c)(2) of the Bankruptcy Code; and (4) the Surety Bond Program did not "pass-through" the Debtors' bankruptcy cases unaffected.

4. Each argument in the Reply is a weak attempt to distract the Court from the compelling conclusion that the Surety Bond Program is fully enforceable against the Reorganized Debtors, either because it was assumed under the Plan or passed through the Chapter 11 Cases unaffected.

5. First, neither the Debtors nor the Reorganized Debtors ever sought disallowance of Argonaut's Claim, which is *prima facie* valid under section 502 of the Bankruptcy Code unless objected to (which it was not).

6. Second, the parties' obligations under the Surety Bond Program are continuing in nature such that the Surety Bond Program is executory.

7. Third, the Surety Bond Program may be assumed with Argonaut's consent – which Argonaut provided by declining to object to the Plan providing for the Surety Bond Program's assumption[3] – because section 365(c)(2) is intended to protect non-debtor issuers of financial accommodations, rather than permit the debtor to avoid performing obligations under contracts from which it continues to benefit, as the Reorganized Debtors are attempting to do here.

8. Fourth, because the Surety Bond Program is executory and the Debtors never sought to reject the Surety Bond Program prior to the Plan's Effective Date, the Court should determine that the Surety Bond Program "passed-through" the Chapter 11 Cases unaffected in the event the Court finds that the Surety Bond Program is not assumable under section 365(c)(2).

9. The Reorganized Debtors' arguments are discussed more fully in turn:

**I:** **Argonaut's Claims Were Neither Disallowed Nor Discharged.**

10. Bankruptcy Code section 502(a) provides that claims filed in a chapter 11 case (such as Argonaut's Claim) are *prima facie* valid unless objected to. Specifically, under the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), "[a]n objection to the allowance

---

[3] See Plan, § 9.1 ("[A]s of the Effective Date **each Reorganized Debtor shall be deemed to have assumed each executory contract and unexpired lease to which it is a party**, unless such contract or lease (a) was previously assumed or rejected by the Debtors, (b) is the subject of a motion to reject filed on or before the Confirmation Date or (c) is set forth in a schedule, as an executory contract or unexpired lease to be rejected, filed as part of the Plan Supplement. . . . Each Executory Contract and Unexpired Lease assumed pursuant to this Article IX or by any order of the Bankruptcy Court **shall revest in and be fully enforceable by the Reorganized Debtors in accordance with its terms**[.]") (emphasis added).

3

of a claim and a notice of objection . . . shall be filed and served at least 30 days before any scheduled hearing on the objection or any deadline for the claimant to request a hearing."[4]

11. Consistent with the Bankruptcy Code and Bankruptcy Rules, the Plan provides the following procedures for resolving Disputed Claims:

> Prior to the Effective Date, the Debtors, and, after the Effective Date, the Reorganized Debtors, shall have authority to **file, settle, compromise, withdraw or litigate to judgment any objections to Claims.**[5]

12. As evidenced by a review of the docket in the Chapter 11 Cases, the Debtors never objected to Argonaut's Claim, as the Bankruptcy Code, Bankruptcy Rules, and the Plan require before a claim may be disallowed. Moreover, Argonaut's Claim was never discharged because the Surety Bond Program was assumed under the Plan[6] or, alternatively, passed through the Chapter 11 Cases unaffected.[7]

## II: The Surety Bond Program Is Executory

13. In the Response,[8] the Reorganized Debtors assert that the Surety Bond Program is not executory because "[t]here is no further performance for the Reorganized Debtors that Argonaut can perform." The Reorganized Debtors fail to support this argument with either

---

[4] Fed. R. Bankr. P. 3007(a).

[5] Plan, § 8.1 (emphasis added).

[6] See In re Provider Meds, L.L.C., 907 F.3d 845, 851 (5th Cir. 2018) ("An executory contract must be assumed or rejected in its entirety[.]").

[7] In re Nat'l Gypsum Co., 208 F.3d 498, 504 (5th Cir. 2000) ("If an executory contract is neither assumed nor rejected, it will "ride through" the proceedings and be binding on the debtor even after a discharge is granted, thus allowing the non-debtor's claim to survive the bankruptcy.").

[8] See Response, ¶ 20.

4

case law or facts. Indeed, the case law the Reorganized Debtors cite in support of their argument that the Surety Bond Program is not executory is simply inapposite.

14. For instance, the Reorganized Debtors cite <u>In re James River Coal Co.</u>, No. 306-0411, 2006 WL 2548456, at *4 (M.D. Tenn. Aug. 31, 2006) to support the proposition that surety bond programs are not executory.[9] The question actually posed in <u>James River Coal</u> was whether claims arising under surety bonds that were **cancelled prepetition** were entitled to administrative expense priority.[10] Additionally, the <u>James River Coal</u> court held that the surety bond program in that case was not assumed because the plan in that case provided that only surety bonds in existence (and not cancelled) would be assumed.[11] Here, the Bonds were never cancelled; in fact, they were renewed during the case pursuant to the Surety Order (and post-Effective Date at least as to certain Bonds for which premiums were paid). Accordingly, <u>James River Coal</u> is wholly inapposite to the facts at bar.

15. The Reorganized Debtors also cite <u>In re THC Fin. Corp.</u>, 446 F. Supp. 1329 (D. Haw. 1977) for the proposition that an "agreement is not executory where an indemnitee has performed its side of the agreement, and all that remains is the indemnitor's obligations to indemnify[.]"[12] No surety bond program was involved in <u>THC Fin. Corp.</u>; rather, the case concerned whether a debtor's contractual obligations to indemnify its directors and officers **after**

---

[9] <u>See</u> Response at ¶ 20, n. 9.

[10] <u>See</u> <u>James River Coal</u>, 2006 WL 2548456, at *4, n. 3 ("The essential question presented . . . is whether XL is entitled to an administrative priority claim for premiums that allegedly accrued post-petition **on Bonds that had been cancelled by XL prepetition**.") (emphasis added).

[11] <u>See</u> <u>id.</u> at *7.

[12] <u>See</u> Response at ¶ 20, n. 9.

5

**they had already served in such capacities** was executory.[13]  The THC Fin. Corp. court also declined to decide whether any claims arising out of the indemnification agreements were entitled to administrative expense priority because the issue was not ripe.[14]

16. Neither case cited by the Reorganized Debtors is germane to the issues here. The Reorganized Debtors continue to operate the Debtors' business and continue to reap the benefits of Argonaut's performance under the Surety Bond Program.  Argonaut has material performance obligations remaining under the Surety Bond Program, including but not limited to the "acceptance, investigation, adjustment or litigation, and payment of any covered claims" that may be brought against the Reorganized Debtors, which courts (including the court in James River Coal)[15] have recognized render a surety bond program executory.  In re Evans Prod. Co., 91 B.R. 1003, 1004 (Bankr. S.D. Fla. 1988).

17. Paragraph 13 of the Indemnity Agreement provides:

> **Claim Settlement**.  The Surety shall have the right, in its sole discretion, to determine for itself and Indemnitors whether any claim, demand, or suit brought against the Surety or any Indemnitor in connection with or relating to any Bond shall be paid, compromised, settled, tried, defended or appealed, and its

---

[13] In re THC Fin. Corp., 446 F. Supp. 1329, 1331 (D. Haw. 1977) ("THCF's contention that these indemnification agreements are executory contracts subject to rejection by the Trustee is not well taken. **The officers and directors in question having already served in such capacities, they have performed their side of the agreements** and nothing now remains save the corporations' obligation to indemnify.") (emphasis added).

[14] In re THC Fin. Corp., 446 F. Supp. 1329, 1332 (D. Haw. 1977) ("Since the court here holds that any indemnification could be given section 216(3) status only after the successful defense of misconduct suits, it is entirely premature to consider that status until a successful defense is made.").

[15] See James River Coal, 2006 WL 2548456, at *4, n. 3 ("In Evans, **the debtor needed the coverage afforded by the bond in question 'in order to continue its operation, operated for a period of time by virtue of the benefit it received**, and then sought to avoid paying the premium for the bond." Here, the facts are markedly different.") (internal citation omitted) (emphasis added).

determination shall be final, binding, and conclusive upon the Indemnitors.

18. More generally, suretyship is a tripartite relationship between the surety, its principal, and the obligee. The key components of this relationship reside in the Bonds and the Indemnity Agreement. The only party obligated under the Bonds is Argonaut—a promise, in essence, to each particular obligee that Argonaut will honor any valid claim under the Bonds. Likewise, the only parties obligated under the Indemnity Agreement are the Reorganized Debtors (and other related indemnitors).

19. The Reorganized Debtors' position regarding the executory nature of the Surety Bond Program is also belied by their statements to the Court and their conduct. The Debtors previously represented to this Court that (a) maintaining the Bonds is essential to the Debtors' operations (which the Reorganized Debtors appear to have continued post-Effective Date) and (b) satisfying its postpetition obligations is necessary to maintain the uninterrupted operation of Debtors' business.

20. Contrary to the Reorganized Debtors' assertions in the Response,[16] these representations were not just made in the Surety Motion filed on the first day of these cases; they were reiterated in the Disclosure Statement filed months later.[17] At no point did the Debtors indicate in any of their pleadings that the Surety Bond Program was no longer necessary to their operations, nor did they seek to reject the Surety Bond Program, which is how a debtor typically addresses burdensome contracts.

---

[16] See Response, ¶ 13.

[17] Disclosure Statement, § 3.1(d).

7

21. If Argonaut's obligations under the Surety Bond Program were already fully performed, then maintenance of the program would not have been "essential to the Debtors' operations" or "necessary to maintain the Debtors' relationships with third parties and the uninterrupted operation of the Debtors business."[18]

22. The Reorganized Debtors' sudden reversal of the Debtors' established position regarding the essential nature of the Surety Bond Program to the Debtors' existence and operations reveals an undeniable, if uncomfortable, truth -- the Reorganized Debtors want the benefits of the Surety Bond Program without its associated burdens. But the fact that the Surety Bond Program contains such benefits and burdens establishes the character of the Surety Bond Program as executory. Accordingly, it is subject to assumption pursuant to section 365 of the Bankruptcy Code.

### III: The Surety Bond Program Is Assumable.

#### A. The Reorganized Debtors Fail to Distinguish the Case Law Cited in the Motion

23. The Debtors consistently stated in pleadings filed throughout their Chapter 11 Cases that the Surety Bond Program was essential to their business operations and third party relationships. In furtherance of these efforts to continue their business operations post-emergence, the Debtors obtained confirmation of the Plan, which expressly and unambiguously provided for the assumption of all executory contracts (including the Surety Bond Program). Argonaut did not object to the Plan and the Surety Bond Program was deemed assumed thereunder on the Effective Date.

---

[18] Id.

24. Faced with a simple demand from Argonaut to comply with the plain terms of the Indemnity Agreement, the Reorganized Debtors seek to manufacture an argument out of whole cloth, relying principally upon the creditor protections set forth in Bankruptcy Code section 365(c)(2),[19] that the Surety Bond Program may not be assumed. In the response,[20] the Reorganized Debtors attempt (but fail) to distinguish the cases cited in the Motion establishing that financial accommodations may be assumed with the counterparty's consent notwithstanding Bankruptcy Code section 365(c)(2).

25. For instance, the Reorganized Debtors argue that In re TS Indus., Inc.[21] "involved a pre-petition workout agreement that ***both*** parties agreed would be assumed in the bankruptcy case, not bonds or an agreement to indemnify where only one party desires the agreement be assumed." Response, ¶ 24 (emphasis in original). But this is not a case (at least not at the time of Plan confirmation) where only one party desires that the Surety Bond Program be assumed because the Plan provides that **all** executory contracts would be assumed unless specifically rejected. Thus, the plain terms of the Plan manifest the Reorganized Debtors' intent

---

[19] 11 U.S.C. § 365(c)(2) ("The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if-- . . . (2) such contract is a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor, or to issue a security of the debtor[.]").

[20] See Response, ¶¶ 21-32.

[21] 117 B.R. 682 (Bankr. D. Utah 1990).

to assume the Surety Bond Program.[22] Argonaut did not object to the Plan and is bound by its terms, as are the Reorganized Debtors.[23]

26. The Reorganized Debtors likewise seek to distinguish In re Charrington Worldwide Enterprises, Inc.[24] on the ground that the Charrington case involves a contract for the sale of goods in addition to an extension of credit.[25] The Reorganized Debtors fail to point out the purpose of section 365(c)(2), as articulated by the Charrington court:

> The legislative history of this Section leaves no doubt that this exception to the assumability of executory contracts was drafted for the purpose of assuring that contracts to lend money or to extend credit which involves always a trust and confidence akin to personal contracts should not be assumable without the consent of the other party to the contract.[26]

---

[22] The Reorganized Debtors similarly attempt to distinguish In re Prime, Inc., 15 B.R. 216 (Bankr. W.D. Mo. 1981) (cited in TS Indus.) on the ground that "there was no agreement between the Debtors and Argonaut that the Surety Bond Program would be assumed." Response, ¶ 26. But the Plan, which is binding on Argonaut and the Reorganized Debtors, provides for the assumption of executory contracts not explicitly rejected. By not seeking to reject the Surety Bond Program, the Debtors manifested the requisite intent to assume the Surety Bond Program, and Argonaut's decision not to object to the Plan should constitute deemed consent to that assumption.

[23] See Plan, § 15.6 ("Upon the occurrence of the Effective Date, this Plan shall be binding upon and inure to the benefit of the Debtors, the Plan Sponsor, all present and former Holders of Claims against and Equity Interests in the Debtors, their respective successors and assigns, including the Reorganized Debtors, all other parties-in-interest in the Chapter 11 Cases (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.").

[24] 98 B.R. 65 (Bankr. M.D. Fla. 1989).

[25] Response, ¶ 27.

[26] Charrington, 98 B.R. at 68. The Reorganized Debtors misquote Argonaut's statement in footnote 1 of its Claim. See Response, ¶ 1. As explained in the Motion, Argonaut's position in its Claim was that "any General Indemnity Agreement between Argo and any Debtor or non-Debtor affiliate may not be assumed **and assigned**, for among other reasons, because such agreement constitutes a 'financial accommodation' under 11 U.S.C. § 365(c)(2). The Reorganized Debtors' reference to the Cloud Peak Objection merely demonstrates that a surety's decision regarding assumption of its bond program is not a one-size-fits-all analysis and depends in large part on the facts and circumstances surrounding each bond principal and chapter 11 case.

27. In other words, section 365(c)(2) protects the party extending the financial accommodation (here, Argonaut). It is not a statutory provision that permits the debtor to avoid its obligations under valid and enforceable contracts, as the Reorganized Debtors are attempting to do here.[27]

28. Accordingly, the Reorganized Debtors failed to distinguish or otherwise rebut the ample case law cited in the Motion in support of the proposition that the Surety Bond Program may be assumed with Argonaut's consent notwithstanding section 365(c)(2) of the Bankruptcy Code.

**B. The Reorganized Debtors' Position that the Surety Bond Program is not Assumable is Undermined by their own Conduct**

29. The Reorganized Debtors' position that the Surety Bond Program is not assumable (and therefore was not assumed under the Plan) is undermined by their own conduct. As the Reorganized Debtors themselves recognize,[28] they "did make premium payments on account of the United States Bond and the Louisiana Bond Bonds [sic] that are essential to the Reorganized Debtors' ongoing operations." The fact that the Reorganized Debtors paid the premium on **any** Bonds belies their current view that the Surety Bond Program is not assumable.

30. The Reorganized Debtors point out that they failed to make premium payments on the Chevron Bond or Hilcorp Bond "as these are not necessary to ongoing

---

[27] In re Adana Mortg. Bankers, Inc., 12 B.R. 977, 987 (Bankr. N.D. Ga. 1980) ("Congress . . . enacted Section 365(c)(2) to protect parties who have contracted with entities who have filed for relief under the Bankruptcy Code."). Adana Mortg. stands for the straightforward proposition that financial accommodations may be assumed with the counterparty's consent.

[28] See Response, ¶ 14.

operations."[29] But there is a well-established procedure by which the Debtors could have rejected the Chevron Bond and Hilcorp Bond (subject to Argonaut's and other parties' objection rights) if they thought those Bonds were not necessary to the Debtors' ongoing operations.

31. Rather than avail themselves of those procedures, the Debtors did the precise opposite—they drafted and obtained confirmation of a Plan that provided for the assumption of all executory contracts (including the Surety Bond Program), the consequence of which renders the assumed contracts enforceable against the Reorganized Debtors. Contrary to the Reorganized Debtors' assertions,[30] it was not Argonaut's responsibility to seek individualized treatment of its Surety Bond Program when the Debtors stated throughout their cases that the Surety Bond Program was essential to their continued operations, the Plan explicitly provides for the assumption of all contracts not rejected, and the Reorganized Debtors treated the Surety Bond Program as assumed by continuing to pay Bond premiums post-Effective Date.

32. The Reorganized Debtors cannot rewrite the history of these cases by now claiming that they do not need the Hilcorp Bond and Chevron Bond that the Debtors never rejected. Accordingly, the Court should determine that the Surety Bond Program is assumable, and was in fact assumed under the Plan, the Reorganized Debtors' post-hoc contrivances notwithstanding.

### C. The Court's Findings and Conclusions Should not Materially Alter the Plan

33. The Reorganized Debtors claim that the Court's Findings and Conclusions, which provide that "all executory contracts and unexpired leases of the Debtors shall be deemed assumed **to the extent assumable under Bankruptcy Code section 365**"[31] "mak[es] clear that

---

[29] Response, ¶ 14.

[30] See Response, ¶ 5.

[31] Findings and Conclusion, ¶ U (emphasis added).

financial accommodations, such as the Surety Bond Program, were not assumed."[32] However, as explained amply in the Motion and this Reply, the Surety Bond Program is assumable under Bankruptcy Code section 365 with Argonaut's consent (which Argonaut provided by declining to object to the Plan to which it is bound).[33]

34. Accordingly, the Court should determine that the Surety Bond Program is assumable notwithstanding section 365(c)(2) of the Bankruptcy Code and, in fact, was assumed pursuant to the plain terms of the Plan.

### IV: Alternatively, the Court Should Hold that the Surety Bond Program "Passed-Through" the Chapter 11 Cases Unaffected.

35. The Reorganized Debtors assert[34] that the Surety Bond Program could not have passed through the bankruptcy cases unaffected because the Surety Bond Program is not executory. As demonstrated in the Motion and Section II hereof, the Surety Bond Program is executory.

36. The Reorganized Debtors further assert that, if Argonaut's position regarding the pass-through doctrine is correct (which it is), "then any contract, executory or not, would ride through, nullifying the discharge unless every single contract, agreement, debt instrument, was mentioned by the plan as being discharged and not a ride through agreement."[35]

---

[32] See Response, ¶ 18.

[33] Recall also that the Findings and Conclusions were filed one day before the confirmation hearing on limited notice. They should not be construed to work a wholesale reinterpretation of the Plan in contravention of the Plan's plain language.

[34] Response, ¶ 33.

[35] Id.

37. This is simply not the case. Indeed, as the Fifth Circuit in <u>In re O'Connor</u> recognized, there is "general agreement" that the pass-through doctrine applies "where an assumable executory contract is **<u>neither assumed nor rejected,</u>** and **<u>the Reorganized Debtor continues to operate the debtor's pre-bankruptcy business</u>**." <u>In re O'Connor</u>, 258 F.3d 392, 404 (5th Cir. 2001) (emphasis added). The <u>O'Connor</u> court further held that the pass-through doctrine applies where a contract may not be assumed under section 365(c)(1) because "there is no difference between a contract that, under § 365(c)(1), cannot be assumed, and one which is neither assumed nor rejected. Each is simply unaffected by the bankruptcy proceedings." <u>Id.</u> at 405.

38. As demonstrated amply above and in the Motion, the Surety Bond Program was assumed under the plain terms of the Plan. But, in the event the Court determines the Surety Bond Program is not assumable because of section 365(c)(2), there is no reason for the Court not to apply the pass-through doctrine to the Surety Bond Program given the Fifth Circuit's reasoning in <u>In re O'Connor</u>, which squarely applies to the facts of this case because the Surety Bond Program was not rejected and the Reorganized Debtors are continuing to operate the Debtors' business. Accordingly, the Surety Bond Program remains enforceable against the Reorganized Debtors, either because it was assumed under the Plan or passed through the Chapter 11 Cases unaffected.

*[Remainder of page intentionally left blank]*

## **CONCLUSION**

**WHEREFORE**, Argonaut respectfully requests that this Court (a) enter the Order, substantially in the form attached to the Motion as Exhibit A, interpreting the terms of the Plan approved by this Court's Confirmation Order and affirming that the Surety Bond Program was deemed assumed under the Plan and, consequently, is enforceable against the Reorganized Debtors in accordance with its terms and (b) grant Argonaut such other and further relief as the Court deems just and proper.

Dated:      May 26, 2020

**KREBS, FARLEY & DRY, PLLC**

By: */s/ Matt J. Farley*
Matt J. Farley, Esq.
400 Poydras Street
Suite 2500
New Orleans, LA 70130
Telephone: (504) 299-3570
Facsimile:  (504) 299-3582

*Counsel to Argonaut Insurance Company*