**UNITED STATES BANKRUPTCY COURT**
**THE MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| In re: | Chapter 11 |
| FALCON V, L.L.C., *et al.*[1] | Case No. 19-10547 |
| **Reorganized Debtors.** | Jointly Administered |

**STATEMENT IN FURTHER SUPPORT OF**
**MOTION OF ARGONAUT INSURANCE COMPANY TO INTERPRET**
**AND AFFIRM THE TERMS OF THE CONFIRMED CHAPTER 11 PLAN BY WHICH**
**ARGONAUT'S SURETY BOND PROGRAM WAS DEEMED ASSUMED**

Pursuant to the Court's permission at the June 5, 2020 hearing (the "Hearing") to consider the Motion (defined below), Argonaut Insurance Company ("Argonaut") submits this statement (the "Statement") in further support of its Motion to interpret and affirm the Debtors' Plan by which Argonaut's Surety Bond Program was deemed assumed.[2]

---

[1] The "Reorganized Debtors" or "Debtors" (as the context requires) are the following entities (the corresponding bankruptcy case numbers follow in parentheses): Falcon V, L.L.C. (Case No. 19-10547), ORX Resources, L.L.C. (Case No. 19-10548), and Falcon V Holdings, L.L.C. (Case No. 19-10561). The address of the Debtors is 400 Poydras Street, Suite 1100, New Orleans, Louisiana 70130.

[2] *Motion of* Argonaut *Insurance Company to Interpret and Affirm the Terms of the Confirmed Chapter 11 Plan by Which Argonaut's Surety Bond Program was Deemed Assumed* [Docket No. 570] (the "Motion"). The Motion is also supported by Argonaut 's *Reply to Reorganizing Debtors Response to the Motion* [Docket No. 589]("Reply"). Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

**STATEMENT**

1. The Motion seeks limited relief[3] in the form of an order affirming the plain and unambiguous terms of the Plan,[4] by which the Reorganized Debtors assumed all executory contracts other than those previously rejected (or for which the Debtors sought rejection).

2. Long after confirmation of the Plan and confronting a lawful contractual demand from Argonaut to replace the Bonds or provide additional collateral, the Reorganized Debtors seek to rewrite the history of these cases to escape the consequences of their own words and actions and the terms of the Plan they promulgated. The Court should not endorse the Reorganized Debtors' efforts to avoid the burdens of the assumed Surety Bond Program whose benefits they have appropriated. Such an endorsement would also be inequitable.

3. <u>Collateral Attack</u>. As noted in the Motion, the Court has the power (and, respectfully, the obligation) to enforce its own orders against all affected parties. The Court should not entertain what amounts to a collateral attack on the validity of those orders, particularly when,

---

[3] As noted at the Hearing, Argonaut respectfully submits that any questions or disputes concerning the contractual terms of the Surety Bond Program and their enforcement are not before the Court. Transcript of Hearing on Motion held June 5, 2020 ("<u>Tr</u>.") at 19, ll. 6-14. Rather, Argonaut merely seeks this Court's interpretation and affirmation of the plain and unambiguous terms of the Plan, by which the Surety Bond Program was assumed (or passed through the bankruptcy unaffected).

[4] <u>See</u> Plan, § 9.1: ("[A]s of the Effective Date **each Reorganized Debtor shall be deemed to have assumed each executory contract and unexpired lease to which it is a party**, unless such contract or lease (a) was previously assumed or rejected by the Debtors, (b) is the subject of a motion to reject filed on or before the Confirmation Date or (c) is set forth in a schedule, as an executory contract or unexpired lease to be rejected, filed as part of the Plan Supplement. . . . Each Executory Contract and Unexpired Lease assumed pursuant to this Article IX or by any order of the Bankruptcy Court **shall revest in and be fully enforceable by the Reorganized Debtors in accordance with its terms**[.]") (emphasis added).

For the avoidance of doubt, the Surety Bond Program was neither rejected, subject to a motion to reject, nor listed in any Plan Supplement as a rejected contract.

2

as here, the party conducting the collateral attack sought entry of the underlying order in the first instance.[5]

4. <u>Executory Contract</u>. The Reorganized Debtors now contend that the Surety Bond Program is not an executory contract subject to assumption. The contention is refuted by the Debtors' words and actions throughout the bankruptcy case.

5. As stated in Argonaut's pleadings, the Debtors consistently asserted that the maintenance **and continuation** of the Surety Bond Program was essential to the operations of the Debtors' business (which the Reorganized Debtors have continued).[6]

6. The Debtors confirmed the ongoing character of the Surety Bond Program in their Disclosure Statement,[7] a pleading that plays a "pivotal" role in the reorganization process and allows interested parties to make informed judgments about plans.[8]

7. Now the Reorganized Debtors' alter their position and assert that the Surety Bond Program is not an executory contract.[9] But why, then, did the Debtors affirmatively seek to

---

[5] <u>See</u> Motion at p. 5 n. 13 and related text, and citation to <u>Travelers Indem. Co. v. Bailey</u>, 557 U.S. 137 (2009). In summary, <u>Travelers</u> stands for the proposition that the scope of relief effectuated by a final order of the bankruptcy court may not be subsequently attacked because final orders are binding on all affected parties.

Here, the Debtors sought and obtained confirmation of a Plan which provides for the assumption of all executory contracts. That Plan is binding on both Argonaut and the Reorganized Debtors. The Reorganized Debtors cannot now attack, undermine, or otherwise evade the terms of the Plan, now that the Confirmation Order is final.

[6] <u>See</u> Surety Motion, ¶ 21: "As noted, because state and local law require the Debtors to post surety bonds, a failure to provide, **maintain**, or timely replace **its surety bonds may prevent the Debtors from undertaking essential activities related to its operations**. **Maintaining Surety Bonds is common in the oil and gas industry b**ecause surety bonds are generally statutorily required for exploration and production activities. For these reasons, the Debtors believe[] that the **continuation of the Surety Bond Program is appropriate and in the best interests of all stakeholders**." (emphasis added).

<u>See also</u> Surety Order at 1 ("IT IS ORDERED that on a final basis the Debtors are authorized, but not directed, to (a) **continue and maintain the existing surety bonds** . . . in the ordinary course of business

3

maintain and continue that program at significant expense[10] to their estates?  The Debtors told this Court that they (and the Reorganized Debtors) would receive the benefits of Argonaut's **continued performance** under the executory Surety Bond Program.  They cannot now evade the burdens of that program. [11]

       8.      <u>Cherry Picking the Surety Bond Program</u>.  At the Hearing, the Reorganized Debtors conceded that they needed the Surety Bond Program, but then sought to alter its content by asserting that it only includes the bonds for "governmental entities."[12]  The Reorganized Debtors cannot unilaterally alter the program or cherry pick the portions they want.  The

---

and in accordance with the same practices and procedures in effect prior to the commencement of these chapter 11 cases[.]" (emphasis added).

[7] Disclosure Statement, § 3.1(d): "**The maintenance of certain** insurance coverage and **surety bonds is essential to the Debtors' operations and is required by laws, various regulations, financing agreements and contracts**.  Maintenance of insurance programs is also necessary to comply with the US Trustee operating guidelines for debtors in possession. **The Debtors believe that the satisfaction of their insurance and surety obligations, whether arising pre- or postpetition, is necessary to maintain the Debtors' relationships with third parties and the uninterrupted operation of the Debtors' business.**" (emphasis added).

[8] 7 <u>Collier on Bankruptcy</u> ¶ 1125.02 (16th ed. 2019).

[9] Tr. at 24 <u>ff</u>.

[10] <u>See</u> Disclosure Statement, §1.4(b) ("The Debtors also obtained Bankruptcy Court approval to pay the approximately $320,000 to its insurance broker McGriff, Seibels & Williams, Inc. for past due premiums to renew surety bonds with Argonaut Insurance Company.").

[11] Indeed, case law is clear that contracts assumed are assumed in their entirety.  <u>See</u> <u>In re Provider Meds, L.L.C.</u>, 907 F.3d 845, 851 (5th Cir. 2018) ("An executory contract must be assumed or rejected in its entirety[.]").

[12] Tr. at 30, ll. 11-17: "And we did say that we needed the bond – the bond – the bond program, but the bond program is, in our view … limited to the governmental entities."

Reorganized Debtors are bound by their own words and conduct as well as the terms of the Plan that they promulgated and the Court approved.

   9. <u>Assumption on Consent</u>.  The Surety Bond Program is assumable with Argonaut's consent.[13]  Despite the Reorganized Debtors' protests, it is undisputed that Argonaut did not object to the Plan or Disclosure Statement or the assumption of the Surety Bond Program.[14] The Reorganized Debtors protests to the contrary and citation to Argonaut's proof of claim are unavailing.[15]

   10. Even if the Surety Bond Program were not assumable under Bankruptcy Code section 365(c)(2), then it is also undisputed that it was not rejected either.  Under applicable

---

[13] Motion at ¶¶ 38-42; Reply at ¶¶ 23-32.  As Argonaut noted previously, Bankruptcy Code section 365(c)(2) of the Bankruptcy Code is intended "to protect parties who have contracted with entities who have filed for relief under the Bankruptcy Code."  <u>In re Adana Mortg. Bankers, Inc.</u>, 12 B.R. 977, 987 (Bankr. N.D. Ga. 1980).  Section 365(c)(2) of the Bankruptcy Code should not be interpreted to provide the Reorganized Debtors with an escape hatch by which they may avoid their valid obligations under assumed contracts, as they are seeking here.

[14] As the Surety Bond Program is assumable on consent; the language of the Findings and Conclusions (filed the day before the scheduled confirmation hearing and on limited notice) do not prevent assumption. Reply at ¶¶33-34; <u>see</u> Motion at p. 18 n. 40.

[15] Tr. at 39, ll. 5-7 ("Everything they had on file said they weren't executory contracts and we couldn't assume and assign.")  Argonaut's only filing was its proof of claim, which included a reservation of rights and anticipation of possible assumption of the Surety Bond Program.  Argonaut Ex. 3, Addendum at n.1.

Fifth Circuit law, the substantive result is a pass through of the Surety Bond Program unaffected by the bankruptcy and enforceable post-confirmation.[16]

11.  And the Reorganized Debtors' conduct again contradicts their current posturing and affirms that the Surety Bond Program was assumed – they made premium payments on two of the Bonds long after the Plan's Effective Date.

12.  No Claim Objection.  The Debtors acknowledge that they did not object to Argonaut's claim, but excuse that failure by rewriting history and inaccurately asserting that the "claim says on its face it's zero."[17]  In fact, the claim amount set forth in the proof of claim is $10,575,000.00.[18]  Of course, the Reorganized Debtors assert that they could have objected to the claim.[19]  But, in fact, they did not and they cannot disavow their choice now.

13.  Equitable Considerations.  Finally, as the Court noted at the Hearing, bankruptcy courts are courts of equity.  There is nothing equitable about permitting the Debtors and Reorganized Debtors to assume the Surety Bond Program, reap its benefits and Argonaut's

---

[16] In re O'Connor, 258 F.3d 392, 404–05 (5th Cir. 2001) ("There appears to be general agreement that the "pass-through" theory continues to apply in Chapter 11 cases governed by the Code, at least where an assumable executory contract is neither assumed nor rejected, and the Reorganized Debtor continues to operate the debtor's pre-bankruptcy business. The parties did not cite, nor did we find, any cases applying the pass-through theory when, under § 365(c)(1), the executory contract was not assumable. But, we see no reason why the theory should not apply. This is because **there is no difference between a contract that, under § 365(c)(1), cannot be assumed, and one which is neither assumed nor rejected. Each is simply unaffected by the bankruptcy proceedings**.") (emphasis added).

[17] Tr. at 39, ll. 12-13.

[18] Argonaut Ex. 3, Proof of Claim, Part 2, "7.  How much is the claim?  $10,575,000.00."

[19] Tr. at 39, ll. 13-14.

performance under it, and then refute their own obligations under the program when Argonaut asserts its contractual right to seek replacement of the Bonds or to demand additional collateral.

14. Nor is there anything lawful or equitable about allowing the Reorganized Debtors to cherry pick which Bonds it will honor and which it will not or which contractual obligations it will perform and which it will not.[20]

15. No party was "laying in the gap" in this case. The Debtors filed the Surety Motion on the first day of their cases and obtained the Surety Order; Argonaut filed its Claim fully describing the Surety Bond Program; the Debtors never objected to the Claim; and the Debtors and Reorganized Debtors paid bond premium obligations both during the bankruptcy case and after confirmation of the Plan.

16. In addition, the Debtors promulgated a Disclosure Statement and obtained confirmation of a Plan, whose plain and unambiguous language provides for the assumption of the Surety Bond Program, and Argonaut did not object to either the Disclosure Statement or the Plan.

17. It would be inequitable indeed to allow the Reorganized Debtors to rewrite history, repudiate their prior pleadings and conduct, and collaterally attack the orders of this Court.

---

[20] See In re Provider Meds, 907 F.3d at 851 ("An executory contract must be assumed or rejected in its entirety[.]").

18. <u>Conclusion</u>. Accordingly, the Court should interpret the plain and unambiguous terms of the Plan approved by this Court's Confirmation Order and affirm that the Surety Bond Program was deemed assumed under the Plan (or passed through the bankruptcy unaffected) and, consequently, is enforceable against the Reorganized Debtors in accordance with its terms.

Dated: June 19, 2020

**KREBS FARLEY & DRY, PLLC**

By: */s/ Matt J. Farley*
Matt J. Farley
State Bar No. 5447
400 Poydras Street, Suite 2500
New Orleans, Louisiana 70130
(504) 299-3570 Telephone
(504) 299-3582 Facsimile
mfarley@krebsfarley.com

**ATTORNEYS FOR ARGONAUT INSURANCE COMPANY**