UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

IN RE:

FALCON V, L.L.C., *ET AL.*                                    CASE NO. 19-10547
      DEBTORS                                                CHAPTER 11

**MEMORANDUM OPINION**

Falcon V, L.L.C., and its affiliated debtors[1] (collectively "Falcon V" or "Debtors") engage in oil and gas exploration and development and operate and provide services for oil and gas properties.[2] They filed chapter 11 in May 2019.

Argonaut Insurance Company ("Argonaut") provided performance bonds to fulfil Debtors' obligations under numerous oil and gas leases, carrying premiums Debtors obtained expedited permission to pay early in the reorganization.[3] The jointly administered Debtors promptly proposed a plan that was confirmed, after amendments, in October 2019.[4] Argonaut filed proofs of claim but did not object to confirmation of the plan; indeed, it did not make an appearance in the case until more than six months after confirmation.

---

[1] ORX Resources, L.L.C. (case no. 19-10548) and Falcon V Holdings, L.L.C. (case no. 19-10561).

[2] Debtors are affiliates. Falcon V, L.L.C., holds title to oil and gas leases; ORX Resources, L.L.C., is the operator on the oil and gas properties; and Falcon V Holdings, L.L.C., owns both Falcon V, L.L.C., and ORX Resources, L.L.C.

[3] Interim Order Authorizing Debtors to Continue Surety Bond Program and Setting Final Hearing [Debtors' Exhibit Q, case no. 19-10547, P-75]; Second Interim Order Authorizing Debtors to Continue Surety Bond Program and Setting Final Hearing [Debtors' Exhibit R, case no. 19-10547, P-150]; Final Order Authorizing Debtors to Continue Surety Bond Program [Debtors' Exhibit S, case no. 19-10547, P-226].

[4] Order Confirming Second Amended Chapter 11 Plan of Reorganization of Falcon V, L.L.C. and Its Debtor Affiliates with Immaterial Modifications dated August 16, 2019 and September 13, 2019 [Debtors' Exhibit P, case no. 19-10547, P-507].

Six months after confirmation, Argonaut demanded that reorganized Falcon V provide additional collateral to maintain the surety bonds Argonaut had posted prepetition.[5] Falcon V refused, prompting Argonaut to move essentially for declaratory relief relating to the confirmed chapter 11 plan.[6]

Argonaut contends that the agreement instituting the surety bond program was an executory contract deemed assumed through the confirmed plan. Falcon V responds[7] that the surety bond program was not an executory contract; and that even if it were, it was not assumable. It also argues that Argonaut's claims were discharged on confirmation and that its request for additional collateral violates the discharge injunction.

Neither party disputes the relevant material facts.

After an evidentiary hearing, the parties sought time to negotiate and later agreed to try to resolve their differences through mediation. When those efforts proved unsuccessful, they renewed their request for a ruling.

This memorandum opinion explains why Argonaut's motion fails.

---

[5] Neither party offered evidence of Argonaut's reason for seeking additional collateral post-confirmation, but the reorganized debtors do not challenge Argonaut's right under Texas law to make that demand. In any event, Falcon V does not dispute that the parties' agreement included a provision for demanding additional collateral.

[6] Motion of Argonaut Insurance Company to Interpret and Affirm the Terms of the Confirmed Chapter 11 Plan by Which Argonaut's Surety Bond Program was Deemed Assumed [case no. 19-10547, P-570]. *See* Fed. R. Bankr. P. 7001(9).

[7] Reorganized Debtors' Response to Motion of Argonaut Insurance Company to Interpret and Affirm the Terms of the Confirmed Chapter 11 Plan by Which Argonaut's Surety Bond Program was Deemed Assumed [case no. 19-10547, P-583].

## FACTS

Before the May 2019 bankruptcy filing, Argonaut issued four bonds to secure Debtors' obligations to mineral agreement counterparties that included governmental agencies.[8] The bonded obligations included plugging and abandonment, environmental liabilities and licensing requirements. This motion involves four of those bonds: the Chevron Corporation bond ("Chevron Bond"),[9] the Hilcorp Energy I, L.P. bond ("Hilcorp Bond"),[10] the Louisiana Office of Conservation bond ("Louisiana Bond")[11] and the United States of America bond ("U.S. Bond").[12] General indemnity agreements accompanying the bonds obligated Falcon V to pay bond premiums and reimburse Argonaut for losses.[13] On the day of the chapter 11 filing, Argonaut held $3,213,720.55 of Debtors' cash to secure the bond obligations.[14] Argonaut's proofs of claim recited a collective indebtedness of $10,575,000.00, $3,213,720.55 of it secured and the remaining $7,361,279.45 unsecured.[15]

---

[8] As a condition of the mineral agreements, Falcon V agreed to deliver bonds to the counterparties [Performance Bond, p. 1, Debtors' Exhibits D, E, F and G].

[9] Performance Bond SUR0050842 (Chevron Bond) [Debtors' Exhibit D].

[10] Performance Bond SUR0040845 (Hilcorp Bond) [Debtors' Exhibit G].

[11] Performance Bond SUR0040843 (Louisiana Bond) [Debtors' Exhibit E].

[12] Surety Bond SUR40844 (U.S. Bond) [Debtors' Exhibit F]. The U.S. and Louisiana Bonds are required by law [Debtors' Response to Motion of Argonaut Insurance Company to Interpret and Affirm the Terms of the Confirmed Plan, P-583, p. 6].

[13] Indemnity Agreement between Debtors and Argonaut [Debtors' Exhibit B; Argonaut's Exhibit 2].

[14] Claim no. 17 in case no. 19-10547, Claim no. 13 in case no. 19-10548 and Claim no. 1 in case no. 19-10561 [Argonaut's Exhibit 3].

[15] *Id*.

Argonaut's proofs of claim recited that the surety bond program was a financial accommodation but reserved its rights with respect to the characterization of the program as executory contracts. Argonaut's proofs of claim provided:

> It is [Argonaut]'s position that any General Indemnity Agreement between [Argonaut] and any Debtor or non-Debtor affiliate may not be assumed and assigned, for among other reasons, because such agreement constitutes a "financial accommodation" under 11 U.S.C. § 365(c)(2). To the extent the Bonds or any indemnity agreement referred to herein are deemed to be executory contracts and are assumed in connection with the Debtors' bankruptcy cases, all obligations thereunder will be payable as administrative expense priority claims, and [Argonaut] reserves all rights, claims and defenses with respect thereto, without limitation. [Argonaut] reserves all rights, claims and defenses with respect to characterization of the bonds or indemnity agreements as executory contracts and whether they may be assumed.[16]

Falcon V moved for authority to continue the surety bond program at the outset of its case,[17] describing the program as a necessary cost of preserving the estate:

> Often, statutes or ordinances require the Debtors to post surety bonds to secure such obligations. Failure to provide, maintain or timely replace its surety bonds may prevent the Debtors from undertaking essential functions related to its operations.[18]

After an initial expedited hearing at which it granted the motion for an interim period, the court later granted it on a final basis.[19]

---

[16] *Id.*, p. 7 of 15, n.1.

[17] Debtors' Motion for Entry of Interim and Final Orders Authorizing Debtors to Continue Surety Bond Program, ¶ 8 [P-9 in case no. 19-10547].

[18] *Id.*

[19] Interim Order Authorizing Debtors to Continue Surety Bond Program and Setting Final Hearing [Debtors' Exhibit Q, case no. 19-10547, P-75]; Second Interim Order Authorizing Debtors to Continue Surety Bond Program and Setting Final Hearing [Debtors' Exhibit R, case no. 19-10547, P-150]; Final Order Authorizing Debtors to Continue Surety Bond Program [Debtors' Exhibit S, case no. 19-10547, P-226].

The debtors' First Amended Disclosure Statement,[20] later approved by the court,[21] stated that "[t]he Argonaut Insurance Company claims are contingent and unliquidated and such claims will be dealt with in connection with Confirmation."[22] But the disclosure statement also included language likely to comfort, if not lull, the bonding company:

> The Debtors are required to post certain bonds as per the Louisiana Department of Natural Resources, Office of Conservation ("LDNR") requirements.  Other performance bonds are posted on behalf of certain entities as required per the requirements under certain acquisition documents.  The Debtors presently have a combination of bonds for LDNR, Chevron Corporation, and Hilcorp Energy I, L.P. in the amount of $10,575,000, all underwritten by Argonaut Insurance Company.  *The Reorganized Debtors shall maintain all bonding currently in place after the Effective Date.*  As discussed, Argonaut Insurance Company filed proofs of claim in each of the Debtors cases for the full amount of the performance bonds - $10,575,000.  These Claims are contingent and unliquidated.[23]

That language did not suggest that Falcon V anticipated a different treatment of the surety bond program than its earlier motion portended, though it was not an unqualified commitment to continue the parties' agreement.

---

[20] First Amended Disclosure Statement for the First Amended Chapter 11 Plan of Reorganization of Falcon V, L.L.C. and Its Debtor Affiliates with Immaterial Modifications dated August 19, 2019 [P-349 in case no. 19-10547]. *See also* First Amended Disclosure Statement for the First Amended Chapter 11 Plan of Reorganization of Falcon V, L.L.C. and Its Debtor Affiliates [Debtors' Exhibit L, P-337 in case no. 19-10547].

[21] Order and Amended Order Approving Disclosure Statement and Setting Confirmation Hearing and Related Deadlines [case no. 19-10547, P-353, 356].

[22] First Amended Disclosure Statement for the First Amended Chapter 11 Plan of Reorganization of Falcon V, L.L.C. and Its Debtor Affiliates with Immaterial Modifications dated August 19, 2019, p. 12 [P-349 in case no. 19-10547]. *See also* First Amended Disclosure Statement for the First Amended Chapter 11 Plan of Reorganization of Falcon V, L.L.C. and Its Debtor Affiliates, p. 12 [Debtors' Exhibit L, P-337 in case no. 19-10547].

[23] *Id.* at p. 15 [emphasis added].

In any case, the Debtors' confirmed chapter 11 plan[24] provided that Debtors were deemed to have assumed any executory contract that was not –

a) previously rejected;

b) the subject of a pending motion to reject; or

c) listed in a schedule to the plan as an executory contract to be rejected.[25]

To avoid any doubt, the confirmed plan also specified that "[e]xcept for those executory contracts and unexpired leases set forth on a schedule to the Plan Supplement, none of the executory contracts and unexpired leases to which the Debtors are a party shall be rejected under the Plan."[26] Argonaut's surety bond program does not appear on that schedule or in the Plan Supplement.[27]

Nothing in the record suggested that Argonaut had reason to suspect that Falcon V would jilt it after confirmation, and for nearly four months, the chapter 11 seemed an unqualified success from Argonaut's perspective. However, in February 2020, the reorganized Debtors made premium payments on only two of the four bonds: the U.S. and Louisiana Bonds.[28] In response,

---

[24] October 10, 2019 Order Confirming Second Amended Chapter 11 Plan of Reorganization of Falcon V, L.L.C. and Its Debtor Affiliates with Immaterial Modifications dated August 16, 2019 and September 13, 2019 [Debtors' Exhibit P, case no. 19-10547, P-507] and Amended Order Confirming Plan [case no. 19-10547, P-510].

[25] Second Amended Plan of Reorganization of Falcon V, L.L.C. and Its Affiliated Debtors with Immaterial Modifications dated August 16, 2019 and September 13, 2019 [Debtors' Exhibit M; case no. 19-10547, P-434, ¶ 9.1], which is also attached as an exhibit to the Order Confirming the Plan [case no. 19-10547, P-510].

[26] *Id.* at ¶ 9.3. Debtors also reserved the right to seek to reject any executory contract before confirmation but never moved to reject the Argonaut surety bond program.

[27] Amended Assumption List [Debtors' Exhibit N; case no. 19-10547, P-476, exhibit D]. Although the exhibit is entitled "Schedule of Assumed and Rejected Executory Contracts and Unexpired Leases" and includes a lengthy list of *assumed* executory contracts and unexpired leases, no similar list of *rejected* executory contracts or unexpired leases is attached. A note on the bottom states that the schedule of rejected executory contracts is "[t]o be determined." No schedule of rejected executory contracts appears in the case record.

[28] Premium Payment Support [Argonaut's Exhibit 4]; Debtors' Response to Motion of Argonaut Insurance Company to Interpret and Affirm the Terms of the Confirmed Plan [case no. P-583, p. 6].

Argonaut demanded that the reorganized Debtors either 1) obtain release of the bonds, or 2) provide an additional $7,336,920.00 in collateral.[29] Argonaut's letter demanded the combined penal sum of the bonds ($10,575,000) because the Debtors' "financial condition is deteriorating."[30] Its request was based on language in the general indemnity agreements (collectively "Indemnity Agreement") which provide:

> The Surety may, in its sole discretion, determine one or more of the following: (a) the Indemnitors financial condition has been or is believed to be deteriorating; or (b) there has been or is believed to be some other change that adversely impacts the Surety's risk under the Bond(s). In such an event, within thirty (30) days of receipt of the Surety's written demand, the Indemnitors shall procure the full and complete release of the Bond(s) by providing competent written evidence of release satisfactory to the Surety, in its sole discretion. If Indemnitors fail to provide the aforementioned release Indemnitors shall, within an additional seven (7) days, provide the Surety with collateral in the amount of 100% of all unreleased liability under the Bond(s).[31]

The Debtors responded that Argonaut's demand for additional collateral violated the discharge injunction.[32]

## ANALYSIS

### I.    The surety bond program is not an executory contract.

The plan provides that Debtors are deemed to have assumed any executory contract unless it was

---

[29] February 13, 2020 Letter [Argonaut's Exhibit 5].

[30] "Exhibit A" to Argonaut's February 13, 2020 letter alleged that the "combined penal sum" of the four bonds was $10,575,000.00, comprising:
    Chevron Bond -    $     300,000.00
    Hilcorp Bond -    $10,000,000.00
    Louisiana Bond - $    250,000.00
    U.S. Bond -       $       25,000.00
    Total              $10,575,000.00

[31] Indemnity Agreement [Argonaut's Exhibit 2, ¶ 12].

[32] March 12, 2020 Letter [Argonaut's Exhibit 6].

      a) previously rejected;

      b) the subject of a pending motion to reject; or

      c) is listed in a schedule to the plan as an executory contract to be rejected.[33]

Argonaut argues that the surety bond program was deemed assumed by the confirmed plan because it was not rejected prior to confirmation, or the subject of a pending motion to reject, or listed as an executory contract to be rejected.

    Debtors respond that the surety bond program is not an executory contract and so could not be assumed. Alternatively, they argue that if the court concludes that the bond program is an executory contract, it is a financial accommodation that Bankruptcy Code section 365(c)(2) prohibits assuming.

    Bankruptcy Code section 365 empowers a trustee or debtor-in-possession to assume or reject executory contracts and unexpired leases. "This provides a way for 'a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed.' "[34]

    Though the Bankruptcy Code does not define *executory contract*, legislative history gives insight into its meaning:

> Though there is no precise definition of what contracts are executory, it generally includes contracts on which performance remains due to some extent on both sides. A note is not usually an executory contract if the only performance that remains is repayment. Performance on one side of the contract would have been completed and the contract is no longer executory.[35]

---

[33] Second Amended Plan of Reorganization of Falcon V, L.L.C. and Its Affiliated Debtors with Immaterial Modifications dated August 16, 2019 and September 13, 2019 [Debtors' Exhibit M, case no. 19-10547, P-434, ¶ 9.1], which is also attached as an exhibit to the Order Confirming the Plan [case no. 19-10547, P-510].

[34] *RPD Holdings, L.L.C. v. Tech Pharmacy Services (In re Provider Meds,* L.L.C.), 907 F.3d 845, 851 (5th Cir. 2018), *cert. denied sub nom. RPD Holdings, L.L.C. v. Tech Pharmacy Servs.,* 139 S. Ct. 1347, 203 L. Ed. 2d 570 (2019) (quoting *Phoenix Exploration, Inc. v. Yaquinto* (*In re Murexco Petroleum, Inc.*), 15 F.3d 60, 62 (5th Cir. 1994) (per curiam)).

[35] H.R. REP. No. 95-595, at 347 (1978), *reprinted in* U.S.C.C.A.N. 5963, 6303-04.

In keeping with legislative history, the Fifth Circuit jurisprudence follows the "Countryman"[36] definition of *executory contract*, holding that

> a contract is executory if 'performance remains due to some extent on both sides' and if 'at the time of the bankruptcy filing, the failure of either party to complete performance would constitute a material breach of the contract, thereby excusing the performance of the other party.' "[37]

The relationship among a surety, principal, and claimant is tripartite.[38]  Debtors contracted with Argonaut to issue performance bonds that would cover the claims of the obligees.  In exchange, Debtors agreed to indemnify Argonaut for claims should it be required to satisfy them.  Thus, the Indemnity Agreement and bond must be construed together.[39]

---

[36] The test is named for the late Professor Vernon Countryman, author of *Executory Contracts in Bankruptcy: Part I,* 57 Minn. L. Rev. 439, 460 (1973).

[37] *Matter of Provider Meds, L.L.C.*, 907 F.3d at 851 (citing *Murexco Petroleum, Inc*., 15 F.3d at 62-63; *Ocean Marine Servs. P'ship No. 1 v. Digicon, Inc. (In re Digicon, Inc.*), No. 03-20121, 2003 WL 21418127, at *5 (5th Cir. June 11, 2003) (per curiam)).

[38] *See Penn. Nat'l Mut. Cas. Ins. Co. v. City of Pine Bluff*, 354 F.3d 945 (8th Cir. 2004) ("Bonds are contracts, and suretyship status is created through a tripartite agreement 'whereby one party (the surety) becomes liable for the principal's or obligor's debt or duty to the third party obligee.'"); *Arch Insurance Co., v. Centerplan Construction Co., LLC*, 368 F.Supp.3d 350, 373 (D. Conn. 2019) ("tripartite relationship among surety, principal, and claimant"); *Upper Pottsgrove Tp. v. International Fidelity Insurance Co*., 976 F.Supp.2d 598, 603 (E.D. Penn. 2013) ("a surety bond is a contract 'to answer for the debt, default, or miscarriage of another and … creates a tripartite relationship between the party secured, the principal obligor, and the surety' "); *In re Commercial Money Center, Inc., Equipment Lease Litigation*, 603 F.Supp.2d 1095, 1118 (N.D. Ohio 2009) ("a surety, unlike an insurer, is a member of a tripartite relationship, and bears responsibilities not only to its obligee, but also to its principal"); *Great American Ins. Co. v. North Austin Mun. Utility Dist. No. 1*, 908 S.W.2d 415, 418 (Texas 1995) ("suretyship involves a tripartite relationship between a surety, its principal, and the bond obligee").

[39] The Fifth Circuit stated in *Safer v. Nelson Financial Group, Inc.,* 422 F.3d 289, 296 (5th Cir. 2005):

> This court has repeatedly found that when agreements are interdependent and exist to further a single goal, an arbitration clause in one of the agreements "reach[es] all aspects of the parties' relationship," including disputes that might arise out of the other agreement. *Neal [v. Hardee's Food Systems, Inc.],* 918 F.2d [34,] 37–38 [5th Cir. 1990]; *see also [Personal Sec. & Safety Systems Inc. v.] Motorola [Inc.],* 297 F.3d [388,] 392–95 [5th Cir. 2002]. In determining whether two agreements are related, "it is well-settled law that several writings executed by the same parties substantially at the same time and relating to the same subject-matter may be read together as forming parts of one transaction." *Bailey v. Hannibal & St. J. R.R. Co.,* 84 U.S. (17 Wall.) 96, 108, 21 L.Ed. 611 (1872); *see also Neal,* 918 F.2d at 37 ("[u]nder general principles of contract law, separate agreements executed contemporaneously by the same parties, for the same purposes, and part of the same transaction, are to be construed together."); *Richland Plantation Co. v. Justiss–Mears Oil Co., Inc.,* 671 F.2d 154, 156 (5th Cir.1982) ("When several documents

9

To determine whether the surety bond program is executory, the Countryman test requires a determination of whether any performance remains due by each party and whether failure to render that performance would constitute a material breach of the contract, excusing the counterparty from performance.

Falcon V maintains that the bond program is not an executory contract because Argonaut already has posted the bonds and owes Debtors no further performance, though Argonaut remains liable to the third party obligees on the bonds.

This dispute bears similarity to that in *In re James River Coal Co.*[40] where the debtor had procured four bonds from XL Specialty Insurance Co. ("XL") to secure its worker compensation obligations to the Commonwealth of Kentucky.[41] The debtor filed chapter 11 and confirmed a plan assuming only specified executory contracts, not including the XL bonds or the accompanying indemnity agreement. The bankruptcy court denied XL's motion for payment of accrued bond premiums as an administrative expense. On appeal, the district court affirmed the lower court's ruling that the bond was not an executory contract and that XL was not entitled to an administrative expense claim.[42] It applied the Countryman test, reasoning that XL had performed its only obligation to the debtor by posting the bonds prepetition and owed a continuing duty only to Kentucky.

---

represent one agreement, all must be construed together in an attempt to discern the intent of the parties, reconciling apparently conflicting provisions and attempting to give effect to all of them, if possible.").

[40] *XL Specialty Ins. Co. and One Beacon Insurance Co. v. James River Coal Co. (In re James River Coal Co.)*, 2006 WL 2548456 (M.D. Tenn. Aug. 31, 2006).

[41] For unknown reasons, XL cancelled the bonds and returned the debtor's premiums. However, it realized that it could not escape its obligations under the bonds and asked the debtor to repay premiums. *Id.* at *1.

[42] *Id.* at 5-7.

As in *James River*, Argonaut posted bonds prepetition and owes no further performance to Falcon V.[43] Fifth Circuit jurisprudence applying the Countryman test supports the conclusion that because Argonaut owed no continuing performance to Falcon V, the surety bond program is not an executory contract.

Because the surety bond program is not an executory contract, discussion of Debtors' alternative arguments is unnecessary.[44] However, even if the surety bond program were an executory contract, section 365(c)(2) bars its assumption.

### a. Even if the surety bond program were executory, it is a non-assumable financial accommodation.

Debtors alternatively argue that the surety bond program is not capable of assumption because it is a financial accommodation within the meaning of Bankruptcy Code section 365(c)(2). That Code provision bars assumption of an executory contract if "such contract is a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor, or to issue security of the debtor." The surety bond program is indeed a financial accommodation within the meaning of that section, as Argonaut's proofs of claim contend.

The Senate Report accompanying section 365(c)(2) provides

---

[43] *See also Clarendon Nat'l Ins. Co. v. Coal Stripping Inc. (In re Coal Stripping, Inc.)*, 215 B.R. 500 (Bankr. W.D. Pa. 1997) (surety bonds issued to mining operators were not executory contracts when the obligation of the sureties was owed to the state, not the debtor).

[44] Debtors have a continuing duty to perform under the surety bond program by paying premiums, indemnifying Argonaut for any amounts paid to claimants on the bonds, posting collateral as security and granting Argonaut reasonable access to books, records and accounts [Indemnity Agreement, Debtors' Exhibit B and Argonaut's Exhibit 2]. Debtors argue that failure to pay premiums would not be a material breach because it would not excuse Argonaut's performance. Because the surety bond program is not executory, the court does not reach this issue. For the same reason, the court does not need to reach Argonaut's alternative argument that an executory contract that is neither assumed nor rejected passes through unaffected.

> The purpose of this subsection is to make it clear that a party to a transaction which is based upon the financial strength of a debtor should not be required to extend new credit to the debtor in the form of loans, lease financing, or the purchase or discount of notes.[45]

Courts have defined *financial accommodations* narrowly:

> Citing the legislative history quoted above and this passage from *Collier on Bankruptcy,* these courts uniformly conclude that § 365(c)(2) does *not* apply to all contracts that involve the extension of credit; rather, it applies to "contracts to make loans and other traditional kinds of debt financing arrangements." Thus, courts define the term "financial accommodations" narrowly, as "the extension of money or credit to accommodate another." Courts also distinguish between contracts for which the extension of credit is the primary purpose, that is, a primary contractual obligation, and contracts in which the extension of credit is only incidental to or a part of a larger arrangement involving the debtor; the former constitute contracts to extend financial accommodations while the latter do not.[46]

Although the Fifth Circuit has not yet addressed the application of section 365(c)(2) to surety contracts, the majority of courts considering the issue have held that surety contracts are financial accommodations.[47] Argonaut has cited no authority supporting its contention that the surety bond program is not a financial accommodation.[48] Thus, even if the surety bond program

---

[45] S.Rep. No. 989, 95th Cong., 2d Sess. 58–59 (1978).

[46] *In re Thomas B. Hamilton Co., Inc.*, 969 F.2d 1013, 1018–19 (11th Cir. 1992) (citations omitted).

[47] *In re Thomas B. Hamilton Co., Inc.*, 969 F.2d at 1018–19 (guaranty and surety contracts are financial accommodations); *Matter of Edwards Mobile Home Sales, Inc*., 119 B.R. 857, 858–59 (Bankr. M.D. Fla. 1990) (obligation to pay debts of another is a financial accommodation); *Wegner Farms Company v. Merchants Bonding Co. (In re Wegner Farms Co.)*, 49 B.R. 440 (Bankr. N.D. Iowa 1985) (surety bonds are financial accommodations that cannot be assumed); *In re Adana Mortgage Bankers, Inc.,* 12 B.R. 977 (Bankr. N.D. Ga. 1980) (guaranty agreements were nonassumable financial accommodations).

[48] Argonaut's counsel admitted at the June 5, 2020 hearing "I think the surety bond program is, with respect to Argo, a financial accommodation… A bond is a financial accommodation." [Transcript 06/05/20, case no. 19-10547, P-596, p. 20, ll. 6-10]. Argonaut's proof of claim also concedes that its agreement is a financial accommodation. [Argonaut's Exhibit 3, p. 7 of 15, n.1; Claim no. 17 in case no. 19-10547, Claim no. 13 in case no. 19-10548 and Claim no. 1 in case no. 19-10561].

were an executory contract, it is a financial accommodation that cannot be assumed under section 362(c)(2).[49]

### b. Consent is not an exception to section 365(c)(2)'s bar on assumption of an executory contract that is a financial accommodation.

Undaunted by the lack of legal support for its position and despite reciting in its proofs of claim that the Falcon V surety bond program constitutes a financial accommodation barring assumption and assignment, Argonaut next argues that an executory contract comprising a financial accommodation can be assumed with the nondebtor counterparty's consent.[50] The text of the statute provides otherwise.

Bankruptcy Code section 365(c)(2), in part:

(c) The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if— …

> (2) such contract is a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor, or to issue a security of the debtor; …

Argonaut argues that because legislative history provides that the purpose is to protect the party extending credit, that party may consent to assumption. But in analyzing section 365(c)(2), the court must "begin with the language of the statute."[51]

> The first step "is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.,* 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997) (citing *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 240, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)). The inquiry ceases "if the statutory language is

---

[49] The Findings and Conclusions of the court in support of confirmation provide that executory contracts are deemed assumed only "to the extent assumable under Bankruptcy Code 365" [Case no. 19-10547, P-506, ¶ U].

[50] *See In re TS Industries, Inc.*, 117 B.R. 682 (Bankr. D. Utah 1990) (allowing assumption of debt financing with consent of the parties).

[51] *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450, 122 S.Ct. 941 (2002).

unambiguous and 'the statutory scheme is coherent and consistent.'" 519 U.S., at 340, 117 S.Ct. 843.[52]

Section 365(c)(2) recites without exception that executory contracts that are financial accommodations cannot be assumed. In contrast, in the immediately preceding subsection, section 365(c)(1)(B), Congress specified that otherwise nonassumable agreements may be assumed and assigned with consent of the counterparty. The omission of similar language from section 365(c)(2), immediately following, compels the conclusion that consent of the nondebtor counterparty cannot render a financial accommodation assumable under section 365.

> [W]hen "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."[53]

Even if Argonaut had offered explicit evidence of its consent pre-confirmation to assumption, the surety bond program was not assumed because consent is not an exception to section 365(c)(2)'s bar on assumption of executory contracts involving financial accommodations.

## II.    Where does that leave Argonaut?

### a. Though the bond program was not assumed as an executory contract, Argonaut's claim was treated in the plan and under section 502(e)(1)(B).

Argonaut argues that Debtors are bound by the disclosure statement's recital that the bond program was essential.[54] But the disclosure statement language it points to is merely a summary

---

[52] *Id.*

[53] *Id.* at 452.

[54] Motion of Argonaut Insurance Company to Interpret and Affirm the Terms of the Confirmed Chapter 11 Plan [case no. 19-10547, P-570, pp. 3-4, 9].

of Debtors' "first day motions," not proposed treatment of claims.[55]  Argonaut ignores the language in Debtors' First Amended Disclosure Statement,[56] later approved by the court,[57] that "[t]he Argonaut Insurance Company claims are contingent and unliquidated and such claims will be dealt with in connection with Confirmation."[58]

Argonaut is a sophisticated creditor who had notice of the order approving the disclosure statement and setting confirmation hearing and related deadlines[59] and of the confirmation order.[60]  Yet it did not object to confirmation, challenge or clarify the plan's provisions for its claims, move for new trial or appeal the order confirming the plan.  Nor did it seek to have its claim estimated under 11 U.S.C. §502(c) or move for its temporary allowance, as Fed. R. Bankr. P. 3018(a) allows.  Thus, Argonaut is bound by the confirmed plan.[61]

---

[55] First Amended Disclosure Statement for the First Amended Chapter 11 Plan of Reorganization of Falcon V, L.L.C. and Its Debtor Affiliates with Immaterial Modifications dated August 19, 2019, ¶ 3.1(d) [P-349 in case no. 19-10547].

[56] First Amended Disclosure Statement for the First Amended Chapter 11 Plan of Reorganization of Falcon V, L.L.C. and Its Debtor Affiliates with Immaterial Modifications dated August 19, 2019 [P-349 in case no. 19-10547]. *See also* First Amended Disclosure Statement for the First Amended Chapter 11 Plan of Reorganization of Falcon V, L.L.C. and Its Debtor Affiliates [Debtors' Exhibit L, P-337 in case no. 19-10547].

[57] Order and Amended Order Approving Disclosure Statement and Setting Confirmation Hearing and Related Deadlines [case no. 19-10547, P-353, 356].

[58] First Amended Disclosure Statement for the First Amended Chapter 11 Plan of Reorganization of Falcon V, L.L.C. and Its Debtor Affiliates with Immaterial Modifications dated August 19, 2019, p. 12 [P-349 in case no. 19-10547]. *See also* First Amended Disclosure Statement for the First Amended Chapter 11 Plan of Reorganization of Falcon V, L.L.C. and Its Debtor Affiliates, p. 12 [Debtors' Exhibit L, P-337 in case no. 19-10547].

[59] Case no. 19-10547, P-370 is the Certificate of Service for P-356.

[60] Case no. 19-10547, P-521 is the Certificate of Service for P-520, the Notice of Occurrence of Effective Date of the Plan, Notice of Entry of Confirmation Order, and Deadline to File Claims.  Also, Argonaut participated in the bankruptcy by filing proofs of claim.

[61] 11 U.S.C. § 1141(d)(1)(A); *see also Dooley v. MB Indus., LLC,* No. CV 18-1039, 2019 WL 3812834, at *4 (W.D. La. Aug. 13, 2019) (citing *United Student Aid Funds, Inc. v. Espinosa,* 559 U.S. 260, 275, 130 S.Ct. 1367 (2010)). *See also Matter of Vitro Asset Corp.,* 656 F. App'x 717, 723, 2016 U.S. App. LEXIS 14407 (5th Cir. 2016) (quoting *Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1050 (5th Cir. 1987)).

Debtors contend that the plan treats Argonaut's secured claim as an "Other Secured Claim" that was unimpaired and reinstated.[62]

> Other Secured Claims. Except to the extent a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, on the latest of (x) the Effective Date, (y) the date on which an Other Secured Claim becomes an Allowed Other Secured Claim, and (z) such other date as may be ordered by the Bankruptcy Court, or, in each case, as soon as reasonably practicable thereafter, each Allowed Other Secured Claim shall be, at the election of the Debtors: (i) Reinstated, (ii) paid in Cash, in full satisfaction, settlement, release and discharge of such Allowed Other Secured Claim, (iii) satisfied by the Debtors' surrender of the collateral securing such Allowed Other Secured Claim, or (iv) offset against, and to the extent of, the Debtors' claims against the Holder of such Allowed Other Secured Claim. Each Holder of an Other Secured Claim is Unimpaired, not entitled to vote, and conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.[63]

Argonaut filed a $3,213,720.55 secured claim. The terms of the confirmed plan reinstated its secured claim of $3,213,720.55 on the plan's effective date, and the plan does not provide that Argonaut is entitled to additional security for its claim.

Debtors also argue that the unsecured portion of Argonaut's claim, $7,361,279.45, was disallowed by Bankruptcy Code section 502(e) because it was fully contingent and unliquidated on the petition date.[64] Section 502(e)(1)(B) provides

> Notwithstanding subsections (a), (b), and (c) of this section and paragraph (2) of this subsection, the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that– …

---

[62] Debtors' Response [case no. 19-10547, P-583, ¶ 2].

[63] Second Amended Plan of Reorganization of Falcon V, L.L.C. and Its Affiliated Debtors with Immaterial Modifications dated August 16, 2019 and September 13, 2019 [Debtors' Exhibit M; case no. 19-10547, P-434, ¶ 2.7].

[64] Reorganized Debtors' Response to Motion of Argonaut Insurance Company to Interpret Affirm the Terms of the Confirmed Chapter 11 Plan [case no. 19-10547, P-583, ¶ 2]. Debtors cited subsection 502(e)(2); however, the applicable subsection is 502(e)(1)(B).

> (B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution; …

Section 502(e)(1)(B)"[prevents] … competition between a creditor and [its] guarantor for limited proceeds of the estate."[65]

> Thus, section 502(e)(1)(B) is applicable to a debt owed by the debtor to a creditor which has been guaranteed by a third party. If the primary obligee seeks payment from its guarantor, the guarantor may seek reimbursement or contribution from the debtor. Both the primary obligee and the guarantor have a claim against the debtor that arises from the same debt; the primary obligee has a right to payment from the debtor, and the guarantor has a contingent right to reimbursement or contribution from the debtor which may become noncontingent in the event that it fully satisfies the primary obligee's claim. By disallowing the guarantor's contingent claim for reimbursement or contribution, section 502(e)(1)(B) ensures that the estate will not at the same time be liable to the primary obligor and the guarantor for the same debt.[66]

To disallow a claim under section 502(e)(1)(B), "three criteria must be met: (1) the claim must be contingent; (2) the claim must be for reimbursement or contribution; and (3) the claimant must be co-liable with the debtor with respect to the claim."[67]

Argonaut's unsecured claim meets these criteria.[68] First, it is undisputed that the Argonaut's unsecured claim is fully contingent because no claims have been made against the

---

[65] 4 COLLIER ON BANKRUPTCY ¶502.06[d] (16th ed. 2020) (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 354 (1977), *reprinted in* App. Pt. 4(d)(i); S. Rep. No. 989, 95th Cong., 2d Sess. 65 (1978), *reprinted in* App. Pt. 4(e)(i)).

[66] *Id.*

[67] *In re Pinnacle Brands, Inc.*, 259 B.R. 46, 55 (Bankr. D. Del. 2001) (citing *In re Dant & Russell, Inc.,* 951 F.2d 246, 248 (9th Cir. 1991); *Fine Organics Corp. v. Hexcel Corp.* (*In re Hexcel Corp.*), 174 B.R. 807, 809 (Bankr. N.D. Cal. 1994); *Empire Radio Partners, Ltd. v. Brothers* (*In re Empire Radio Partners, Ltd.*), 1993 WL 515832 (E.D. Pa. Dec. 8, 1993); *In re Provincetown–Boston Airlines, Inc.,* 72 B.R. 307, 309 (Bankr. M.D. Fla.1987)).

[68] Because the plan treated Argonaut's secured claim as an Other Secured Claim, discussing whether section 502(e)(1)(B) applies to secured claims is unnecessary.

bonds.[69] Second, Argonaut has a contingent claim for indemnification, and "[c]ourts have consistently held that 'the concept of reimbursement includes indemnity.'"[70] For the final criterion to be satisfied, both Debtors and Argonaut must be liable for the same debt. Both Debtors and Argonaut are liable to the obligees (Hilcorp, Chevron, Louisiana, and the United States). If both the obligees and Argonaut made claims against Debtors, Debtors may be subject to two demands for payments on the same debt.[71]

Thus, section 502(e)(1)(B) is applicable to Argonaut's unsecured claim, and it was disallowed upon plan confirmation.

### b. Argonaut violated the discharge injunction by seeking additional collateral, but its violation was not contumacious.

Argonaut's motion to interpret the plan was precipitated by Debtors' letter[72] responding to Argonaut's letter demanding additional collateral for the bond. Falcon V argues that the demand letter violated the discharge injunction.

A discharge operates as an injunction against any action to recover discharged debts.[73] The Supreme Court held in *Taggert v. Lorenzen*[74]:

---

[69] Claim no. 17 in case no. 19-10547, Claim no. 13 in case no. 19-10548 and Claim no.1 in case no. 19-10561 [Argonaut's Exhibit 3, p. 4, ¶ 4 and p. 5, ¶ 8]. Debtors' Response [case no. 19-10547, P-583, ¶ 2].

[70] *In re RNI Wind Down Corp.*, 369 B.R. 174, 181-182 (Bankr. D. Del. 2007) (quoting *In re Vectrix Bus. Solutions, Inc.*, 2005 WL 3244199, at *3 (Bankr. N.D. Tex. 2005)).

[71] Debtors assumed their leases with Hilcorp, Chevron, Louisiana and the United States through the confirmed plan. Second Amended Plan of Reorganization of Falcon V, L.L.C. and Its Affiliated Debtors with Immaterial Modifications dated August 16, 2019 and September 13, 2019 [Debtors' Exhibit M; case no. 19-10547, P-434, ¶ 9.5]; *see also* Schedule of Assumed Executory Contracts [Debtors' Exhibit M; case no. 19-10547, P-476, Exh. D].

[72] March 12, 2020 letter [Debtors' Exhibit J].

[73] 11 U.S.C. § 524.

[74] *Taggert v. Lorenzen,* 139 S.Ct. 1795, 204 L.Ed.2d 129 (2019).

[A] court may hold a creditor in civil contempt for violating a discharge order if there is *no fair ground of doubt* as to whether the order barred the creditor's conduct. In other words, civil contempt may be appropriate if there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful.[75]

Debtors' disclosure statement recited that they intended to maintain the Argonaut bond,[76] though the confirmed plan did not do so. In light of the inconsistency between the disclosure statement and Debtors' confirmed plan, Argonaut's uncertainty about its treatment was reasonable, and it will not be held in contempt.

## CONCLUSION

The surety bond program is not an executory contract; and even if it were executory, as a financial accommodation it cannot be assumed, whether or not Argonaut consented.

Argonaut holds an allowed secured claim for $3,213,720.55. Argonaut's unsecured claim is disallowed under section 502(e)(1)(B).

Counsel for the parties shall submit an agreed form of order on the motion within five days.

Baton Rouge, Louisiana, September 22, 2020.

**s/ Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE

---

[75] 139 S.Ct. at 1799 (emphasis in original).

[76] First Amended Disclosure Statement for the First Amended Chapter 11 Plan of Reorganization of Falcon V, L.L.C. and Its Debtor Affiliates with Immaterial Modifications dated August 19, 2019, p. 15 [P-349 in case no. 19-10547].